## UNITED STATES BANKRUPTCY COURT
## MIDDLE DISTRICT OF FLORIDA
## TAMPA DIVISION

| | |
|---|---|
| In re: | **Chapter 11** |
| **ACCENTIA BIOPHARMACEUTICALS, INC.,** | **Case No. 8:08-bk-17795-KRM** |
| **ANALYTICA INTERNATIONAL, INC.,** | **Case No. 8:08-bk-17798-KRM** |
| **TEAMM PHARMACEUTICALS, INC.,** | **Case No. 8:08-bk-17800-KRM** |
| **ACCENTRX, INC.,** | **Case No. 8:08-bk-17801-KRM** |
| **ACCENTIA SPECIALTY PHARMACY, INC.,** | **Case No. 8:08-bk-17802-KRM** |
| **Debtors.** | |

_____/

## FIRST AMENDED JOINT PLAN OF REORGANIZATION OF ACCENTIA BIOPHARMACEUTICALS, INC., ANALYTICA INTERNATIONAL, INC., TEAMM PHARMACEUTICALS, INC., ACCENTRX, INC., AND ACCENTIA SPECIALTY PHARMACY, INC. UNDER CHAPTER 11 OF TITLE 11, UNITED STATES CODE

STICHTER, RIEDEL, BLAIN & PROSSER, P.A.
Charles A. Postler (Florida Bar No. 455318)
110 East Madison Street, Suite 200
Tampa, Florida 33602
Telephone:     (813) 229-0144
Facsimile:     (813) 229-1811
Email:         cpostler@srbp.com
Counsel for Debtors and Debtors in Possession

Tampa, Florida
Dated as of August 16, 2010

PURSUANT TO SECTION 1125 OF TITLE 11 OF THE UNITED STATES CODE, NOTHING CONTAINED IN THIS FIRST AMENDED JOINT PLAN OF REORGANIZATION (THE "PLAN") SHOULD BE CONSTRUED AS CONSTITUTING A SOLICITATION OF ACCEPTANCES OF THE PLAN UNTIL SUCH TIME AS THE DEBTORS' DISCLOSURE STATEMENT (AS DEFINED HEREIN) HAS BEEN APPROVED BY AN ORDER OF THE UNITED STATES BANKRUPTCY COURT FOR THE MIDDLE DISTRICT OF FLORIDA, TAMPA DIVISION, AND DISTRIBUTED, WITH APPROPRIATE BALLOTS (INCLUDING THE ACCENTIA STOCKHOLDER BALLOTS), TO ALL HOLDERS OF CLAIMS AGAINST AND EQUITY INTERESTS IN THE DEBTORS ENTITLED TO VOTE ON THE PLAN. THE DEBTORS RESERVE THE RIGHT TO FILE A SECOND AMENDED OR AN AMENDED AND RESTATED PLAN AND A SECOND AMENDED OR AN AMENDED AND RESTATED DISCLOSURE STATEMENT FROM TIME TO TIME HEREAFTER. REFERENCE IS MADE TO SUCH DISCLOSURE STATEMENT FOR A DISCUSSION OF THE DEBTORS' HISTORY, BUSINESSES, PROPERTIES, AND OPERATIONS, THE PROJECTIONS FOR THE DEBTORS' FUTURE OPERATIONS, A SUMMARY OF SIGNIFICANT EVENTS WHICH HAVE OCCURRED TO DATE IN THE BANKRUPTCY CASES, A SUMMARY OF THE MEANS OF IMPLEMENTING AND FUNDING THE PLAN, AND THE PROCEDURES FOR VOTING ON THE PLAN. ALL HOLDERS OF CLAIMS AGAINST AND EQUITY INTERESTS IN THE DEBTORS ARE HEREBY ADVISED AND ENCOURAGED TO READ THE DISCLOSURE STATEMENT AND THE PLAN IN THEIR ENTIRETY BEFORE VOTING TO ACCEPT OR REJECT THE PLAN.

AS TO CONTESTED MATTERS, ADVERSARY PROCEEDINGS AND OTHER ACTIONS OR THREATENED ACTIONS, THE PLAN AND THE DISCLOSURE STATEMENT SHALL NOT BE CONSTRUED AS AN ADMISSION OR STIPULATION, BUT RATHER AS A STATEMENT MADE IN SETTLEMENT NEGOTIATIONS.

# TABLE OF CONTENTS

ARTICLE 1    INTRODUCTION..................................................................................................1

ARTICLE 2    DEFINED TERMS; RULES OF CONSTRUCTION.......................................2
    2.1    Defined Terms. ...........................................................................................2
    2.2    Rules of Construction. ..............................................................................30

ARTICLE 3    TREATMENT OF ADMINISTRATIVE EXPENSE CLAIMS AND PRIORITY TAX
    CLAIMS......................................................................................................30
    3.1    Administrative Expense Claims. ...............................................................30
    3.2    Priority Tax Claims...................................................................................31

ARTICLE 4    DESIGNATION OF CLASSES OF CLAIMS AND EQUITY INTERESTS .............31
    4.1    Class 1:  Priority Claims...........................................................................31
    4.2    Class 2:  Secured Claims and Other Claims of Laurus/Valens. .....................32
    4.3    Class 3:  Secured Claims and Other Claims of Southwest Bank. ...................32
    4.4    Class 4:  Secured Claims and Other Claims of McKesson. ..........................32
    4.5    Class 5:  Secured Claims and Other Claims of the 2006 Secured Debentures Holders..32
    4.6    Class 6:  Secured Claims and Other Claims of the 2008 Secured Debentures Holders..32
    4.7    Class 7:  Secured Tax Claims of Governmental Units...................................32
    4.8    Class 8:  Other Secured Claims. ...............................................................32
    4.9    Class 9:  Claims of the 2007 Debentures Holders. .....................................32
    4.10   Class 10:  Unsecured Claims (Unsecured Claims Not Otherwise Classified). ...............32
    4.11   Class 11:  Unsecured Convenience Claims. ...............................................33
    4.12   Class 12:  Intercompany Claims. ...............................................................33
    4.13   Class 13:  Convertible Preferred Stock Claims...........................................33
    4.14   Class 14:  Subordinated Securities Claims. ...............................................33
    4.15   Class 15:  Equity Interests. .......................................................................33
    4.16   Class 16:  Subsidiary Equity Interests. ......................................................33

ARTICLE 5    TREATMENT OF CLASSIFIED CLAIMS AND EQUITY INTERESTS....................33
    5.1    Unclassified Claims..................................................................................33
    5.2    Class 1:  Priority Claims...........................................................................33
    5.3    Class 2:  Secured Claims and Other Claims of Laurus/Valens. .....................34
    5.4    Class 3:  Secured Claims and Other Claims of Southwest Bank. ...................37
    5.5    Class 4:  Secured Claims and Other Claims of McKesson. ..........................40
    5.6    Class 5:  Secured Claims and Other Claims of the 2006 Secured Debentures Holders..42
    5.7    Class 6:  Secured Claims and Other Claims of the 2008 Secured Debentures Holders..44
    5.8    Class 7:  Secured Tax Claims of Governmental Units...................................47
    5.9    Class 8:  Other Secured Claims. ...............................................................47
    5.10   Class 9:  Claims of the 2007 Debentures Holders. .....................................48
    5.11   Class 10:  Unsecured Claims (Unsecured Claims Not Otherwise Classified). ...............50
    5.12   Class 11:  Unsecured Convenience Claims. ...............................................52
    5.13   Class 12:  Intercompany Claims. ...............................................................53
    5.14   Class 13:  Convertible Preferred Stock Claims...........................................53
    5.15   Class 14:  Subordinated Securities Claims. ...............................................56
    5.16   Class 15:  Equity Interests. .......................................................................56
    5.17   Class 16:  Subsidiary Equity Interests. ......................................................57

ARTICLE 6 ACCEPTANCE OR REJECTION OF THE PLAN ......................................................57

| | | |
|---|---|---|
| 6.1 | Each Impaired Class Entitled to Vote Separately. | 57 |
| 6.2 | Acceptance by Impaired Classes. | 57 |
| 6.3 | Presumed Acceptance of Plan by Unimpaired Classes. | 58 |
| 6.4 | Deemed Non-Acceptance of Plan. | 58 |
| 6.5 | Impairment Controversies. | 58 |

| ARTICLE 7 | TREATMENT OF EXECUTORY CONTRACTS AND UNEXPIRED LEASES | 58 |
|---|---|---|
| 7.1 | Assumption or Rejection of Executory Contracts and Unexpired Leases. | 58 |
| 7.2 | Approval of Assumption or Rejection of Executory Contracts and Unexpired Leases. | 59 |
| 7.3 | Inclusiveness. | 59 |
| 7.4 | Cure of Defaults. | 59 |
| 7.5 | Claims under Rejected Executory Contracts and Unexpired Leases. | 60 |
| 7.6 | Insurance Policies. | 60 |
| 7.7 | Indemnification Rights. | 60 |
| 7.8 | Existing Accentia Stock Options. | 61 |
| 7.9 | Existing Accentia Stock Warrants. | 61 |

| ARTICLE 8 | MEANS OF IMPLEMENTATION OF THE PLAN | 62 |
|---|---|---|
| 8.1 | General Overview of the Plan. | 62 |
| 8.2 | Effective Date Actions. | 62 |
| 8.3 | Vesting of Property of the Estates in the Reorganized Debtors. | 63 |
| 8.4 | Continued Corporate Existence. | 63 |
| 8.5 | Corporate Action. | 64 |
| 8.6 | Boards of Directors and Executive Officers of the Reorganized Debtors. | 64 |
| 8.7 | Amendment and Restatement of Articles of Incorporation and Bylaws of Accentia. | 65 |
| 8.8 | Issuance of Reorganized Accentia Common Stock. | 65 |
| 8.9 | Exemptions from Securities Laws. | 65 |
| 8.10 | SEC Public Reports. | 67 |
| 8.11 | Section 1146 Exemption. | 68 |
| 8.12 | Pursuit of Causes of Action. | 68 |
| 8.13 | Prosecution and Settlement of Claims and Causes of Action. | 69 |
| 8.14 | Effectuating Documents; Further Transactions. | 70 |
| 8.15 | Cancellation of Existing Loan Documents and Agreements. | 70 |
| 8.16 | Exit Financing. | 70 |
| 8.17 | Exclusivity Period. | 71 |
| 8.18 | Dissolution of the Committee. | 71 |

| ARTICLE 9 | PROVISIONS GOVERNING DISTRIBUTIONS | 71 |
|---|---|---|
| 9.1 | Initial Distribution. | 71 |
| 9.2 | Execution and Delivery of Plan Debentures, Plan Notes, Plan Warrants and Security Documents. | 71 |
| 9.3 | Determination of Claims. | 71 |
| 9.4 | Distributions as to Allowed Claims in Classes 10 and 14. | 73 |
| 9.5 | Unclaimed Distributions. | 73 |
| 9.6 | Transfer of Claim. | 74 |
| 9.7 | One Distribution Per Holder. | 74 |
| 9.8 | Effect of Pre-Confirmation Distributions. | 74 |
| 9.9 | No Interest on Claims. | 74 |
| 9.10 | Determination of Voting and Distribution Rights of Holders of Equity Interests. | 75 |
| 9.11 | Fractional Shares. | 75 |
| 9.12 | Certain Restrictions on Stock Transfers. | 75 |

| 9.13 | Call Provisions for Plan Warrants | 76 |
| 9.14 | Compliance with Tax Requirements | 77 |

| ARTICLE 10 | CONDITIONS PRECEDENT TO CONFIRMATION OF THE PLAN AND THE EFFECTIVE DATE | 77 |
| 10.1 | Conditions Precedent to Confirmation of the Plan. | 77 |
| 10.2 | Conditions Precedent to the Effective Date. | 77 |
| 10.3 | Notice of the Effective Date. | 78 |

| ARTICLE 11 | DISCHARGE, EXCULPATION FROM LIABILITY, RELEASE, AND GENERAL INJUNCTION | 78 |
| 11.1 | Discharge of Claims. | 78 |
| 11.2 | Exculpation from Liability. | 79 |
| 11.3 | Release. | 79 |
| 11.4 | General Injunction. | 80 |
| 11.5 | Term of Certain Injunctions and Automatic Stay. | 81 |
| 11.6 | No Liability for Tax Claims. | 81 |
| 11.7 | Regulatory or Enforcement Actions. | 81 |

| ARTICLE 12 | RETENTION OF JURISDICTION | 81 |
| 12.1 | General Retention. | 81 |
| 12.2 | Specific Purposes. | 82 |
| 12.3 | Closing of the Accentia Bankruptcy Cases. | 84 |

| ARTICLE 13 | MODIFICATION OF PLAN AND CONFIRMATION OVER OBJECTIONS | 84 |
| 13.1 | Modification of Plan. | 84 |
| 13.2 | Confirmation Over Objections. | 85 |

| ARTICLE 14 | MISCELLANEOUS PROVISIONS | 86 |
| 14.1 | No Admissions. | 86 |
| 14.2 | Revocation or Withdrawal of the Plan. | 86 |
| 14.3 | Standard for Approval of the Bankruptcy Court. | 86 |
| 14.4 | Further Assurances. | 86 |
| 14.5 | Headings. | 86 |
| 14.6 | Notices. | 87 |
| 14.7 | Governing Law. | 87 |
| 14.8 | Limitation on Allowance. | 87 |
| 14.9 | Estimated Claims. | 87 |
| 14.10 | Consent to Jurisdiction. | 87 |
| 14.11 | Setoffs. | 88 |
| 14.12 | Successors and Assigns. | 88 |
| 14.13 | Modification of Payment Terms. | 88 |
| 14.14 | Entire Agreement. | 88 |
| 14.15 | Severability of Plan Provisions. | 88 |
| 14.16 | Controlling Document. | 89 |
| 14.17 | Plan Supplement. | 89 |
| 14.18 | Computation of Time. | 89 |
| 14.19 | Substantial Consummation. | 89 |

## INDEX TO EXHIBITS TO PLAN

Exhibit A    –    Schedule of Intercompany Claims

Exhibit B    –    Rejected Contracts

Exhibit C    –    Pro Forma Recapitalization of Reorganized Accentia

# ARTICLE 1
# INTRODUCTION

Accentia Biopharmaceuticals, Inc. and its wholly-owned subsidiaries, Analytica International, Inc., TEAMM Pharmaceuticals, Inc., AccentRx, Inc., and Accentia Specialty Pharmacy, Inc., as Debtors and Debtors in Possession in the Accentia Bankruptcy Cases, hereby propose the following Plan for the reorganization of the Debtors and the resolution of the outstanding Claims against and Equity Interests in the Debtors pursuant to the provisions of Chapter 11 of the Bankruptcy Code, and request Confirmation of the Plan pursuant to Section 1129 of the Bankruptcy Code. This Plan shall amend, restate and replace in its entirety the Joint Plan of Reorganization of Accentia Biopharmaceuticals, Inc., Analytica International, Inc., TEAMM Pharmaceuticals, Inc., AccentRx, Inc., and Accentia Specialty Pharmacy, Inc. under Chapter 11 of Title 11, United States Code dated as of May 28, 2010 (Docket No. 687). Capitalized terms used in the Plan shall have the meanings ascribed to such terms in Article 2.1 of the Plan. The Debtors are the proponents of the Plan within the meaning of Section 1129 of the Bankruptcy Code.

In summary, but subject to more specific details provided herein, the Plan provides for the reorganization of the Debtors and the payment in full of all of the Allowed Claims against the Debtors and the retention by the Accentia Stockholders of their Equity Interests in Accentia subject to dilution as provided in the Plan. Although the Debtors' Estates are presently being jointly administered for procedural purposes, the Debtors and their Estates have not yet been substantively consolidated. Accordingly, the Plan is really five distinct plans, one for each of the Debtors. The Articles of the Plan generally apply to all of the Debtors, except where otherwise indicated.

Under Section 1125(b) of the Bankruptcy Code, a vote to accept or reject the Plan cannot be solicited from the Holder of a Claim or Equity Interest until such time as the Debtors' Disclosure Statement has been approved by the Bankruptcy Court and distributed to Holders of Claims and Equity Interests. The Debtors' Disclosure Statement was approved by the Bankruptcy Court in the Accentia Disclosure Statement Approval Order, and has been distributed simultaneously with the Plan to all Holders of Claims and Equity Interests whose votes are being solicited. The Disclosure Statement contains, among other things, (a) a discussion of the Debtors' history, businesses, properties, and operations, (b) the Projections for the Debtors' future operations, (c) a summary of significant events which have occurred to date in the Bankruptcy Cases, (d) a summary of the means of implementing and funding the Plan, and (e) the procedures for voting on the Plan. Unless otherwise ordered by the Bankruptcy Court, no materials, other than the Plan and the accompanying Disclosure Statement, Accentia Disclosure Statement Approval Order, Ballot or Accentia Stockholder Ballot, and Committee Support Letter have been approved by the Debtors or the Bankruptcy Court for use in soliciting acceptances or rejections of the Plan. ALL HOLDERS OF CLAIMS AGAINST AND EQUITY INTERESTS IN THE DEBTORS ENTITLED TO VOTE ON THE PLAN ARE ENCOURAGED TO READ THE PLAN AND THE DISCLOSURE STATEMENT, AND ANY EXHIBITS ATTACHED THERETO, IN THEIR ENTIRETY BEFORE VOTING TO ACCEPT OR REJECT THE PLAN.

Subject to certain restrictions and requirements set forth in Section 1127 of the Bankruptcy Code and Bankruptcy Rule 3019 and those restrictions on modifications to the Plan set forth in

Article 13 of the Plan, the Debtors expressly reserve the right to alter, amend, modify, revoke or withdraw the Plan, one or more times, prior to the Plan's substantial consummation.

THE PLAN HAS BEEN APPROVED BY THE BOARD OF DIRECTORS OF ACCENTIA. IN THE OPINION OF THE DEBTORS, THE TREATMENT OF CLAIMS AND EQUITY INTERESTS UNDER THE PLAN CONTEMPLATES A GREATER RECOVERY THAN THAT WHICH IS LIKELY TO BE ACHIEVED UNDER OTHER ALTERNATIVES FOR THE REORGANIZATION OR LIQUIDATION OF THE DEBTORS. ACCORDINGLY, THE DEBTORS BELIEVE THAT CONFIRMATION OF THE PLAN IS IN THE BEST INTERESTS OF CREDITORS AND HOLDERS OF EQUITY INTERESTS, AND THE DEBTORS RECOMMEND THAT CREDITORS AND HOLDERS OF EQUITY INTERESTS VOTE TO ACCEPT THE PLAN.

IN ADDITION, THE OFFICIAL COMMITTEE OF UNSECURED CREDITORS OF THE DEBTORS BELIEVES THAT CONFIRMATION OF THE PLAN IS IN THE BEST INTERESTS OF UNSECURED CREDITORS AND RECOMMENDS THAT UNSECURED CREDITORS VOTE TO ACCEPT THE PLAN. UNSECURED CREDITORS ARE ENCOURAGED TO READ THE COMMITTEE SUPPORT LETTER INCLUDED WITH THE DISCLOSURE STATEMENT AND THE PLAN.

NOTWITHSTANDING ANYTHING HEREIN TO THE CONTRARY, UNLESS OTHERWISE STATED, ALL STATEMENTS IN THE PLAN AND IN THE ACCOMPANYING DISCLOSURE STATEMENT CONCERNING THE HISTORY OF THE DEBTORS' BUSINESSES, THE PAST OR PRESENT FINANCIAL CONDITION OF THE DEBTORS, THE PROJECTIONS FOR THE FUTURE OPERATIONS OF THE DEBTORS, TRANSACTIONS TO WHICH THE DEBTORS WERE OR ARE PARTY, OR THE EFFECT OF CONFIRMATION OF THE PLAN ON HOLDERS OF CLAIMS AGAINST AND EQUITY INTERESTS IN THE DEBTORS ARE ATTRIBUTABLE EXCLUSIVELY TO THE DEBTORS AND NOT TO ANY OTHER PARTY.

THE PLAN AND THE DISCLOSURE STATEMENT HAVE NOT BEEN REQUIRED TO BE PREPARED IN ACCORDANCE WITH FEDERAL OR STATE SECURITIES LAWS OR OTHER APPLICABLE NON-BANKRUPTCY LAW. PERSONS OR ENTITIES TRADING IN OR OTHERWISE PURCHASING OR SELLING OR TRANSFERRING SECURITIES OF ACCENTIA BIOPHARMACEUTICALS, INC. OR BIOVEST INTERNATIONAL, INC. SHOULD EVALUATE THE PLAN AND THE DISCLOSURE STATEMENT IN LIGHT OF THE PURPOSES FOR WHICH THEY WERE PREPARED.

## ARTICLE 2
## DEFINED TERMS; RULES OF CONSTRUCTION

2.1 **Defined Terms**.

2.1.1 As used in the Plan, the following terms (which appear in the Plan as capitalized terms) shall have the meanings set forth below:

**"1 Month Anniversary Date"** means the date that is one (1) month after the Effective Date.

**"4 Month Anniversary Date"** means the date that is four (4) months after the Effective Date.

**"6 Month Anniversary Date"** means the date that is six (6) months after the Effective Date.

**"12 Month Anniversary Date"** means the date that is twelve (12) months after the Effective Date.

**"2006 Secured Debentures"** means the 8% Secured Convertible Debentures Due September 29, 2010, issued by Accentia to the 2006 Secured Debentures Holders in September 2006, in the original aggregate principal amount of $25,000,000.00.

**"2006 Secured Debentures Allowed Class 5 Claim"** has the meaning ascribed to such term in Article 5.6.1 of the Plan.

**"2006 Secured Debentures Claims"** means any and all Secured Claims and other Claims of the 2006 Secured Debentures Holders represented by, relating to, or arising under or in connection with the 2006 Secured Debentures Documents.

**"2006 Secured Debentures Documents"** means all of the Prepetition documents evidencing the 2006 Secured Debentures Claims and any and all other documents executed by Accentia, Biovest, the 2006 Secured Debentures Holders, or Laurus/Valens in any way relating to the 2006 Secured Debentures Claims, as any such documents have been amended, modified or supplemented thereafter in accordance with their terms.

**"2006 Secured Debentures Holders"** means the Holders of the 2006 Secured Debentures Claims.

**"2006 Secured Debentures Warrants"** means the Common Stock Purchase Warrants for the purchase of shares of Accentia Common Stock and Biovest Common Stock, issued to the 2006 Secured Debentures Holders in connection with the issuance of the 2006 Secured Debentures.

**"2007 Debentures"** means the 8% Convertible Debentures Due February 28, 2011, issued by Accentia to the 2007 Debentures Holders in February 2007, in the original aggregate principal amount of $24,940,000.00.

**"2007 Debentures Allowed Class 9 Claim"** has the meaning ascribed to such term in Article 5.10.1 of the Plan.

"**2007 Debentures Claims**" means any and all Claims of the 2007 Debentures Holders represented by, relating to, or arising under or in connection with the 2007 Debentures Documents.

"**2007 Debentures Documents**" means all of the Prepetition documents evidencing the 2007 Debentures Claims and any and all other documents executed by Accentia or the 2007 Debentures Holders in any way relating to the 2007 Debentures Claims, as any such documents have been amended, modified or supplemented thereafter in accordance with their terms.

"**2007 Debentures Holders**" means the Holders of the 2007 Debentures Claims.

"**2007 Debentures Warrants**" means the Common Stock Purchase Warrants for the purchase of shares of Accentia Common Stock, issued to the 2007 Debentures Holders in connection with the issuance of the 2007 Debentures.

"**2008 Secured Debentures**" means the 8% Original Issue Discount Secured Convertible Debentures Due June 19, 2011, issued by Accentia to the 2008 Secured Debentures Holders in June 2008, in the original aggregate principal amount of $8,906,098.00.

"**2008 Secured Debentures Allowed Class 6 Claim**" has the meaning ascribed to such term in Article 5.7.1 of the Plan.

"**2008 Secured Debentures Claims**" means any and all Secured Claims and other Claims of the 2008 Secured Debentures Holders represented by, relating to, or arising under or in connection with the 2008 Secured Debentures Documents.

"**2008 Secured Debentures Documents**" means all of the Prepetition documents evidencing the 2008 Secured Debentures Claims and any and all other documents executed by Accentia or the 2008 Secured Debentures Holders in any way relating to the 2008 Secured Debentures Claims, as any such documents have been amended, modified or supplemented thereafter in accordance with their terms.

"**2008 Secured Debentures Holders**" means the Holders of the 2008 Secured Debentures Claims.

"**2008 Secured Debentures Original Issue Discount**" means an amount equal to $434,598.00.

"**2008 Secured Debentures Warrants**" means the Common Stock Purchase Warrants for the purchase of shares of Accentia Common Stock, issued to the 2008 Secured Debentures Holders in connection with the issuance of the 2008 Secured Debentures.

"**Accentia**" means Accentia Biopharmaceuticals, Inc., a Florida corporation.

"**Accentia Bankruptcy Cases**" means, collectively, the jointly administered cases of the Debtors currently pending before the Bankruptcy Court under Chapter 11 of the Bankruptcy

Code, which cases were commenced by the Debtors on the Petition Date and presently bear Case Nos. 8:08-bk-17795-KRM (Accentia Biopharmaceuticals, Inc.), 8:08-bk-17798-KRM (Analytica International, Inc.), 8:08-bk-17800-KRM (TEAMM Pharmaceuticals, Inc.), 8:08-bk-17801-KRM (AccentRx, Inc.), and 8:08-bk-17802-KRM (Accentia Specialty Pharmacy, Inc.).

"**Accentia Common Stock**" means the common stock, par value $.001 per share, of Accentia.

"**Accentia Disclosure Statement Approval Order**" means the Order Approving First Amended Joint Disclosure Statement, Fixing Time to File Applications for Administrative Expenses, Setting Hearing on Confirmation of First Amended Joint Plan, and Setting Deadlines with Respect to Confirmation Hearing, dated August 16, 2010, entered in the Bankruptcy Cases (Docket No. _____).

"**Accentia Plan Warrants**" has the meaning ascribed to such term in Article 9.13.1 of the Plan.

"**Accentia Royalty Agreement**" means the Royalty Agreement by and between Biovest and Accentia, dated as of October 31, 2006, as amended by a letter agreement dated February 5, 2008, and as further amended, modified or supplemented thereafter in accordance with its terms.

"**Accentia Royalty Termination Agreement**" means the Royalty Termination Agreement by and between Biovest and Reorganized Accentia, and acknowledged by Laurus/Valens, to be executed on the Closing Date, providing for the termination of the Accentia Royalty Agreement, as it may be amended, modified or supplemented thereafter in accordance with its terms. The form of the Accentia Royalty Termination Agreement is included in <u>Composite Exhibit 1</u> attached to the Laurus/Valens Compromise Motion.

"**Accentia Stockholder**" means a Holder of Existing Accentia Common Stock.

"**Accentia Stockholder Ballot**" means the Class 15 Ballot to be distributed in the Plan Solicitation Package to each Accentia Stockholder as of the Record Date, on which the Accentia Stockholders may indicate their acceptance or rejection of the Plan in accordance with the Voting Instructions.

"**Accentia Subsidiaries**" means, collectively, Analytica, TEAMM, AccentRx, and ASP.

"**Accentia Term Loan Agreement**" means the Term Loan and Security Agreement, to be executed on the Closing Date, by and among LV, the lenders party thereto, and Accentia, as it may be amended, modified or supplemented thereafter in accordance with its terms.

"**AccentRx**" means AccentRx, Inc., a Florida corporation.

"**Administrative Expense**" means (a) any cost or expense of administration of the Accentia Bankruptcy Cases under Section 503(b) or 507(a)(1) of the Bankruptcy Code, to the extent

the party claiming any such cost or expense files an application, motion, request or other Bankruptcy Court-approved pleading seeking such expense in the Bankruptcy Cases on or before the applicable Administrative Expense Claim Bar Date, including (i) any actual and necessary costs and expenses of preserving the Estates or operating the businesses of the Debtors (including wages, salaries, or commissions for services rendered) incurred on or after the Petition Date, (ii) any Postpetition cost, indebtedness or contractual obligation duly and validly incurred or assumed by the Debtors in Possession in the ordinary course of their businesses, (iii) any Claim granted administrative priority status by a Final Order of the Bankruptcy Court, (iv) any Claim by a Governmental Unit for taxes (and for interest and/or penalties related to such taxes) due from the Debtors for any Postpetition tax year or period, and (v) compensation or reimbursement of expenses of Professionals awarded or allowed pursuant to an order of the Bankruptcy Court under Section 330(a) or 331 of the Bankruptcy Code (including any amounts held back pursuant to an order of the Bankruptcy Court); (b) any Superpriority Claim; (c) all fees and charges assessed against the Estates under Chapter 123 of title 28, United States Code, 28 U.S.C. §§ 1911-1930; and (d) any and all other costs or expenses of administration of the Accentia Bankruptcy Cases that are allowed by a Final Order of the Bankruptcy Court; provided, however, that, when used in the Plan, the term "Administrative Expense" shall not include any Priority Tax Claim, any Cure Claim, any Environmental Claim, any Disallowed Claim, or, unless otherwise expressly provided in the Plan, any of the Claims in Classes 1 through 14. In no event shall any Claim set out in a Proof of Claim be deemed to be an Administrative Expense (except for any Claim by a Governmental Unit for taxes (and for interest and/or penalties related to such taxes) due from the Debtors for any Postpetition tax year or period).

"**Administrative Expense Claim**" means any Claim for the payment of an Administrative Expense.

"**Administrative Expense Claim Bar Date**" means the date(s) established by one or more orders of the Bankruptcy Court as the deadline for the filing by any Creditor or other party in interest of an application, motion, request or other Bankruptcy Court-approved pleading for allowance of any Administrative Expense Claim, including as established in the Accentia Disclosure Statement Approval Order; provided, however, that (a) unless otherwise ordered by the Bankruptcy Court, the Administrative Expense Claim Bar Date for the filing by any Professional of an application for any Administrative Expense Claim not yet filed as of the date of the Plan shall be no later than fourteen (14) days after the date of entry of the Accentia Disclosure Statement Approval Order, and (b) to the extent the Bankruptcy Court has entered an order establishing a different and specific deadline for a Creditor or other party in interest to file an Administrative Expense Claim, the date set forth in such order shall be deemed to be the Administrative Expense Claim Bar Date as to such Creditor or other party in interest. Any Holder of an Administrative Expense Claim (including a Holder of a Claim for Postpetition federal, state or local taxes) that does not file an application, motion, request or other Bankruptcy Court-approved pleading by the applicable Administrative Expense Claim Bar Date shall be forever barred, estopped and enjoined from ever asserting such Administrative Expense Claim against the Debtors, the Reorganized Debtors, or any of their respective Properties or Estates, and such Holder shall not be entitled to participate in any Distribution under the Plan on account of any such Administrative Expense Claim.

"**Affiliate**" means, with respect to any Person (other than the Debtors), (a) any other Person which, directly or indirectly, is in control of, is controlled by, or is under common control

with such Person, (b) any other Person that, directly or indirectly, owns or controls, whether beneficially, or as trustee, guardian or other fiduciary, twenty-five percent (25%) or more of the equity interests having ordinary voting power in the election of directors of such Person, or (c) any other Person who is a director, officer, joint venturer or partner (i) of such Person, (ii) of any subsidiary of such Person, or (iii) of any Person described in clause (a) above. For the purposes of this definition, control of a Person shall mean the power (direct or indirect) to direct or cause the direction of the management and policies of such Person whether by contract or otherwise. When used in the Plan as relating to the Debtors, the term "Affiliate" has the meaning ascribed to such term in Section 101(2) of the Bankruptcy Code.

**"Allowed Amount"** means the dollar amount in which a Claim is allowed.

**"Allowed Claim"** means a Claim or that portion of a Claim which is not a Disputed Claim or a Disallowed Claim and (a) as to which a Proof of Claim was filed with the Clerk's Office on or before the Bar Date or the Governmental Unit Bar Date, as applicable, or, by order of the Bankruptcy Court, was not required to be so filed, or (b) as to which no Proof of Claim was filed with the Clerk's Office on or before the Bar Date or the Governmental Unit Bar Date, as applicable, but which has been or hereafter is listed by the Debtors in the Schedules as liquidated in amount and not disputed or contingent, and, in the case of subparagraph (a) and (b) above, as to which either (i) no objection to the allowance of such Claim has been filed within the time allowed for the making of objections as fixed by the Plan, the Bankruptcy Code, the Bankruptcy Rules, or an order of the Bankruptcy Court, or (ii) any objection as to the allowance of such Claim has been settled or withdrawn or has been overruled by a Final Order. "Allowed Claim" shall also include a Claim that is allowed by the Bankruptcy Court in a Final Order. "Allowed," when used as an adjective herein (such as Allowed Administrative Expense Claim, Allowed Priority Tax Claim, Allowed Priority Claim, Allowed Secured Claim, and Allowed Unsecured Claim), has a corresponding meaning.

**"Allowed Class ... Claim"** means an Allowed Claim in the particular Class described.

**"Allowed Class ... Equity Interest"** means an Allowed Equity Interest in the particular Class described.

**"Allowed Equity Interest"** means any Equity Interest (a) which is registered as of the Record Date in a stock register that is maintained by Accentia or the Transfer Agent and (b) which either (i) is not a Disputed Equity Interest or (ii) has been Allowed by a Final Order of the Bankruptcy Court.

**"Analytica"** means Analytica International, Inc., a Florida corporation.

**"Analytica Guaranty"** has the meaning ascribed to such term in Article 5.3.2.4 of the Plan. The form of the Analytica Guaranty is included in Composite Exhibit 2 attached to the Laurus/Valens Compromise Motion.

**"ASP"** means Accentia Specialty Pharmacy, Inc., a Florida corporation.

"**Assumed Contracts**" has the meaning ascribed to such term in Article 7.1 of the Plan.

"**Automatic Conversion Amount**" has the meaning ascribed to such term in Articles 5.4.1.3, 5.10.1.1, 5.11.2.3 and 5.14.1.2 of the Plan.

"**Automatic Conversion Date**" has the meaning ascribed to such term in Articles 5.4.1.3, 5.10.1.1, 5.11.2.3 and 5.14.1.2 of the Plan.

"**Automatic Conversion VWAP Price**" means the average of the VWAPs for the ten (10) consecutive Trading Days ending on the Trading Day that is immediately preceding the then applicable Automatic Conversion Date.

"**Avoidance Actions**" means any and all actions to avoid or recover a transfer of Property of the Debtors' Estates or an interest of the Debtors in Property, which a trustee, debtor in possession or other appropriate party in interest may assert on behalf of the Debtors' Estates under Chapter 5 of the Bankruptcy Code, including actions under one or more provisions of Section 542, 544, 545, 547, 548, 549, 550, 551 or 553 of the Bankruptcy Code or under any other similar applicable federal, state or common law, regardless of whether or not such action has been commenced prior to the Effective Date.

"**Ballot**" means the Ballot, accompanying the Disclosure Statement and the Plan, on which (a) Holders of Impaired Claims entitled to vote on the Plan may indicate their acceptance or rejection of the Plan in accordance with the Voting Instructions, (b) certain Holders of Unsecured Claims may make the Convenience Class Opt-In Election or the Convenience Class Opt-Out Election, and (c) Holders of Claims in Classes 3, 4, 6, 8, 10 and 13 may make a Conversion Election.

"**Balloting Agent**" means the company to be retained by Accentia to (a) provide service of the Plan Solicitation Package upon the Accentia Stockholders, (b) receive and tabulate the Accentia Stockholder Ballots and the Master Ballots, and (c) certify to the Bankruptcy Court the results of the votes for acceptance and rejection of the Plan by the Accentia Stockholders.

"**Bankruptcy Cases**" means, collectively, the Accentia Bankruptcy Cases and the Biovest Bankruptcy Cases.

"**Bankruptcy Code**" means title 11 of the United States Code, 11 U.S.C. §§ 101 et seq., as in effect on the Petition Date, together with all amendments and modifications thereto that were subsequently made applicable to the Bankruptcy Cases.

"**Bankruptcy Counsel**" means Stichter, Riedel, Blain & Prosser, P. A.

"**Bankruptcy Court**" means the United States Bankruptcy Court for the Middle District of Florida, Tampa Division, or, as the context requires, any other court of competent jurisdiction exercising jurisdiction over the Bankruptcy Cases.

**"Bankruptcy Rules"** means the Federal Rules of Bankruptcy Procedure, as promulgated under Section 2075 of title 28 of the United States Code, and the Local Rules, as in effect on the Petition Date, together with all amendments and modifications thereto that were subsequently made applicable to the Bankruptcy Cases.

**"Bar Date"** means June 1, 2009, the date set by the Bankruptcy Court in the Bar Date Order as the last day for filing a Proof of Claim against the Debtors in the Accentia Bankruptcy Cases, excluding (a) a Prepetition Claim of a Governmental Unit, for which a Proof of Claim must be filed with the Bankruptcy Court by the Governmental Unit Bar Date, (b) an Administrative Expense Claim, for which a request for payment of an Administrative Expense must be filed with the Bankruptcy Court by the Administrative Expense Claim Bar Date, (c) a Claim for which a bar date may have been otherwise established by a Final Order of the Bankruptcy Court, for which a Proof of Claim must be filed with the Bankruptcy Court by the date set forth in such Final Order, and (d) a Claim with respect to an executory contract or unexpired lease that is assumed or rejected pursuant to the Plan (as to which the bar date shall be as set forth in Article 7.4 or 7.5, respectively, of the Plan) or a Final Order of the Bankruptcy Court (as to which the bar date shall be as set forth in such Final Order).

**"Bar Date Order"** means the Order Granting Debtors' Motion to Set a Bar Date for the Filing of Proofs of Claim and Approving Form of Notice of Bar Date, dated April 8, 2009, entered in the Bankruptcy Cases (Docket No. 257).

**"Biovest"** means Biovest International, Inc., a Delaware corporation.

**"Biovest Bankruptcy Cases"** means, collectively, the jointly administered cases of the Biovest Debtors currently pending before the Bankruptcy Court under Chapter 11 of the Bankruptcy Code, which cases were commenced by the Biovest Debtors on the Petition Date and presently bear Case Nos. 8:08-bk-17796-KRM (Biovest International, Inc.), 8:08-bk-17803-KRM (Biovax, Inc.), 8:08-bk-17804-KRM (AutovaxID, Inc.), 8:08-bk-17805-KRM (Biolender, LLC), and 8:08-bk-17806-KRM (Biolender II, LLC).

**"Biovest Common Stock"** means the common stock, par value $.01 per share, of Biovest.

**"Biovest Confirmation Order"** means the order of the Bankruptcy Court in the Bankruptcy Cases confirming the Biovest Plan pursuant to Section 1129 and other applicable sections of the Bankruptcy Code, as such order may be amended, modified or supplemented.

**"Biovest Debtors"** means, collectively, Biovest, Biovax, Inc., AutovaxID, Inc., Biolender, LLC, and Biolender II, LLC.

**"Biovest Plan"** means the First Amended Joint Plan of Reorganization of Biovest International, Inc., Biovax, Inc., AutovaxID, Inc., Biolender, LLC, and Biolender II, LLC under Chapter 11 of Title 11, United States Code dated as of August 16, 2010, and all exhibits thereto, as the same may be amended, supplemented, modified or amended and restated from time to time in accordance with the provisions of the Biovest Plan and the Bankruptcy Code.

**"Biovest Plan Warrants"** has the meaning ascribed to such term in Article 9.13.2 of the Plan.

**"Biovest Term Loan Agreement"** means the Term Loan and Security Agreement, to be executed on the Closing Date, by and among LV, the lenders party thereto, Biovest, Biovax, Inc., AutovaxID, Inc., Biolender, LLC, and Biolender II, LLC, as it may be amended, modified or supplemented thereafter in accordance with its terms.

**"Board of Directors"** means the Board of Directors of Accentia.

**"Business Day"** means any day other than (a) a Saturday, (b) a Sunday, (c) a "legal holiday" (as "legal holiday" is defined in Bankruptcy Rule 9006(a)), or (d) a day on which commercial banks in Tampa, Florida are required or authorized to close by law.

**"Cash"** means cash, cash equivalents and other readily marketable direct obligations of the United States, as determined in accordance with generally accepted accounting principles, including bank deposits, certificates of deposit, checks and similar items. When used in the Plan with respect to a Distribution under the Plan, the term "Cash" means lawful currency of the United States, a certified check, a cashier's check, a wire transfer of immediately available funds from any source, or a check from Reorganized Accentia drawn on a domestic bank.

**"Causes of Action"** means any and all of the Debtors' or the Debtors' Estates actions, claims, demands, rights, defenses, counterclaims, suits and causes of action, whether known or unknown, in law, equity or otherwise, against any Creditor or other third party, including (a) the Avoidance Actions, and (b) any and all other claims or rights or proceedings of any value whatsoever, at law or in equity, including the Collegium Adversary Proceeding, turnover actions and claims of the type referred to in the Disclosure Statement or in Article 8.12 of the Plan. The Causes of Action shall vest in the Reorganized Debtors on the Effective Date. When used in the Plan, the term "Causes of Action" shall not include any claims, obligations, suits, judgments, damages, rights, remedies, causes of action, charges, costs, debts, indebtedness, or liabilities released or waived by the Debtors pursuant to a Final Order of the Bankruptcy Court.

**"Causes of Action Recoveries"** means the proceeds, benefits and other recoveries of any Causes of Action received by the Reorganized Debtors.

**"Claim"** has the meaning ascribed to such term in Section 101(5) of the Bankruptcy Code. Notwithstanding anything to the contrary contained herein, when used in the Plan, the term "Claim" shall be given the broadest possible meaning permitted by applicable law and shall include all manner and type of claim, whenever and wherever such claim may arise, including Administrative Expense Claims, Environmental Claims, and claims based upon or arising under any federal or state securities laws.

**"Class"** means a category of Claims or Equity Interests classified together as described in Article 4 of the Plan.

**"Class 3 Convertible Plan Note"** has the meaning ascribed to such term in Article 5.4.1.3 of the Plan.

**"Class 3 Interest"** has the meaning ascribed to such term in Article 5.4.1.3 of the Plan.

**"Class 3 Plan Note"** has the meaning ascribed to such term in Article 5.4.1.1 of the Plan.

**"Class 3 Plan Shares"** has the meaning ascribed to such term in Articles 5.4.1.2 and 5.4.1.3 of the Plan.

**"Class 4 Plan Note"** has the meaning ascribed to such term in Article 5.5.1.1 of the Plan.

**"Class 4 Plan Shares"** has the meaning ascribed to such term in Article 5.5.1.5 of the Plan.

**"Class 5 Plan Shares"** has the meaning ascribed to such term in Articles 5.6.1.1 and 5.6.1.5 of the Plan.

**"Class 5 Plan Warrant"** has the meaning ascribed to such term in Article 5.6.1.5 of the Plan.

**"Class 5 Pledged Biovest Shares"** has the meaning ascribed to such term in Article 5.6.1 of the Plan.

**"Class 6 Plan Debenture"** has the meaning ascribed to such term in Article 5.7.1.1 of the Plan.

**"Class 6 Plan Shares"** has the meaning ascribed to such term in Articles 5.7.1.5, 5.7.1.6, 5.7.1.7 and 5.7.1.9 of the Plan.

**"Class 6 Plan Warrant"** has the meaning ascribed to such term in Article 5.7.1.9 of the Plan.

**"Class 8 Plan Shares"** has the meaning ascribed to such term in Article 5.9.1.2 of the Plan.

**"Class 9 Plan Debenture"** has the meaning ascribed to such term in Article 5.10.1.1 of the Plan.

**"Class 9 Plan Debenture Maturity Date"** has the meaning ascribed to such term in Article 5.10.1.1 of the Plan.

**"Class 9 Plan Shares"** has the meaning ascribed to such term in Articles 5.10.1.1 and 5.10.1.3 of the Plan.

**"Class 9 Plan Warrant"** has the meaning ascribed to such term in Article 5.10.1.3 of the Plan.

**"Class 10 Plan Shares"** has the meaning ascribed to such term in Articles 5.11.2.2 and 5.11.2.3 of the Plan.

**"Class 13 Plan Note"** has the meaning ascribed to such term in Article 5.14.1.2 of the Plan.

**"Class 13 Plan Note Maturity Date"** has the meaning ascribed to such term in Article 5.14.1.2 of the Plan.

**"Class 13 Plan Shares"** has the meaning ascribed to such term in Articles 5.14.1.1, 5.14.1.2 and 5.14.1.4 of the Plan.

**"Class 13 Plan Warrant"** has the meaning ascribed to such term in Article 5.14.1.4 of the Plan.

**"Class 15 Plan Shares"** has the meaning ascribed to such term in Article 5.16 of the Plan.

**"Clerk"** means the Clerk of the Bankruptcy Court.

**"Clerk's Office"** means the Office of the Clerk of the Bankruptcy Court located at the Sam M. Gibbons United States Courthouse, 801 N. Florida Avenue, 5th Floor, Tampa, Florida 33602.

**"Closing"** has the meaning ascribed to such term in Article 5.3.1 of the Plan.

**"Closing Date"** means the date of the Closing under the Accentia Term Loan Agreement.

**"Collateral"** means Property in which any of the Estates has (or had) an interest and that secures (or secured), in whole or part, whether by agreement, statute, or judicial decree, the payment of a Claim.

**"Collegium Adversary Proceeding"** means the adversary proceeding filed in the Bankruptcy Cases styled as *TEAMM Pharmaceuticals, Inc. and Accentia Biopharmaceuticals, Inc., Plaintiffs, vs. Collegium Pharmaceuticals, Inc., Defendant*, Adv. Pro. No. 8:09-ap-00377-KRM.

**"Committee"** means the Committee of the Unsecured Creditors appointed by the United States Trustee in the Bankruptcy Cases pursuant to Section 1102 of the Bankruptcy Code on December 1, 2008 (Docket No. 74), as such appointment was amended by the United States Trustee

on June 9, 2009 (Docket No. 336), on May 27, 2010 (Docket No. 686) and on August 9, 2010 (Docket No. 874), and as the membership of such Committee may hereafter be further amended or modified by the United States Trustee.

"**Committee Support Letter**" means a letter from the Committee to Unsecured Creditors dated August 16, 2010, recommending that Unsecured Creditors vote to accept the Plan.

"**Confirmation**" or "**Confirmation of the Plan**" means the approval of the Plan by the Bankruptcy Court at the Confirmation Hearing.

"**Confirmation Date**" means the date on which the Confirmation Order is entered on the Docket by the Clerk pursuant to Bankruptcy Rule 5003(a).

"**Confirmation Hearing**" means the hearing which will be held before the Bankruptcy Court to consider Confirmation of the Plan and related matters pursuant to Section 1128(a) of the Bankruptcy Code, as such hearing may be adjourned or continued from time to time. The date of the Confirmation Hearing is set forth in the Accentia Disclosure Statement Approval Order.

"**Confirmation Order**" means the order of the Bankruptcy Court in the Bankruptcy Cases confirming the Plan pursuant to Section 1129 and other applicable sections of the Bankruptcy Code, as such order may be amended, modified or supplemented.

"**Convenience Class Opt-In Election**" means the irrevocable election by a Holder of an Unsecured Claim in an amount greater than $10,000.00 to have such Unsecured Claim reduced to $10,000.00 and treated as an Unsecured Convenience Claim under the Plan. The election must be made by the Holder on the Ballot and filed with the Bankruptcy Court on or before the Voting Deadline.

"**Convenience Class Opt-Out Election**" means the irrevocable election by a Holder of an Unsecured Claim in an amount less than or equal to $10,000.00 to have such Unsecured Claim treated as a Class 10 Unsecured Claim under the Plan. The election must be made by the Holder on the Ballot and filed with the Bankruptcy Court on or before the Voting Deadline.

"**Conversion Election**" means the election by the Holder of a Class 3 Claim, the Holder of a Class 4 Claim, a 2008 Secured Debentures Holder, the Holder of a Class 8 Claim, the Holder of a Class 10 Claim, or a Convertible Preferred Stock Holder to convert the Allowed Amount of its Claim into shares of Reorganized Accentia Common Stock as provided in Article 5 of the Plan.

"**Convertible Preferred Stock**" means the Series A-1 Convertible Preferred Stock, par value $1.00 per share, of Accentia.

"**Convertible Preferred Stock Allowed Class 13 Claim**" has the meaning ascribed to such term in Article 5.14.1 of the Plan.

**"Convertible Preferred Stock Claims"** means all Claims and equity securities (as defined in Section 101(16) of the Bankruptcy Code) represented by, relating to, or arising under or in connection with the Convertible Preferred Stock Documents.

**"Convertible Preferred Stock Documents"** means all of the Prepetition documents evidencing the Convertible Preferred Stock Claims and any and all other documents executed by Accentia or the Convertible Preferred Stock Holders in any way relating to the Convertible Preferred Stock Claims, as any such documents have been amended, modified or supplemented thereafter in accordance with their terms.

**"Convertible Preferred Stock Holders"** means the Holders of the Convertible Preferred Stock Claims.

**"Convertible Preferred Stock Warrants"** means the Common Stock Purchase Warrants for the purchase of shares of Accentia Common Stock, issued to the Convertible Preferred Stock Holders in connection with the issuance of the Convertible Preferred Stock.

**"Creditor"** means the Holder of a Claim, within the meaning of Section 101(10) of the Bankruptcy Code, including Secured Creditors, Unsecured Creditors, and Creditors with Administrative Expense Claims, Priority Tax Claims, Priority Claims, Cure Claims, and Environmental Claims.

**"Cure Claim"** means any Claim of any nature whatsoever, including any Claim for any cure payment, cost or other amount, if any, due and owing by the Debtors pursuant to Section 365(b) of the Bankruptcy Code or otherwise and any Claim for a default (monetary or non-monetary), arising from, relating to or in connection with the assumption by the Debtors of any Assumed Contract (provided such Claim is filed with the Bankruptcy Court by the Cure Claim Submission Deadline). In no event shall any Claim set out in a Proof of Claim be deemed to be a Cure Claim.

**"Cure Claim Submission Deadline"** means, and shall occur on the same day as, the Voting Deadline.

**"D & O Policy"** means any insurance policy in effect at any time on or before the Effective Date (and as such policy may be continued following the Effective Date) under which any Person carrying on an insurance business may be liable to satisfy, or to indemnify or reimburse for payments made to satisfy, part or all of a judgment rendered against, or a settlement made to resolve claims made against, or defense costs incurred by, the Debtors or any past, present or future director, officer, trustee or employee of the Debtors, including the policies issued to Accentia by XL Specialty Insurance Company (Policy Numbers ELU107905-08 and ELU107906-08) and Carolina Casualty Insurance Company (Policy Number 1853099).

**"Debt"** has the meaning ascribed to such term in Section 101(12) of the Bankruptcy Code.

**"Debtors"** means, collectively, Accentia, Analytica, TEAMM, AccentRx, and ASP.

**"Debtors in Possession"** means, collectively, Accentia, Analytica, TEAMM, AccentRx, and ASP, as debtors in possession in the Accentia Bankruptcy Cases.

**"Determination Date"** means the later of (i) the Effective Date and (ii) the date the order of the Bankruptcy Court allowing a Claim becomes a Final Order (if applicable).

**"Disallowed Claim"** means any Claim which has been disallowed by an order of the Bankruptcy Court, which order has not been stayed pending appeal.

**"Disclosure Statement"** means the First Amended Joint Disclosure Statement for First Amended Joint Plan of Reorganization of Accentia Biopharmaceuticals, Inc., Analytica International, Inc., TEAMM Pharmaceuticals, Inc., AccentRx, Inc., and Accentia Specialty Pharmacy, Inc. under Chapter 11 of Title 11, United States Code dated as of August 16, 2010, including all Exhibits attached thereto, as submitted and filed by the Debtors pursuant to Section 1125 of the Bankruptcy Code in respect of the Accentia Bankruptcy Cases and approved by the Bankruptcy Court in the Accentia Disclosure Statement Approval Order, and as such Disclosure Statement may be amended, supplemented, modified or amended and restated from time to time.

**"Disputed Claim"** means any Claim or portion thereof (other than a Disallowed Claim) that is not an Allowed Claim and (a) as to which a Proof of Claim has been filed with the Clerk's Office or is deemed filed under applicable law or order of the Bankruptcy Court, or (b) which has been scheduled in the Schedules, and, in the case of subparagraph (a) and (b) above, as to which an objection has been or may be timely filed or deemed filed under the Plan, the Bankruptcy Code, the Bankruptcy Rules, or an order of the Bankruptcy Court and any such objection has not been (i) withdrawn, (ii) overruled by an order of the Bankruptcy Court, or (iii) sustained by an order of the Bankruptcy Court. In addition to the foregoing, a Disputed Claim shall mean a Claim that is not an Allowed Claim, whether or not an objection has been or may be timely filed, if (a) the amount of the Claim specified in the Proof of Claim exceeds the amount of any corresponding Claim scheduled in the Schedules, (b) the classification of the Claim specified in the Proof of Claim differs from the classification of any corresponding Claim scheduled in the Schedules, (c) any corresponding Claim has been scheduled in the Schedules as disputed, contingent or unliquidated, (d) no corresponding Claim has been scheduled in the Schedules, or (e) such Claim is reflected as unliquidated or contingent in the Proof of Claim filed in respect thereof. To the extent an objection relates to the allowance of only a part of a Claim, such Claim shall be a Disputed Claim only to the extent of the amount subject to objection. "Disputed," when used as an adjective herein (such as Disputed Administrative Expense Claim, Disputed Priority Tax Claim, Disputed Priority Claim, Disputed Secured Claim, and Disputed Unsecured Claim), has a corresponding meaning.

**"Disputed Equity Interest"** means any Equity Interest (a) which is not registered as of the Record Date in a stock register that is maintained by Accentia or the Transfer Agent, or (b) as to which an objection has been or may be timely filed or deemed filed under the Plan, the Bankruptcy Code, the Bankruptcy Rules, or an order of the Bankruptcy Court and any such objection has not been (i) withdrawn, (ii) overruled by an order of the Bankruptcy Court, or (iii) sustained by an order of the Bankruptcy Court.

"**Distribution**" means a distribution of Cash or shares of Reorganized Accentia Common Stock, as the context requires, to a Creditor on account of an Allowed Claim pursuant to the terms of the Plan.

"**Distribution Date**" means, when used with respect to an Allowed Administrative Expense Claim (including Allowed Administrative Expense Claims of Professionals) or an Allowed Unsecured Convenience Claim in Class 11, the date which is as soon as reasonably practicable (as determined by Reorganized Accentia) after the Determination Date, but in no event more than ten (10) days after the Determination Date. "Distribution Date," when used with respect to an Allowed Priority Tax Claim or Allowed Claims in Classes 1, 3, 4, 6, 7, 8, 10 and 14, means the date or dates for any Distribution to Holders of Allowed Priority Tax Claims or Allowed Claims in Classes 1, 3, 4, 6, 7, 8, 10 and 14 as provided in the Plan, unless such date or dates have been otherwise established by an order of the Bankruptcy Court.

"**Docket**" means the docket or dockets in the Bankruptcy Cases maintained by the Clerk.

"**Effective Date**" means, and shall occur on, the first Business Day on which all of the conditions precedent to the occurrence of the Effective Date contained in Article 10.2 of the Plan have been satisfied or waived by the Debtors.

"**Effective Date Notice**" has the meaning ascribed to such term in Article 10.3 of the Plan.

"**Entity**" has the meaning ascribed to such term in Section 101(15) of the Bankruptcy Code.

"**Environmental Claim**" means any Claim or demand now existing or hereafter arising (including all thereof in the nature of or sounding in tort, contract, warranty or under any other theory of law or equity) against the Debtors, their predecessors, successors or assigns, or Affiliates, or their present or former officers, directors or employees, arising out of, or related to, any Environmental Laws, including any Claim or demand: (a) to restrict or enjoin, or recover damages, costs or expenses to remedy, any release, environmental pollution, contamination or nuisance or to require the Debtors to remedy or to reimburse, pay or incur costs to remedy any release, environmental pollution, contamination or nuisance, (b) to remedy, reimburse, compensate or pay any damage, penalty, fine or forfeiture for, or to restrict or enjoin, any violation of or alleged violation of any Environmental Laws, (c) to pay any contractual claim with respect to any Environmental Laws, or (d) to pay or reimburse any Person or Entity for personal injury (including worker's compensation, sickness, disease or death), tangible or intangible property damage or natural resource damage arising out of, or relating to, any release, environmental pollution, contamination or nuisance, whether or not contemplated in subparagraphs (a) through (c) above, or whether or not such Claim or demand is reduced to judgment, liquidated, unliquidated, fixed, contingent, matured, unmatured, disputed, undisputed, secured or unsecured, or whether or not the facts of or legal basis for such Claim or demand are known or unknown, or whether or not the injury or damage giving rise to such Claim or demand was diagnosable, undiagnosable, detectable or undetectable before the Confirmation of the Plan or before the Final Decree Date. Notwithstanding anything to the contrary

contained herein, when used in the Plan, the term "Environmental Claim" shall be broadly construed and shall include (a) claims that may or may not presently constitute "claims" within the meaning of Section 101(5) of the Bankruptcy Code and (b) demands that may or may not presently constitute "demands" within the meaning of Section 524(g)(5) of the Bankruptcy Code.

**"Environmental Laws"** means all federal, state, local and foreign laws, statutes, ordinances, codes, rules, standards and regulations, now or hereafter in effect, and any judicial or administrative interpretation thereof, including any judicial or administrative order, consent decree, or judgment, imposing liability or standards of conduct for or relating to the regulation and protection of human health, safety, the environment and natural resources (including ambient air, surface water, groundwater, wetlands, land surface or subsurface strata, wildlife, aquatic species and vegetation). As used in the Plan, the term "Environmental Laws" shall include (a) the Comprehensive Environmental Response, Compensation and Liability Act of 1980, as amended by the Superfund Amendments and Reauthorization Act of 1986, 42 U.S.C. §§ 9601, et seq., (b) the Resource Conservation and Recovery Act, as amended by the Hazardous and Solid Waste Amendment of 1984, 42 U.S.C. §§ 6901, et seq., (c) the Clean Air Act, 42 U.S.C. §§ 7401, et seq., (d) the Clean Water Act of 1977, 33 U.S.C. §§ 1251, et seq., (e) the Toxic Substances Control Act, 15 U.S.C. §§ 2601, et seq., (f) the Oil Pollution Act of 1990 (OPA 90), (g) the Hazardous Materials Transportation Authorization Act of 1994, 49 U.S.C. §§ 5101, et seq., (h) the Federal Insecticide, Fungicide, and Rodenticide Act, 7 U.S.C. §§ 136, et seq., (i) the Solid Waste Disposal Act, 42 U.S.C. §§ 6901, et seq., (j) the Federal Water Pollution Control Act, 33 U.S.C. §§ 1251, et seq., (k) the Occupational Safety and Health Act, 29 U.S.C. §§ 651, et seq., (l) the Safe Drinking Water Act, 42 U.S.C. §§ 300(f), et seq., (m) all other statutes or laws issued or promulgated by any Governmental Unit, as they may be amended from time to time, relating to environmental contamination or pollution, air pollution, water pollution, noise control and/or the handling, transportation, discharge, existence, release, disposal or recovery of on-site or off-site hazardous, toxic or dangerous wastes, substances, chemicals or materials (including petroleum), including any transfer of ownership notification or approval statutes, and (n) the ordinances, rules, regulations, orders, notices of violation, requests, demands and requirements issued or promulgated by any Governmental Unit in connection with such statutes or laws.

**"Equity Interests"** means the interests in Accentia held by all Holders of Existing Accentia Common Stock; provided, however, that, when used in the Plan, the term "Equity Interests" shall not include the Existing Accentia Stock Options or the Existing Accentia Stock Warrants.

**"Estates"** means, collectively, the estates created for the Debtors by Section 541 of the Bankruptcy Code upon the commencement of the Accentia Bankruptcy Cases.

**"Estimation Hearing"** means a hearing for the estimation of Claims under Section 502(c) of the Bankruptcy Code.

**"Exchange Act"** means the Securities Exchange Act of 1934, as it has been or may be amended from time to time, and the rules and regulations promulgated thereunder.

**"Exculpated Parties"** has the meaning ascribed to such term in Article 11.2 of the Plan.

**"Exhibit"** means an exhibit annexed to the Plan or to the Disclosure Statement, as the context requires.

**"Existing Accentia Common Stock"** means the 59,548,208 shares of Accentia Common Stock issued and outstanding on the Petition Date. As used in the Plan, the term "Existing Accentia Common Stock" shall not include any shares of Accentia Common Stock held in treasury by Accentia.

**"Existing Accentia Stock Options"** means any options granted by Accentia to its employees, officers, directors, or consultants, and outstanding on the Effective Date, to purchase shares of Accentia Common Stock, as authorized by the Board of Directors or a duly appointed committee of the Board of Directors.

**"Existing Accentia Stock Warrants"** means any warrants issued by Accentia, and outstanding on the Effective Date, for the purchase of shares of Accentia Common Stock; provided, however, that, when used in the Plan, the term "Existing Accentia Stock Warrants" shall not include the Laurus/Valens Warrants, the 2006 Secured Debentures Warrants, the 2007 Debentures Warrants, the 2008 Secured Debentures Warrants, and the Convertible Preferred Stock Warrants.

**"Exit Financing"** has the meaning ascribed to such term in Article 8.16 of the Plan.

**"Federal Judgment Interest Rate"** means a rate equal to the weekly average 1-year constant maturity Treasury yield, as published by the Board of Governors of the Federal Reserve System, for the calendar week preceding the Confirmation Date.

**"Final Decree"** means the final decree for the Accentia Bankruptcy Cases entered by the Bankruptcy Court after the Effective Date pursuant to Bankruptcy Rule 3022.

**"Final Decree Date"** means the date on which the Final Decree, obtained after a hearing on notice to the Notice Parties and to such other Persons and Entities as the Bankruptcy Court may direct, is entered on the Docket.

**"Final Order"** means (a) an order, judgment, ruling or other decree (or any revision, modification or amendment thereto) issued and entered by the Bankruptcy Court or by any state or other federal court as may have jurisdiction over any proceeding in connection with the Bankruptcy Cases for the purpose of such proceeding, which order, judgment, ruling or other decree has not been reversed, vacated, stayed, modified or amended and as to which (i) no appeal, petition for review, reargument, rehearing, reconsideration or certiorari has been taken and is pending and the time for the filing of any such appeal, petition for review, reargument, rehearing, reconsideration or certiorari has expired, or (ii) such appeal or petition has been heard and dismissed or resolved and the time to further appeal or petition has expired with no further appeal or petition pending; or (b) a stipulation or other agreement entered into which has the effect of any such aforesaid order, judgment, ruling or other decree with like finality.

**"Florida Act"** means The Florida Business Corporation Act.

"**Governmental Unit**" has the meaning ascribed to such term in Section 101(27) of the Bankruptcy Code.

"**Governmental Unit Bar Date**" means June 1, 2009, the date set by the Bankruptcy Court in the Bar Date Order as the last day for a Governmental Unit to file a Proof of Claim against the Debtors in the Accentia Bankruptcy Cases.

"**Holder**" means (a) as to any Claim, (i) the owner or holder of such Claim as such is reflected on the Proof of Claim filed with respect to such Claim, or (ii) if no Proof of Claim has been filed with respect to such Claim, the owner or holder of such Claim as such is reflected on the Schedules or the books and records of the Debtors or as otherwise determined by order of the Bankruptcy Court, or (iii) if the owner or holder of such Claim has assigned or transferred the Claim to a third party and the Debtors or the Reorganized Debtors, as the case may be, have received sufficient written evidence of such assignment or transfer, the assignee or transferee; and (b) as to any Equity Interest, the record owner or holder of such Equity Interest as of the Record Date as shown on the stock register that is maintained by Accentia or the Transfer Agent or as otherwise determined by order of the Bankruptcy Court.

"**Impaired**" refers to any Claim or Equity Interest that is impaired within the meaning of Section 1124 of the Bankruptcy Code.

"**Indemnification Rights**" means any obligations or rights of any of the Debtors to indemnify, reimburse, advance, or contribute to the losses, liabilities or expenses of an Indemnitee pursuant to such Debtor's articles or certificate of incorporation, articles of organization, bylaws, operating agreement, or policy of providing indemnification, applicable law, or a specific agreement in respect of any claims, demands, suits, causes of action or proceedings against an Indemnitee based upon any act or omission related to an Indemnitee's service with, for, or on behalf of such Debtor.

"**Indemnitee**" means all present and former directors, officers, employees, agents or representatives of the Debtors who are entitled to assert Indemnification Rights.

"**Initial Distribution**" has the meaning ascribed to such term in Article 9.1 of the Plan.

"**Initial Distribution Date**" means the date on which the Initial Distribution is commenced by Reorganized Accentia.

"**Intercompany Claim**" means any Claim which one Debtor holds against another Debtor. A schedule of the Intercompany Claims is set forth in Exhibit A attached to the Plan.

"**Laurus**" means Laurus Master Fund, Ltd. (In Liquidation), a Cayman Islands company, and its successors or assigns.

"**Laurus Prepetition Claims**" means any and all Secured Claims and other Claims of Laurus represented by, relating to, or arising under or in connection with the Laurus Prepetition Loan

Documents, including all of the Claims of Laurus described or referenced in the Laurus/Valens Proofs of Claim.

"**Laurus Prepetition Loan Documents**" means all of the Prepetition documents evidencing the Laurus Prepetition Claims and any and all other documents executed by the Debtors or the Biovest Debtors or Laurus/Valens in any way relating to the Laurus Prepetition Claims, as any such documents have been amended, modified or supplemented thereafter in accordance with their terms.

"**Laurus/Valens**" means, collectively, Laurus, LV, PSource, Valens, and each of their respective Affiliates.

"**Laurus/Valens Allowed Debenture Claim**" has the meaning ascribed to such term in Article 5.3.2.5 of the Plan.

"**Laurus/Valens Allowed Preferred Stock Claim**" has the meaning ascribed to such term in Article 5.3.2.6 of the Plan.

"**Laurus/Valens Allowed Secured Claim**" has the meaning ascribed to such term in Article 5.3.2.1 of the Plan.

"**Laurus/Valens Class 5 Shares**" has the meaning ascribed to such term in Article 5.3.2.5 of the Plan.

"**Laurus/Valens Class 13 Shares**" has the meaning ascribed to such term in Article 5.3.2.6 of the Plan.

"**Laurus/Valens Compromise Motion**" means the Debtors' Motion for Approval of Settlement Between the Debtors and Laurus Master Fund, Ltd. (in Liquidation) and its Affiliates and Assignees, Pursuant to 11 U.S.C. § 105(a) and Rule 9019(a) of the Federal Rules of Bankruptcy Procedure (Docket No. 627).

"**Laurus/Valens Compromise Order**" means the Order Granting Debtors' Motion for Approval of Settlement Between the Debtors and Laurus Master Fund, Ltd. (in Liquidation) and its Affiliates and Assignees, Pursuant to 11 U.S.C. § 105(a) and Rule 9019(a) of the Federal Rules of Bankruptcy Procedure, dated June 8, 2010, entered in the Bankruptcy Cases (Docket No. 698).

"**Laurus/Valens Conversion Shares**" has the meaning ascribed to such term in Article 5.3.2.2 of the Plan.

"**Laurus/Valens Prepetition Claims**" means, collectively, the Laurus Prepetition Claims, the LV Prepetition Claims, the PSource Prepetition Claims, and the Valens Prepetition Claims.

"**Laurus/Valens Prepetition Loan Documents**" means, collectively, the Laurus Prepetition Loan Documents, the LV Prepetition Loan Documents, the PSource Prepetition Loan Documents, and the Valens Prepetition Loan Documents.

"**Laurus/Valens Proofs of Claim**" means, collectively, (a) claim number 111 asserting a Secured Claim in the amount of $18,368,284.24 filed by Laurus/Valens in Case No. 8:08-bk-17795-KRM (Accentia Biopharmaceuticals, Inc.), and (b) claim number 9 asserting a Secured Claim in the amount of $34,884,063.00 filed by Laurus/Valens in Case No. 8:08-bk-17798-KRM (Analytica International, Inc.).

"**Laurus/Valens Settlement**" has the meaning ascribed to such term in Article 5.3.1 of the Plan.

"**Laurus/Valens Settlement Documents**" has the meaning ascribed to such term in Article 5.3.1 of the Plan. The Laurus/Valens Settlement Documents with respect to the Debtors are included in Composite Exhibit 2 attached to the Laurus/Valens Compromise Motion.

"**Laurus/Valens Term Notes**" has the meaning ascribed to such term in Article 5.3.2.1 of the Plan. The form of the Laurus/Valens Term Note is included in Composite Exhibit 2 attached to the Laurus/Valens Compromise Motion.

"**Laurus/Valens Warrants**" means, collectively, (a) the Common Stock Purchase Warrant dated August 16, 2005, issued by Accentia to Laurus, for the purchase of up to 1,000,000 shares of Accentia Common Stock at an exercise price of $2.67 per share, (b) the Common Stock Purchase Warrant dated September 29, 2006, issued by Accentia to Laurus, for the purchase of up to 627,240 shares of Accentia Common Stock at an exercise price of $2.75 per share, (c) the Common Stock Purchase Warrant dated October 31, 2007, issued by Accentia to Laurus, for the purchase of up to 4,024,398 shares of Accentia Common Stock at an exercise price of $2.67 per share, (d) the Common Stock Purchase Warrant dated January 18, 2008, issued by Accentia to Valens Offshore I, for the purchase of up to 365,169 shares of Accentia Common Stock at an exercise price of $2.67 per share, and (e) the Common Stock Purchase Warrant dated January 18, 2008, issued by Accentia to Valens U.S., for the purchase of up to 196,629 shares of Accentia Common Stock at an exercise price of $2.67 per share.

"**Liabilities**" means any and all liabilities, obligations, judgments, damages, charges, costs, Debts, and indebtedness of any and every kind and nature whatsoever, whether heretofore, now or hereafter owing, arising, due or payable, direct or indirect, absolute or contingent, liquidated or unliquidated, known or unknown, foreseen or unforeseen, in law, equity or otherwise, of or relating to the Debtors or any predecessor, successor or assign thereof, or otherwise based in whole or in part upon any act or omission, transaction, event or other occurrence taking place prior to the Effective Date in any way relating to the Debtors or any predecessor, successor or assign thereof, any Property of the Debtors, the businesses or operations of the Debtors, the Bankruptcy Cases, or the Plan, including any and all liabilities, obligations, judgments, damages, charges, costs, Debts, and indebtedness based in whole or in part upon any Claim of or relating to successor liability, transferee liability, or other similar theory; provided, however, that, when used in the Plan, the term

"Liabilities" shall not include any obligations of the Reorganized Debtors expressly set forth in the Plan.

**"Lien"** means, with respect to any Property, any mortgage, pledge, security interest, lien, right of first refusal, option or other right to acquire, assignment, charge, claim, easement, conditional sale agreement, title retention agreement, defect in title, or other encumbrance or hypothecation or restriction of any nature pertaining to or affecting such Property, whether voluntary or involuntary and whether arising by law, contract or otherwise.

**"Local Rules"** means the Local Rules of the United States Bankruptcy Court for the Middle District of Florida, as in effect on the Petition Date, together with all amendments and modifications thereto that were subsequently made applicable to the Bankruptcy Cases.

**"LV"** means LV Administrative Services, Inc., a Delaware corporation, as administrative and collateral agent for Laurus, PSource, and Valens, and its successors or assigns.

**"LV Prepetition Claims"** means any and all Secured Claims and other Claims of LV represented by, relating to, or arising under or in connection with the LV Prepetition Loan Documents, including all of the Claims of LV described or referenced in the Laurus/Valens Proofs of Claim.

**"LV Prepetition Loan Documents"** means all of the Prepetition documents evidencing the LV Prepetition Claims and any and all other documents executed by the Debtors or the Biovest Debtors or Laurus/Valens in any way relating to the LV Prepetition Claims, as any such documents have been amended, modified or supplemented thereafter in accordance with their terms.

**"Market Price"** means the average of the VWAPs for the ten (10) consecutive Trading Days ending on the Trading Day that is immediately preceding the Effective Date; provided, however, that with respect to a Disputed Claim, the term "Market Price" means the average of the VWAPs for the ten (10) consecutive Trading Days ending on the Trading Day that is immediately preceding the date that an order of the Bankruptcy Court determining that such Disputed Claim is an Allowed Claim becomes a Final Order.

**"Master Ballot"** means the Master Ballot to be distributed to brokers, proxy intermediaries, custodian banks or other nominees, on which such parties shall indicate the acceptance or rejection of the Plan by Accentia Stockholders in accordance with the Voting Instructions.

**"Master Service List"** has the meaning ascribed to such term in the Master Service List Order.

**"Master Service List Order"** means the Order Granting Debtors' Emergency Motion to Establish Notice Procedures dated November 19, 2008, entered in the Bankruptcy Cases (Docket No. 44).

**"McKesson"** means McKesson Corporation, a Delaware corporation.

"**McKesson Accentia Shares**" means the 1,353,229 shares of Accentia Common Stock issued to McKesson by Accentia Prepetition, with the understanding that such shares would thereafter be repurchased by Accentia as repayment for the McKesson Prepetition Claims.

"**McKesson Allowed Class 4 Claim**" has the meaning ascribed to such term in Article 5.5.1 of the Plan.

"**McKesson Pledged Biovest Shares**" means the 18,000,000 shares of Biovest Common Stock owned by Accentia and pledged to McKesson as collateral for the McKesson Prepetition Claims.

"**McKesson Prepetition Claims**" means any and all Secured Claims and other Claims of McKesson represented by, relating to, or arising under or in connection with the McKesson Prepetition Loan Documents.

"**McKesson Prepetition Loan Documents**" means all of the Prepetition documents evidencing the McKesson Prepetition Claims and any and all other documents executed by the Debtors, McKesson or Laurus/Valens in any way relating to the McKesson Prepetition Claims, as any such documents have been amended, modified or supplemented thereafter in accordance with their terms.

"**Notice Parties**" means (a) Reorganized Accentia, (b) Bankruptcy Counsel, (c) counsel to Laurus/Valens, (d) counsel to the Committee (to the extent the Committee is then in existence), (e) the United States Trustee, and (f) all parties then set forth on the Master Service List.

"**Option C Allowed Claim Amount**" has the meaning ascribed to such term in Article 5.11.2.3 of the Plan.

"**Option C Holder**" has the meaning ascribed to such term in Article 5.11.2.3 of the Plan.

"**Option C Maturity Date**" has the meaning ascribed to such term in Article 5.11.2.3 of the Plan.

"**Permitted Liens**" has the meaning ascribed to such term in the Accentia Term Loan Agreement.

"**Person**" means any person, individual, corporation, association, partnership, limited liability company, joint venture, trust, organization, business, government, governmental agency or political subdivision thereof, or any other entity or institution of any type whatsoever, including any "person" as such term is defined in Section 101(41) of the Bankruptcy Code.

"**Petition Date**" means November 10, 2008, the date on which the Debtors commenced the Accentia Bankruptcy Cases by filing their voluntary petitions under Chapter 11 of the Bankruptcy Code.

"**Plan**" means the First Amended Joint Plan of Reorganization of Accentia Biopharmaceuticals, Inc., Analytica International, Inc., TEAMM Pharmaceuticals, Inc., AccentRx, Inc., and Accentia Specialty Pharmacy, Inc. under Chapter 11 of Title 11, United States Code dated as of August 16, 2010, and all Exhibits to the Plan, as the same may be amended, supplemented, modified or amended and restated from time to time in accordance with the provisions of the Plan and the Bankruptcy Code.

"**Plan Debentures**" means, collectively, the Class 6 Plan Debentures and the Class 9 Plan Debentures. The final form of the Plan Debentures shall be included in the Plan Supplement.

"**Plan Documents**" means all documents that aid in effectuating the Plan, including the Laurus/Valens Settlement Documents, the Plan Debentures, the Plan Notes, the Plan Warrants, the Reorganized Accentia Bylaws, the Reorganized Accentia Charter, and the Security Documents.

"**Plan Notes**" means, collectively, the Laurus/Valens Term Notes, the Class 3 Plan Note, the Class 3 Convertible Plan Note, the Class 4 Plan Note, and the Class 13 Plan Notes. The final form of the Plan Notes shall be included in the Plan Supplement.

"**Plan Shares**" means, collectively, the Laurus/Valens Conversion Shares, the Laurus/Valens Class 5 Shares, the Laurus/Valens Class 13 Shares, the Class 3 Plan Shares, the Class 4 Plan Shares, the Class 5 Plan Shares, the Class 6 Plan Shares, the Class 8 Plan Shares, the Class 9 Plan Shares, the Class 10 Plan Shares, the Class 13 Plan Shares, and the Class 15 Plan Shares.

"**Plan Solicitation Package**" means, collectively, the Disclosure Statement, the Plan, the Accentia Disclosure Statement Approval Order, and the Accentia Stockholder Ballot, unless otherwise ordered by the Bankruptcy Court.

"**Plan Supplement**" means the document containing the Plan Documents (to the extent not already on file with the Bankruptcy Court), which shall be filed with the Bankruptcy Court in accordance with Article 14.17 of the Plan.

"**Plan Warrants**" means, collectively, the Class 5 Plan Warrants, the Class 6 Plan Warrants, the Class 9 Plan Warrants, and the Class 13 Plan Warrants. The final form of the Plan Warrants shall be included in the Plan Supplement.

"**Postpetition**" means arising or accruing on or after the Petition Date and before the Effective Date.

"**Postpetition Interest**" means interest accrued on the Allowed Amount of a Claim for the period from the Petition Date through and including the day immediately preceding the Effective Date.

"**Prepetition**" means arising or accruing prior to the Petition Date.

**"Priority Claim"** means a Claim that is entitled to a priority in payment pursuant to Sections 507(a)(4), (5) and (7) of the Bankruptcy Code and that is not an Administrative Expense Claim, a Priority Tax Claim, a Secured Claim, a Secured Tax Claim or an Unsecured Claim.

**"Priority Tax Claim"** means a Claim of a Governmental Unit that is entitled to a priority in payment pursuant to Section 507(a)(8) of the Bankruptcy Code and that is not an Administrative Expense Claim, a Priority Claim, a Secured Claim, a Secured Tax Claim or an Unsecured Claim.

**"Professional"** means any professional employed in the Bankruptcy Cases pursuant to an order of the Bankruptcy Court, pursuant to Section 327 or 1103 of the Bankruptcy Code.

**"Projections"** means the cash forecast for the Reorganized Debtors for the fiscal quarters ended December 31, 2010 through March 31, 2014, a copy of which is attached as Exhibit 1 to the Disclosure Statement.

**"Proof of Claim"** means a proof of claim filed with the Bankruptcy Court with respect to a Claim against the Debtors pursuant to Bankruptcy Rule 3001, 3002 or 3003.

**"Property"** means any property or asset of any kind, whether real, personal or mixed, tangible or intangible, whether now existing or hereafter acquired or arising, and wherever located, and any interest of any kind therein.

**"PSource"** means PSource Structured Debt Limited, a Guernsey limited liability company, and its successors or assigns.

**"PSource Prepetition Claims"** means any and all Secured Claims and other Claims of PSource represented by, relating to, or arising under or in connection with the PSource Prepetition Loan Documents, including all of the Claims of PSource described or referenced in the Laurus/Valens Proofs of Claim.

**"PSource Prepetition Loan Documents"** means all of the Prepetition documents evidencing the PSource Prepetition Claims and any and all other documents executed by the Debtors or the Biovest Debtors or Laurus/Valens in any way relating to the PSource Prepetition Claims, as any such documents have been amended, modified or supplemented thereafter in accordance with their terms.

**"Record Date"** means the date of the Accentia Disclosure Statement Approval Order, which shall be the date for determination of the ownership of the Class 15 Equity Interests for the purpose of voting on acceptance or rejection of the Plan by the Holders of the Class 15 Equity Interests.

**"Rejected Contracts"** has the meaning ascribed to such term in Article 7.1 of the Plan. A list of the Rejected Contracts is set forth in Exhibit B attached to the Plan.

**"Released Parties"** has the meaning ascribed to such term in Article 11.3 of the Plan.

**"Reorganized Accentia"** means Accentia on and after the Effective Date as reorganized pursuant to the Plan, including any successor thereto by merger, consolidation or otherwise.

**"Reorganized Accentia Bylaws"** has the meaning ascribed to such term in Article 8.7.2 of the Plan. The final form of the Reorganized Accentia Bylaws shall be included in the Plan Supplement.

**"Reorganized Accentia Charter"** means the articles of incorporation of Reorganized Accentia, as amended or amended and restated pursuant to the Plan, the Confirmation Order, the Florida Act or otherwise and filed with the Office of the Secretary of State of the State of Florida. The final form of the Reorganized Accentia Charter shall be included in the Plan Supplement.

**"Reorganized Accentia Common Stock"** means the shares of Accentia Common Stock authorized in the Reorganized Accentia Charter to be issued and distributed pursuant to the provisions of the Plan.

**"Reorganized Debtor"** means each of the Debtors on and after the Effective Date as reorganized pursuant to the Plan, including any successor thereto by merger, consolidation or otherwise.

**"Rule 144"** means Rule 144 of the Rules and Regulations under the Securities Act promulgated by the SEC.

**"Schedules"** means, collectively, Schedules D, E, F, G, and H filed by the Debtors in the Accentia Bankruptcy Cases pursuant to Bankruptcy Rule 1007, as any of such Schedules has been or may hereafter be amended or supplemented from time to time.

**"SEC"** means the United States Securities and Exchange Commission.

**"Secured Claim"** means any Claim of a Creditor that is (a) secured in whole or in part, as of the Petition Date, by a Lien (i) on Collateral and (ii) which is valid, perfected and enforceable under applicable law and is not subject to avoidance under the Bankruptcy Code or applicable non-bankruptcy law, or (b) subject to setoff under Section 553 of the Bankruptcy Code, but, with respect to both (a) and (b) above, only to the extent of the value of such Creditor's interest in the Estates' interest in such Collateral or the amount subject to setoff, as the case may be. Except as otherwise provided in the Plan, if the value of a Creditor's interest in the Estates' interest in such Collateral or the amount subject to setoff is less than the amount of the Allowed Claim, then such deficiency shall constitute an Unsecured Claim.

**"Secured Creditor"** means any Creditor holding a Secured Claim.

**"Secured Tax Claim"** means a Secured Claim of a Governmental Unit for Prepetition taxes.

**"Securities Act"** means the Securities Act of 1933, as it has been or may be amended from time to time, and the rules and regulations promulgated thereunder.

**"Security"** has the meaning ascribed to such term in Section 101(49) of the Bankruptcy Code.

**"Security Documents"** means the security agreements and other documents to be executed by Reorganized Accentia as described in Articles 5.4.1.4, 5.5.1.2, and 5.7.1.2 of the Plan. The final form of the Security Documents shall be included in the Plan Supplement.

**"Southwest Bank"** means Southwest Bank, an M&I Bank, a Missouri banking corporation, as successor by merger to Missouri State Bank and Trust Company, and its successors or assigns.

**"Southwest Bank Allowed Class 3 Claim"** has the meaning ascribed to such term in Article 5.4.1 of the Plan.

**"Southwest Bank Pledge Agreement"** means the Stock Pledge Agreement by and between Accentia and Southwest Bank, dated as of June 16, 2008, as amended, modified or supplemented thereafter in accordance with its terms.

**"Southwest Bank Pledged Shares"** means the 15,000,000 shares of Biovest Common Stock owned by Accentia and pledged to Southwest Bank as collateral for the Southwest Bank Prepetition Claims.

**"Southwest Bank Prepetition Claims"** means any and all Secured Claims and other Claims of Southwest Bank represented by, relating to, or arising under or in connection with the Southwest Bank Prepetition Loan Documents.

**"Southwest Bank Prepetition Loan Documents"** means that certain Revolving Credit Agreement between Southwest Bank, as lender, and Accentia, as borrower, dated as of December 30, 2005, and the Southwest Bank Pledge Agreement, and all other documents executed in connection therewith, as any such document has been amended, modified or supplemented thereafter in accordance with its terms.

**"Subordinated Securities Claim"** means any Claim subject to subordination under Section 510(b) of the Bankruptcy Code, including any Claim that arises from the rescission of a purchase or sale of a Security of Accentia (including the Existing Accentia Common Stock), or for damages arising from the purchase or sale of such a Security, or for reimbursement, indemnification, or contribution allowed under Section 502 of the Bankruptcy Code on account of such Claim; provided that, in each such case, such Claim is filed with the Bankruptcy Court by the Bar Date.

**"Subsidiary Equity Interests"** means the equity interests (including common stock) issued by any of the Accentia Subsidiaries and held, directly or indirectly, by Accentia.

**"Superpriority Claim"** means any Claim created by a Final Order of the Bankruptcy Court providing for a priority senior to that provided in Section 507(a)(1) of the Bankruptcy Code, including any such Claims granted under Section 364(c)(1) of the Bankruptcy Code.

**"TEAMM"** means TEAMM Pharmaceuticals, Inc., a Florida corporation.

**"Trading Day"** means a day on which a Trading Market is open for trading; provided that, if the Reorganized Accentia Common Stock is not on a Trading Market, then as reported on any day in the "Pink Sheets" published by Pink Sheets, LLC (or a similar organization or agency succeeding to its functions of reporting prices).

**"Trading Market"** means The American Stock Exchange, the NASDAQ Capital Market, the NASDAQ Global Market, the NASDAQ Global Select Market, the New York Stock Exchange, the OTCQB marketplace, or the OTC Bulletin Board.

**"Transfer Agent"** means StockTrans, Inc. or any successor transfer agent engaged by Accentia.

**"Unimpaired"** refers to a Claim that is not Impaired.

**"United States"** means the United States of America.

**"United States Trustee"** means the Office of the United States Trustee for the Middle District of Florida.

**"Unsecured Claim"** means any Claim which is not an Administrative Expense Claim, Priority Tax Claim, Priority Claim, Secured Tax Claim, Secured Claim, Cure Claim, or Intercompany Claim, including (a) any Claim arising from the rejection of an executory contract or unexpired lease under Section 365 of the Bankruptcy Code, (b) except as otherwise provided in the Plan, any portion of a Claim to the extent the value of the Creditor's interest in the Estates' interest in the Collateral securing such Claim is less than the amount of the Allowed Claim, or to the extent that the amount of the Claim subject to setoff is less than the amount of the Allowed Claim, as determined pursuant to Section 506(a) of the Bankruptcy Code, (c) any Claim arising from the provision of goods or services to the Debtors prior to the Petition Date, (d) any Unsecured Claim in the Allowed Amount of $10,000.00 or less to the extent the Holder thereof has made the Convenience Class Opt-Out Election, and (e) any Claim designated as an Unsecured Claim elsewhere in the Plan.

**"Unsecured Convenience Claim"** means an Unsecured Claim (a) in an amount less than or equal to $10,000.00 and the Holder of such Claim has not made the Convenience Class Opt-Out Election, or (b) in an amount greater than $10,000.00 and the Holder of such Claim has agreed to reduce the amount of its Claim to $10,000.00 by making the Convenience Class Opt-In Election.

**"Unsecured Creditor"** means any Creditor holding an Unsecured Claim.

**"Valens"** means, collectively, Valens Offshore I, Valens Offshore II, and Valens U.S.

**"Valens Offshore I"** means Valens Offshore SPV I, Ltd., a Delaware limited liability company, and its successors or assigns.

**"Valens Offshore II"** means Valens Offshore SPV II, Corp., a Delaware corporation, and its successors or assigns.

**"Valens Prepetition Claims"** means any and all Secured Claims and other Claims of Valens represented by, relating to, or arising under or in connection with the Valens Prepetition Loan Documents, including all of the Claims of Valens described or referenced in the Laurus/Valens Proofs of Claim.

**"Valens Prepetition Loan Documents"** means all of the Prepetition documents evidencing the Valens Prepetition Claims and any and all other documents executed by the Debtors or the Biovest Debtors or Laurus/Valens in any way relating to the Valens Prepetition Claims, as any such documents have been amended, modified or supplemented thereafter in accordance with their terms.

**"Valens U.S."** means Valens U.S. SPV I, LLC, a Delaware limited liability company, and its successors or assigns.

**"Voting Deadline"** means the last day to file, with the Bankruptcy Court, a Ballot, Accentia Stockholder Ballot, or Master Ballot accepting or rejecting the Plan as fixed by the Accentia Disclosure Statement Approval Order.

**"Voting Instructions"** means the instructions for voting on the Plan contained in the section of the Disclosure Statement entitled "Voting Instructions" and in the Ballot, the Accentia Stockholder Ballot, or the Master Ballot, as the case may be.

**"VWAP"** means, for any date, the price of the Reorganized Accentia Common Stock determined under the following clause that applies: (a) if the Reorganized Accentia Common Stock is then listed or quoted for trading on a Trading Market, the volume weighted average price per share of the Reorganized Accentia Common Stock for such date on the Trading Market on which the Reorganized Accentia Common Stock is then listed or quoted for trading as reported by Bloomberg L.P. (based on a Trading Day from 9:30 a.m. (New York City time) to 4:02 p.m. (New York City time); or (b) if the Reorganized Accentia Common Stock is not then listed or quoted for trading on a Trading Market and if prices for the Reorganized Accentia Common Stock are then reported in the "Pink Sheets" published by Pink Sheets, LLC (or a similar organization or agency succeeding to its functions of reporting prices), the volume weighted average price per share of the Reorganized Accentia Common Stock so reported for such date.

2.1.2        Any capitalized term used in the Plan that is not defined in the Plan but that is defined in the Bankruptcy Code or in the Bankruptcy Rules shall have the meaning ascribed to that term in the Bankruptcy Code or in the Bankruptcy Rules, as the case may be (with the Bankruptcy Code or the Bankruptcy Rules, as the case may be, controlling in the case of a conflict or ambiguity).

## 2.2    Rules of Construction.

For purposes of the Plan: (a) whenever from the context it is appropriate, each term, whether stated in the singular or the plural, shall include both the singular and the plural; (b) any reference in the Plan to a contract, instrument, release, indenture or other agreement or document being in a particular form or on particular terms and conditions means that such contract, instrument, release, indenture or other agreement or document shall be substantially in such form or substantially on such terms and conditions; (c) any reference in the Plan to an existing document or Exhibit means such document or Exhibit as it may have been or may be amended, modified or supplemented; (d) if the Plan's description of the terms of an Exhibit is inconsistent with the terms of the Exhibit, the terms of the Exhibit shall control; (e) unless otherwise specified, all references in the Plan to Articles and Exhibits are references to Articles and Exhibits of or to the Plan; (f) unless the context requires otherwise, the words "herein," "hereunder" and "hereto" refer to the Plan in its entirety rather than to a particular Article or section or subsection of the Plan; (g) any phrase containing the term "include" or "including" shall mean including without limitation; (h) all of the Exhibits referred to in the Plan shall be deemed incorporated herein by any such reference and made a part hereof for all purposes; (i) any reference to an Entity as a Holder of a Claim or Equity Interest includes that Entity's successors and assigns; and (j) the rules of construction set forth in Section 102 of the Bankruptcy Code shall apply in the construction of the Plan, to the extent such rules are not inconsistent with any other provision in this Article 2.2.

## ARTICLE 3
## TREATMENT OF ADMINISTRATIVE EXPENSE CLAIMS
## AND PRIORITY TAX CLAIMS

In accordance with Section 1123(a)(1) of the Bankruptcy Code, Administrative Expense Claims and Priority Tax Claims have not been classified in the Plan. The treatment accorded to Administrative Expense Claims and Priority Tax Claims is set forth below in this Article 3.

## 3.1    Administrative Expense Claims.

3.1.1    Except as otherwise provided in Articles 3.1.2 and 3.1.3 below, each Holder of an Allowed Administrative Expense Claim (including Allowed Administrative Expense Claims of Professionals) shall be paid (a) on the Distribution Date, an amount, in Cash, by Reorganized Accentia equal to the Allowed Amount of its Administrative Expense Claim, in accordance with Section 1129(a)(9)(A) of the Bankruptcy Code, or (b) under such other terms as may be agreed upon by both the Holder of such Allowed Administrative Expense Claim and the Debtors or the Reorganized Debtors, as the case may be, or (c) as otherwise ordered by a Final Order of the Bankruptcy Court.

3.1.2    All unpaid fees and charges assessed against the Estates under Chapter 123 of title 28, United States Code, 28 U.S.C. §§ 1911-1930, for any calendar quarter ending prior to the Effective Date shall be paid to the United States Trustee by Reorganized Accentia by no later than thirty (30) days following the Effective Date. At the time of such payment, Reorganized Accentia shall provide to the United States Trustee an affidavit indicating the disbursements made by the Debtors for the

relevant periods, if requested by the United States Trustee. Following the Effective Date, any fees required to be paid to the United States Trustee, pursuant to 28 U.S.C. §1930(a)(6), with respect to the Accentia Bankruptcy Cases shall be paid by Reorganized Accentia, until the earlier of (i) the closing of the Accentia Bankruptcy Cases by the issuance of a Final Decree by the Bankruptcy Court, or (ii) the entry of an order by the Bankruptcy Court dismissing the Accentia Bankruptcy Cases or converting the Accentia Bankruptcy Cases to another chapter under the Bankruptcy Code. Any such payment to the United States Trustee shall be in the appropriate sum required pursuant to 28 U.S.C. §1930(a)(6) based upon the applicable disbursements for the relevant period and shall be made within the time period set forth in 28 U.S.C. §1930(a)(6). At the time of each such payment, Reorganized Accentia shall provide to the United States Trustee an affidavit indicating the disbursements for the relevant period, if requested by the United States Trustee.

3.1.3    All Allowed Administrative Expense Claims with respect to liabilities incurred by the Debtors in the ordinary course of business during the Accentia Bankruptcy Cases shall be paid by the Reorganized Debtors (a) in the ordinary course of business in accordance with contract terms, or (b) under such other terms as may be agreed upon by both the Holder of such Allowed Administrative Expense Claim and the Debtors or the Reorganized Debtors, as the case may be, or (c) as otherwise ordered by a Final Order of the Bankruptcy Court.

3.2    **Priority Tax Claims.**

Each Holder of an Allowed Priority Tax Claim shall receive from the applicable Reorganized Debtor, on account of such Allowed Priority Tax Claim, regular installment payments in Cash on the Distribution Date in accordance with Section 1129(a)(9)(C) of the Bankruptcy Code. Notwithstanding the above, each Holder of an Allowed Priority Tax Claim may be paid under such other terms as may be agreed upon by both the Holder of such Allowed Priority Tax Claim and the Debtors or the Reorganized Debtors, as the case may be.


# ARTICLE 4
# DESIGNATION OF CLASSES OF CLAIMS AND EQUITY INTERESTS

Pursuant to Section 1122 of the Bankruptcy Code, set forth below is a designation of Classes of Claims and Equity Interests. A Claim or Equity Interest (a) is classified in a particular Class only to the extent the Claim or Equity Interest qualifies within the description of that Class and (b) is classified in a different Class to the extent the Claim or Equity Interest qualifies within the description of that different Class. Unless otherwise expressly stated, the Classes of Claims set forth below include Claims against each of the Debtors that qualify within the description of that Class. For purposes of the Plan, the Claims and Equity Interests are classified as follows:

4.1    **Class 1:  Priority Claims.**

Class 1 consists of all Priority Claims. To the extent required by the Bankruptcy Court, such Priority Claims shall be separated into subclasses in Class 1 for each Debtor.

4.2  **Class 2:  Secured Claims and Other Claims of Laurus/Valens.**

Class 2 consists of all of the Laurus/Valens Prepetition Claims.

4.3  **Class 3:  Secured Claims and Other Claims of Southwest Bank.**

Class 3 consists of all of the Southwest Bank Prepetition Claims.

4.4  **Class 4:  Secured Claims and Other Claims of McKesson.**

Class 4 consists of all of the McKesson Prepetition Claims.

4.5  **Class 5:  Secured Claims and Other Claims of the 2006 Secured Debentures Holders.**

Class 5 consists of all of the 2006 Secured Debentures Claims.

4.6  **Class 6:  Secured Claims and Other Claims of the 2008 Secured Debentures Holders.**

Class 6 consists of all of the 2008 Secured Debentures Claims.

4.7  **Class 7:  Secured Tax Claims of Governmental Units.**

Class 7 consists of all Secured Tax Claims of Governmental Units.

4.8  **Class 8:  Other Secured Claims.**

Class 8 consists of all Secured Claims not otherwise specifically classified in the Plan.  To the extent required by the Bankruptcy Court, such Secured Claims shall be separated into subclasses in Class 8 for each Debtor. In the event there is more than one Secured Claim in this Class for a Debtor, such Secured Claims shall also be separated into subclasses in Class 8 for that Debtor.

4.9  **Class 9:  Claims of the 2007 Debentures Holders.**

Class 9 consists of all of the 2007 Debentures Claims.

4.10  **Class 10:  Unsecured Claims (Unsecured Claims Not Otherwise Classified).**

Class 10 consists of all Unsecured Claims not otherwise classified in the Plan.  To the extent required by the Bankruptcy Court, such Unsecured Claims shall be separated into subclasses in Class 10 for each Debtor.

4.11    **Class 11:  Unsecured Convenience Claims.**

Class 11 consists of all Unsecured Convenience Claims.  To the extent required by the Bankruptcy Court, such Unsecured Convenience Claims shall be separated into subclasses in Class 11 for each Debtor.

4.12    **Class 12:  Intercompany Claims.**

Class 12 consists of all Intercompany Claims.

4.13    **Class 13:  Convertible Preferred Stock Claims.**

Class 13 consists of all Convertible Preferred Stock Claims.

4.14    **Class 14:  Subordinated Securities Claims.**

Class 14 consists of all Subordinated Securities Claims.

4.15    **Class 15:  Equity Interests.**

Class 15 consists of all Equity Interests.

4.16    **Class 16:  Subsidiary Equity Interests.**

Class 16 consists of all Subsidiary Equity Interests.

## ARTICLE 5
## TREATMENT OF CLASSIFIED CLAIMS AND EQUITY INTERESTS

Claims and Equity Interests shall be treated under the Plan in the manner set forth in this Article 5.  Except as otherwise specifically provided in the Plan, the treatment of, and the consideration to be received by, Holders of Allowed Claims and Holders of Allowed Equity Interests pursuant to the Plan shall be in full and final satisfaction, settlement, release, extinguishment and discharge of their respective Allowed Claims (of any nature whatsoever) and Allowed Equity Interests.

5.1    **Unclassified Claims.**

Holders of Allowed Administrative Expense Claims and Allowed Priority Tax Claims shall receive the treatment set forth in Article 3 of the Plan.

5.2    **Class 1:  Priority Claims.**

Class 1 consists of all Priority Claims.  To the extent required by the Bankruptcy Court, such Priority Claims shall be separated into subclasses in Class 1 for each Debtor.  Each Holder of an

Allowed Priority Claim shall receive from Reorganized Accentia a deferred Cash payment, on the 6 Month Anniversary Date, of a value, as of the Effective Date, equal to the Allowed Amount of its Priority Claim, in accordance with Section 1129(a)(9)(B)(i) of the Bankruptcy Code; provided, however, that if Class 1 has not accepted the Plan (as provided in Section 1126(c) of the Bankruptcy Code), each Holder of an Allowed Priority Claim shall be paid, on the Determination Date, an amount, in Cash, by Reorganized Accentia equal to the Allowed Amount of its Priority Claim in accordance with Section 1129(a)(9)(B)(ii) of the Bankruptcy Code. Notwithstanding the foregoing, each Holder of an Allowed Priority Claim may be paid under such other terms as may be agreed upon by both the Holder of such Allowed Priority Claim and the Debtors or the Reorganized Debtors, as the case may be. Class 1 is Impaired by the Plan. Each Holder of a Priority Claim in Class 1 is entitled to vote to accept or reject the Plan.

5.3    **Class 2:  Secured Claims and Other Claims of Laurus/Valens.**

5.3.1    Class 2 consists of all of the Laurus/Valens Prepetition Claims.  Following extensive negotiations, the Debtors, the Biovest Debtors, and Laurus/Valens reached a compromise as to all disputes with respect to the Laurus/Valens Prepetition Claims and all disputes between Laurus/Valens and the Biovest Debtors (the "Laurus/Valens Settlement").  On April 16, 2010, the Debtors filed the Laurus/Valens Compromise Motion with the Bankruptcy Court, which sets forth the principal terms of the Laurus/Valens Settlement and includes substantially all of the documents to be executed by the Debtors, the Biovest Debtors, Laurus/Valens and certain other parties in order to consummate the Laurus/Valens Settlement (collectively, the "Laurus/Valens Settlement Documents").    On June 8, 2010, after notice and a hearing, the Bankruptcy Court entered the Laurus/Valens Compromise Order, which approved all of the terms of the Laurus/Valens Settlement. The closing of the Laurus/Valens Settlement (the "Closing") for both the Debtors and the Biovest Debtors must occur concurrently and will occur upon the Effective Date of the Plan and the effective date of the Biovest Plan and the satisfaction or waiver of the other conditions to Closing set forth in the Accentia Term Loan Agreement and in the Biovest Term Loan Agreement.

5.3.2    The pertinent terms and conditions of the Laurus/Valens Settlement with the Debtors are summarized below.  This summary is qualified in its entirety by the Laurus/Valens Settlement Documents and, to the extent of any inconsistencies between this summary and the Laurus/Valens Settlement Documents, the Laurus/Valens Settlement Documents shall control.  As stated elsewhere in the Plan, the Laurus/Valens Settlement Documents with respect to the Debtors are included in Composite Exhibit 2 attached to the Laurus/Valens Compromise Motion and, thus, are on file with the Bankruptcy Court and available for review.  Copies of the Laurus/Valens Settlement Documents may also be obtained upon written request to Bankruptcy Counsel (to the attention of Charles A. Postler, Esquire).  Unless otherwise defined in the Plan, capitalized terms used in this Article 5.3.2 shall have the meanings ascribed thereto in the Laurus/Valens Settlement Documents.

5.3.2.1    Laurus/Valens will have an Allowed Secured Claim against Reorganized Accentia in the amount of $8,800,000.00 (the "Laurus/Valens Allowed Secured Claim") in full and final satisfaction of all Secured Claims asserted by Laurus/Valens against Accentia and Analytica in the Laurus/Valens Proofs of Claim (excluding the 2006 Secured Debentures Claims of Laurus/Valens, which shall receive the treatment as described in Article 5.3.2.5 below).  The Laurus/Valens Allowed Secured Claim will be evidenced by one or more term