notes (the "Laurus/Valens Term Notes"), which will be executed and delivered by Reorganized Accentia on the Closing Date. The Laurus/Valens Term Notes will contain the following terms: (a) a maturity date of two (2) years following the Closing Date, (b) interest will accrue at the rate of eight and one-half percent (8.50%) per annum, calculated based on a 365 day year, and will be payable at the time of any principal payment or prepayment of principal, (c) a default rate of interest of twelve and one-half percent (12.50%) per annum, (d) the outstanding principal together with all accrued and unpaid interest will be due and payable in full on the maturity date, (e) Reorganized Accentia may prepay the Laurus/Valens Term Notes, without penalty, at any time, and (f) Reorganized Accentia is required to make mandatory prepayments under the Laurus/Valens Term Notes as follows: (i) on that date which is eighteen (18) months following the Closing Date, a payment of principal, in Cash, in the amount of $4,400,000.00, less the amount of any prior optional prepayments of principal by Reorganized Accentia and the amount of any mandatory prepayments of principal under subparagraph (ii) below, and (ii) a prepayment equal to thirty percent (30%) of the Net Proceeds (i.e., the gross proceeds received less any investment banking or similar fees and commissions and legal costs and expenses incurred by Reorganized Accentia) of any Capital Raise (excluding (x) the first $1,500,000.00 of Net Proceeds received by Reorganized Accentia after the Closing Date, and (y) cash proceeds received by Reorganized Accentia from the exercise of stock options or stock purchase warrants if the stock option or stock purchase warrant was issued prior to the Closing Date or issued pursuant to the Plan), but only up to the then outstanding principal and accrued interest under the Laurus/Valens Term Notes. Any mandatory prepayment will be applied, pro rata, as a reduction of principal on the then outstanding balance of the Laurus/Valens Term Notes and interest accrued on such paid principal amount through the date of payment.

5.3.2.2    On notice to and with the prior written consent of Laurus/Valens, Reorganized Accentia may convert all or any portion of the outstanding principal and accrued interest under the Laurus/Valens Term Notes into shares of Reorganized Accentia Common Stock. The number of shares of Reorganized Accentia Common Stock issuable on a conversion (the "Laurus/Valens Conversion Shares") shall be equal to (i) an amount equal to the aggregate portion of the principal and accrued and unpaid interest thereon outstanding under the Laurus/Valens Term Note being converted, divided by (ii) ninety percent (90%) of the average closing price publicly reported for the Reorganized Accentia Common Stock for the ten (10) Trading Days immediately preceding the date of the notice of conversion. The Laurus/Valens Conversion Shares shall be issued pursuant to Section 1145 of the Bankruptcy Code and shall not have any legend restricting the sale thereof under federal securities laws, but sales of any such shares by Laurus/Valens will be subject to the limitations on the number of shares of Reorganized Accentia Common Stock that may be sold from time to time contained in Rule 144(e), without regard to whether or not Laurus/Valens is considered an "Affiliate" of Reorganized Accentia for purposes of Rule 144(e). In addition, the transfer or resale of the Laurus/Valens Conversion Shares by any recipient thereof would not be exempted under Section 1145 of the Bankruptcy Code if such recipient is deemed to be an underwriter (see Article 8.9 of the Plan for a further discussion of the securities law issues relating to underwriters).

5.3.2.3    The Laurus/Valens Term Notes will be secured by (a) a first Lien in all of the assets of Reorganized Accentia (including all intellectual property), junior only to the Lien granted to the 2008 Secured Debentures Holders with respect to the 2008 Secured Debentures and to Permitted Liens, and (b) a pledge by Reorganized Accentia to Laurus/Valens of (i) all of its equity interests in Analytica, and (ii) 20,115,818 shares of Biovest Common Stock owned by Accentia.

5.3.2.4    The Laurus/Valens Term Notes will also be secured by all of the assets of Analytica, which will secure a Guaranty of Analytica as to the entire indebtedness under the Laurus/Valens Term Notes (the "Analytica Guaranty").

5.3.2.5    Laurus/Valens will have an Allowed Claim against Reorganized Accentia in the amount of $3,347,388.16 with respect to its 2006 Secured Debentures Claims (the "Laurus/Valens Allowed Debenture Claim").  On the Closing Date, Laurus/Valens will convert the entire amount of the Laurus/Valens Allowed Debenture Claim into shares of Reorganized Accentia Common Stock (the "Laurus/Valens Class 5 Shares") at a conversion rate equal to $2.67 per share of Reorganized Accentia Common Stock, which is the conversion rate set forth in the 2006 Secured Debentures Documents executed by Laurus/Valens (i.e., Laurus/Valens will receive that number of shares of Reorganized Accentia Common Stock determined by dividing the Laurus/Valens Allowed Debenture Claim by $2.67).  The Laurus/Valens Class 5 Shares shall be issued as soon as reasonably practicable following the Closing Date (but in no event more than five (5) Business Days following the Closing Date, subject to the procedures followed by the Transfer Agent) pursuant to Section 1145 of the Bankruptcy Code and shall not have any legend restricting the sale thereof under federal securities laws, but sales of any such shares by Laurus/Valens will be subject to (i) the limitations on the number of shares of Reorganized Accentia Common Stock that may be sold from time to time contained in Rule 144(e), without regard to whether or not Laurus/Valens is considered an "Affiliate" of Reorganized Accentia for purposes of Rule 144(e), and (ii) the provisions of Article 9.12.  In addition, the transfer or resale of the Laurus/Valens Class 5 Shares by any recipient thereof would not be exempted under Section 1145 of the Bankruptcy Code if such recipient is deemed to be an underwriter (see Article 8.9 of the Plan for a further discussion of the securities law issues relating to underwriters).  Laurus/Valens will not receive any Class 5 Warrants under the Plan.

5.3.2.6    Laurus/Valens will have an Allowed Claim against Reorganized Accentia in the amount of $2,624,996.00 with respect to its Convertible Preferred Stock Claims (the "Laurus/Valens Allowed Preferred Stock Claim").  On the Closing Date, Laurus/Valens will convert the entire amount of the Laurus/Valens Allowed Preferred Stock Claim into shares of Reorganized Accentia Common Stock (the "Laurus/Valens Class 13 Shares") at a conversion rate equal to $2.67 per share of Reorganized Accentia Common Stock, which is the conversion rate set forth in the Convertible Preferred Stock Documents executed by Laurus/Valens (i.e., Laurus/Valens will receive that number of shares of Reorganized Accentia Common Stock determined by dividing the Laurus/Valens Allowed Preferred Stock Claim by $2.67).  The Laurus/Valens Class 13 Shares shall be issued as soon as reasonably practicable following the Closing Date (but in no event more than five (5) Business Days following the Closing Date, subject to the procedures followed by the Transfer Agent)

pursuant to Section 1145 of the Bankruptcy Code and shall not have any legend restricting the sale thereof under federal securities laws, but sales of any such shares by Laurus/Valens will be subject to (i) the limitations on the number of shares of Reorganized Accentia Common Stock that may be sold from time to time contained in Rule 144(e), without regard to whether or not Laurus/Valens is considered an "Affiliate" of Reorganized Accentia for purposes of Rule 144(e), and (ii) the provisions of Article 9.12. In addition, the transfer or resale of the Laurus/Valens Class 13 Shares by any recipient thereof would not be exempted under Section 1145 of the Bankruptcy Code if such recipient is deemed to be an underwriter (see Article 8.9 of the Plan for a further discussion of the securities law issues relating to underwriters). Laurus/Valens will not receive any Class 13 Warrants under the Plan.

5.3.2.7    All of the Laurus/Valens Warrants will be terminated and cancelled as of the Closing. Laurus/Valens will not have any rejection damages or other Claims against Accentia in connection with the termination and cancellation of the Laurus/Valens Warrants.

5.3.2.8    On the Closing Date, Reorganized Accentia and Biovest will enter into the Accentia Royalty Termination Agreement.

5.3.2.9    Except as to any obligations under the Laurus/Valens Settlement Documents or the Plan, the Debtors and Laurus/Valens and their respective officers, directors, employees, agents, and attorneys will be deemed to have released each other, as of the Closing Date, from any and all claims of any nature whatsoever. The release provisions are included in the Laurus/Valens Compromise Order.

5.3.2.10    All of the Laurus/Valens Settlement Documents will be governed by the laws of the State of New York. Until the Closing Date, the Bankruptcy Court will have and retain exclusive jurisdiction over the Laurus/Valens Settlement and any disputes arising thereunder. Following the Closing Date, the state and/or federal courts in the State of New York will have jurisdiction over the Laurus/Valens Settlement Documents.

5.3.2.11    On the Closing Date, Laurus/Valens will withdraw the Laurus/Valens Proofs of Claim with prejudice.

5.3.2.12    Effective as of the Closing Date, any and all of the Laurus/Valens Prepetition Loan Documents shall be deemed cancelled and void and of no further force and effect.

Class 2 is Impaired by the Plan. Laurus/Valens, as the Holder of the Class 2 Claims, is entitled to vote to accept or reject the Plan.

5.4    **Class 3:  Secured Claims and Other Claims of Southwest Bank.**

5.4.1    Class 3 consists of all of the Southwest Bank Prepetition Claims. The Class 3 Claims of Southwest Bank are secured by a pledge of the Southwest Bank Pledged Shares. Under the Plan, the Class 3 Claims of Southwest Bank will be allowed in the amount of $4,000,000.00 plus

Postpetition Interest at the rate of six percent (6%) per annum (the "Southwest Bank Allowed Class 3 Claim"). Under the Plan, the following shall occur with respect to the Southwest Bank Allowed Class 3 Claim:

5.4.1.1     On the Effective Date, in the event Southwest Bank does not make the Conversion Election described in Article 5.4.1.2 or 5.4.1.3, Reorganized Accentia shall execute and deliver in favor of Southwest Bank a promissory note (the "Class 3 Plan Note") in an original principal amount equal to the amount of the Southwest Bank Allowed Class 3 Claim. The Class 3 Plan Note shall contain the following terms: (a) a maturity date of forty (40) months following the Effective Date, (b) interest will accrue and be payable on the outstanding principal at a fixed rate of six percent (6%) per annum, calculated based on a 365 day year, (c) the outstanding principal together with all accrued and unpaid interest will be due and payable in full on the maturity date, and (d) Reorganized Accentia may prepay all or any portion of the Class 3 Plan Note, without penalty, at any time.

5.4.1.2     At the option of Southwest Bank, Southwest Bank may elect (in lieu of the treatment described in Article 5.4.1.1 or 5.4.1.3) to convert all of its Southwest Bank Allowed Class 3 Claim into shares of Reorganized Accentia Common Stock (the "Class 3 Plan Shares") at a conversion rate equal to the greater of the Market Price per share of Reorganized Accentia Common Stock or $1.00 (i.e., Southwest Bank will receive on the Effective Date that number of shares of Reorganized Accentia Common Stock determined by dividing the Southwest Bank Allowed Class 3 Claim by the greater of the Market Price or $1.00). The Class 3 Plan Shares shall be issued as soon as reasonably practicable following the Effective Date (but in no event more than five (5) Business Days following the Effective Date, subject to the procedures followed by the Transfer Agent) pursuant to Section 1145 of the Bankruptcy Code and shall not have any legend restricting the sale thereof under federal securities laws, but the transfer thereof shall be subject to the provisions of Article 9.12. The transfer or resale of the Class 3 Plan Shares by any recipient thereof would not be exempted under Section 1145 of the Bankruptcy Code if such recipient is deemed to be an underwriter (see Article 8.9 of the Plan for a further discussion of the securities law issues relating to underwriters). At the time of such conversion, Southwest Bank shall release as collateral, and return to Reorganized Accentia, all of the Southwest Bank Pledged Shares. Any Conversion Election under this Article 5.4.1.2 shall be made by Southwest Bank on the Ballot filed with the Bankruptcy Court or in a separate writing delivered to Accentia, in each such case prior to the Voting Deadline. In the event Southwest Bank makes a Conversion Election under this Article 5.4.1.2, the provisions of Articles 5.4.1.1, 5.4.1.3 and 5.4.1.4 shall not be applicable to Southwest Bank.

5.4.1.3     At the option of Southwest Bank, Southwest Bank may elect (in lieu of the treatment described in Article 5.4.1.1 or 5.4.1.2) to convert all of its Southwest Bank Allowed Class 3 Claim into shares of Reorganized Accentia Common Stock (also, the "Class 3 Plan Shares") as described in this Article 5.4.1.3. Under this option, Southwest Bank will receive, as soon as reasonably practicable following the Effective Date (but in no event more than five (5) Business Days following the Effective Date), a convertible promissory note (the "Class 3 Convertible Plan Note") executed by Reorganized Accentia in an original principal amount equal to the amount of the Southwest Bank Allowed Class 3 Claim. The Class 3

Convertible Plan Note shall contain the following terms: (a) a maturity date of twenty-four (24) months following the Effective Date, (b) interest will accrue on the outstanding principal balance of the Class 3 Convertible Plan Note from time to time (the "Class 3 Interest") at a fixed rate of six percent (6%) per annum, calculated based on a 365 day year, (c) on the Effective Date and on each of the following seven (7) quarterly anniversaries of the Effective Date (each, an "Automatic Conversion Date"), and provided that the Automatic Conversion VWAP Price is at least $1.00 per share, one-eighth (1/8th) of the original principal balance of the Class 3 Convertible Plan Note plus the Class 3 Interest as of the Automatic Conversion Date (the "Automatic Conversion Amount") will be automatically converted into shares of Reorganized Accentia Common Stock (also, the "Class 3 Plan Shares") at a conversion rate equal to the Automatic Conversion VWAP Price per share of Reorganized Accentia Common Stock (i.e., Southwest Bank will receive that number of shares of Reorganized Accentia Common Stock determined by dividing the Automatic Conversion Amount by the Automatic Conversion VWAP Price), (d) if, on any Automatic Conversion Date, the Automatic Conversion VWAP Price is less than $1.00 per share, Southwest Bank may, at its election, either (i) convert the Automatic Conversion Amount into shares of Reorganized Accentia Common Stock (also, the "Class 3 Plan Shares") at a conversion rate equal to $1.00 per share of Reorganized Accentia Common Stock (i.e., Southwest Bank will receive that number of shares of Reorganized Accentia Common Stock determined by dividing the Automatic Conversion Amount by $1.00), or (ii) liquidate that number of the Southwest Bank Pledged Shares which equals the Automatic Conversion Amount using a conversion rate for the Southwest Bank Pledged Shares equal to the average of the VWAPs (as that term is defined in the Biovest Plan) for the Biovest Common Stock for the ten (10) consecutive Trading Days ending on the Trading Day that is immediately preceding the then applicable Automatic Conversion Date, (e) on each Automatic Conversion Date for which the Automatic Conversion VWAP Price is $1.00 or greater or on which Southwest Bank makes the election described in subparagraph (d) above, the outstanding principal balance of the Class 3 Convertible Plan Note shall be reduced by the Automatic Conversion Amount (excluding the Class 3 Interest), (f) at the time of any conversion under this Article 5.4.1.3, Southwest Bank shall release as collateral, and return to Reorganized Accentia, that number of the Southwest Bank Pledged Shares determined by multiplying the Southwest Bank Pledged Shares by a percentage that is equal to the percentage of the principal balance of the Class 3 Convertible Plan Note then being converted by Southwest Bank (as adjusted to take into account any Southwest Bank Pledged Shares liquidated pursuant to subparagraph (d)(ii) above, provided that no Southwest Bank Pledged Shares shall be released that would cause the loan to collateral value ratio to be less than 150%, and (g) the Class 3 Plan Shares shall be issued as soon as reasonably practicable following the Automatic Conversion Date (but in no event more than five (5) Business Days following the Automatic Conversion Date, subject to the procedures followed by the Transfer Agent) pursuant to Section 1145 of the Bankruptcy Code and shall not have any legend restricting the sale thereof under federal securities laws, but the transfer thereof shall be subject to the provisions of Article 9.12. The transfer or resale of the Class 3 Plan Shares by any recipient thereof would not be exempted under Section 1145 of the Bankruptcy Code if such recipient is deemed to be an underwriter (see Article 8.9 of the Plan for a further discussion of the securities law issues relating to underwriters). Any Conversion Election under this Article 5.4.1.3 shall be made by Southwest Bank on the Ballot filed with the Bankruptcy Court or in

a separate writing delivered to Accentia, in each such case prior to the Voting Deadline. In the event Southwest Bank makes a Conversion Election under this Article 5.4.1.3, the provisions of Articles 5.4.1.1 and 5.4.1.2 shall not be applicable to Southwest Bank.

5.4.1.4    The Class 3 Plan Note or the Class 3 Convertible Plan Note shall be secured by a Lien on the Southwest Bank Pledged Shares, to the same extent, validity and priority as existed in favor of Southwest Bank as of the Petition Date. On the Effective Date, Reorganized Accentia shall execute and deliver in favor of Southwest Bank a stock pledge agreement and other customary security documents evidencing such Lien, with such documents to contain substantially the same terms as the Southwest Bank Pledge Agreement. The stock pledge agreement shall contain provisions providing for the liquidation of the Southwest Bank Pledged Shares and the release of the Southwest Bank Pledged Shares as collateral, as each of those events are described in Article 5.4.1.3.

5.4.1.5    As of the Effective Date, without any further action by any party, subject to the Lien to be granted to Southwest Bank in Article 5.4.1.4, the Liens that secure the Class 3 Claims of Southwest Bank shall be deemed to be extinguished, satisfied and released. To the extent that any Liens to secure the Class 3 Claims have been filed or recorded publicly, if requested by Reorganized Accentia, Southwest Bank shall take any commercially reasonable steps that are necessary to cancel, terminate and/or extinguish such Liens.

5.4.1.6    As of the Effective Date, any and all of the Southwest Bank Prepetition Loan Documents shall be deemed cancelled and void and of no further force and effect.

5.4.1.7    Upon information and belief, the Class 3 Claims have been assigned to Dennis Ryll. In such event, Dennis Ryll shall be deemed to be the Holder of the Class 3 Claims and shall receive the treatment described in this Article 5.4.

Class 3 is Impaired by the Plan. Southwest Bank or Dennis Ryll, as the Holder of the Class 3 Claims, is entitled to vote to accept or reject the Plan.

## 5.5    **Class 4: Secured Claims and Other Claims of McKesson.**

5.5.1    Class 4 consists of all of the McKesson Prepetition Claims, which Accentia has listed in its Schedules as a Secured Claim in the amount of $3,613,121.00. The Class 4 Claims of McKesson are secured by a pledge of the McKesson Pledged Biovest Shares. Under the Plan, the Class 4 Claims of McKesson will be allowed in an amount equal to the difference between $3,613,121.00 and the value of the McKesson Accentia Shares as of the Effective Date (such value to be determined using the Market Price per share of Reorganized Accentia Common Stock) (the "McKesson Allowed Class 4 Claim"). Under the Plan, the following shall occur with respect to the McKesson Allowed Class 4 Claim:

5.5.1.1    On the Effective Date, in the event McKesson does not make the Conversion Election described in Article 5.5.1.5, Reorganized Accentia shall execute and deliver in favor of McKesson a promissory note (the "Class 4 Plan Note") in an original principal amount equal to the amount of the McKesson Allowed Class 4 Claim. The Class 4

Plan Note shall contain the following terms: (a) a maturity date of forty (40) months following the Effective Date, (b) interest will accrue and be payable on the outstanding principal at a fixed rate of five percent (5%) per annum, calculated based on a 365 day year, (c) the outstanding principal together with all accrued and unpaid interest will be due and payable in full on the maturity date, and (d) Reorganized Accentia may prepay all or any portion of the Class 4 Plan Note, without penalty, at any time.

5.5.1.2    The Class 4 Plan Note shall be secured by a Lien on the McKesson Pledged Biovest Shares, to the same extent, validity and priority as existed in favor of McKesson as of the Petition Date; provided, however, that Reorganized Accentia reserves the right to request that the Bankruptcy Court require McKesson to release as collateral, and return to Reorganized Accentia, that number of the McKesson Pledged Biovest Shares having a value that exceeds the amount of the McKesson Allowed Class 4 Claim. On the Effective Date, Reorganized Accentia shall execute and deliver in favor of McKesson a stock pledge agreement and other customary security documents evidencing such Lien.

5.5.1.3    As of the Effective Date, without any further action by any party, subject to the Lien to be granted to McKesson in Article 5.5.1.2, the Liens that secure the Class 4 Claims of McKesson shall be deemed to be extinguished, satisfied and released. To the extent that any Liens to secure the Class 4 Claims have been filed or recorded publicly, if requested by Reorganized Accentia, McKesson shall take any commercially reasonable steps that are necessary to cancel, terminate and/or extinguish such Liens.

5.5.1.4    As of the Effective Date, any and all of the McKesson Prepetition Loan Documents shall be deemed cancelled and void and of no further force and effect.

5.5.1.5    At the option of McKesson, McKesson may elect (in lieu of the treatment described in Article 5.5.1.1) to convert all of its McKesson Allowed Class 4 Claim into shares of Reorganized Accentia Common Stock (the "Class 4 Plan Shares") at a conversion rate equal to the greater of the Market Price per share of Reorganized Accentia Common Stock or $1.00 per share (i.e., McKesson will receive that number of shares of Reorganized Accentia Common Stock determined by dividing the McKesson Allowed Class 4 Claim by the greater of the Market Price or $1.00). The Class 4 Plan Shares shall be issued as soon as reasonably practicable following the Effective Date (but in no event more than five (5) Business Days following the Effective Date, subject to the procedures followed by the Transfer Agent) pursuant to Section 1145 of the Bankruptcy Code and shall not have any legend restricting the sale thereof under federal securities laws, but the transfer thereof shall be subject to the provisions of Article 9.12. The transfer or resale of the Class 4 Plan Shares by any recipient thereof would not be exempted under Section 1145 of the Bankruptcy Code if such recipient is deemed to be an underwriter (see Article 8.9 of the Plan for a further discussion of the securities law issues relating to underwriters). At the time of such conversion, McKesson shall release as collateral, and return to Reorganized Accentia, all of the McKesson Pledged Biovest Shares. Any Conversion Election shall be made by McKesson on the Ballot filed with the Bankruptcy Court or in a separate writing delivered to Accentia, in each such case prior to the Voting Deadline. In the event McKesson makes a

Conversion Election, the provisions of Articles 5.5.1.1 and 5.5.1.2 shall not be applicable to McKesson.

        5.5.1.6     McKesson shall retain ownership of the McKesson Accentia Shares.

Class 4 is Impaired by the Plan. McKesson, as the Holder of the Class 4 Claims, is entitled to vote to accept or reject the Plan.

## 5.6    **Class 5: Secured Claims and Other Claims of the 2006 Secured Debentures Holders.**

5.6.1    Class 5 consists of all of the 2006 Secured Debentures Claims. The Class 5 Claims of the 2006 Secured Debentures Holders are secured by a Lien on certain shares of Biovest Common Stock owned by Accentia (the "Class 5 Pledged Biovest Shares"). Under the Plan, subject to Article 5.6.1.6, the Class 5 Claims of each of the 2006 Secured Debentures Holders will be allowed in an amount equal to the outstanding principal and accrued and unpaid interest (at the rate of eight percent (8%) per annum) as of the Petition Date under its 2006 Secured Debentures plus Postpetition Interest at the rate of six percent (6%) per annum (each, a "2006 Secured Debentures Allowed Class 5 Claim"). Under the Plan, the following shall occur with respect to the 2006 Secured Debentures Allowed Class 5 Claims:

        5.6.1.1     On the Determination Date, each 2006 Secured Debentures Allowed Class 5 Claim will automatically be converted into shares of Reorganized Accentia Common Stock (the "Class 5 Plan Shares") or exchanged into shares of Biovest Common Stock (also, the "Class 5 Plan Shares") by a 2006 Secured Debentures Holder selecting one of the following three options: (i) conversion of the entire amount of the 2006 Secured Debentures Allowed Class 5 Claim into shares of Reorganized Accentia Common Stock at a conversion rate equal to the fixed conversion price included in the 2006 Secured Debentures Documents with respect to such 2006 Secured Debentures Holder (i.e., such 2006 Secured Debentures Holder will receive that number of shares of Reorganized Accentia Common Stock determined by dividing its 2006 Secured Debentures Allowed Class 5 Claim by such fixed conversion price); or (ii) exchange of the entire amount of the 2006 Secured Debentures Allowed Class 5 Claim into shares of Biovest Common Stock owned by Accentia (that comprise part of the Class 5 Pledged Biovest Shares) at a conversion rate equal to $0.75 per share of Biovest Common Stock (i.e., such 2006 Secured Debentures Holder will receive that number of shares of Biovest Common Stock determined by dividing its 2006 Secured Debentures Allowed Class 5 Claim by $0.75); provided, however, that the maximum amount of such 2006 Secured Debentures Allowed Class 5 Claim to be exchanged into shares of Biovest Common Stock shall not exceed the maximum number of shares of Biovest Common Stock originally allocated to such 2006 Secured Debentures Holder in its 2006 Secured Debentures Documents net of any shares of Biovest Common Stock acquired by such 2006 Secured Debentures Holder after the Petition Date and on or before the Effective Date through the exercise of the 2006 Secured Debentures Warrants; or (iii) any combination of subparagraph (i) and (ii) above that equals the amount of the 2006 Secured Debentures Allowed Class 5 Claim of such 2006 Secured Debentures Holder.

5.6.1.2    All of the Class 5 Plan Shares described in Article 5.6.1.1 above shall be issued as soon as reasonably practicable following the Determination Date (but in no event more than five (5) Business Days following the Determination Date, subject to the procedures followed by the Transfer Agent) pursuant to Section 1145 of the Bankruptcy Code and shall not have any legend restricting the sale thereof under federal securities laws, but the transfer thereof shall be subject to the provisions of Article 9.12. The transfer or resale of the Class 5 Plan Shares by any recipient thereof would not be exempted under Section 1145 of the Bankruptcy Code if such recipient is deemed to be an underwriter (see Article 8.9 of the Plan for a further discussion of the securities law issues relating to underwriters).

5.6.1.3    As of the Effective Date, without any further action by any party, the Liens that secure the 2006 Secured Debentures Claims shall be deemed to be extinguished, satisfied and released. To the extent that any Liens to secure the 2006 Secured Debentures Claims have been filed or recorded publicly, if requested by Reorganized Accentia, each of the 2006 Secured Debentures Holders shall take any commercially reasonable steps that are necessary to cancel, terminate and/or extinguish such Liens.

5.6.1.4    As of the Effective Date, any and all of the 2006 Secured Debentures Documents shall be deemed cancelled and void and of no further force and effect.

5.6.1.5    On the Effective Date, the 2006 Secured Debentures Warrants will be cancelled and a new warrant (the "Class 5 Plan Warrant") will be issued to each of the 2006 Secured Debentures Holders to purchase the same number of shares of Reorganized Accentia Common Stock and shares of Biovest Common Stock owned by Accentia that comprise part of the Class 5 Pledged Biovest Shares (adjusted to reflect the use of allocated shares of Biovest Common Stock by such 2006 Secured Debentures Holder to exchange its 2006 Secured Debentures Allowed Class 5 Claim into shares of Biovest Common Stock as described in Article 5.6.1.1) as were allocated to such 2006 Secured Debentures Holder as of the Petition Date under its 2006 Secured Debentures Warrants (also, the "Class 5 Plan Shares"). The Class 5 Plan Warrants will have the following terms: (i) an exercise price of $1.50 per share for Reorganized Accentia Common Stock, (ii) an exercise price of $1.50 per share for Biovest Common Stock, (iii) a term of three years from the Effective Date, (iv) no anti-dilution adjustment provisions, (v) an exercise can only be for cash (i.e., no cashless exercise provisions), (vi) be subject to the call provisions described in Articles 9.13.1 (for Reorganized Accentia Common Stock) and 9.1.3.2 (for Biovest Common Stock), (vii) no lock-up provisions, and (viii) all Class 5 Plan Shares issued upon exercise of a Class 5 Plan Warrant shall be issued pursuant to Section 1145 of the Bankruptcy Code and shall not have any legend restricting the sale thereof under federal securities laws. The transfer or resale of the Class 5 Plan Shares by any recipient thereof would not be exempted under Section 1145 of the Bankruptcy Code if such recipient is deemed to be an underwriter (see Article 8.9 of the Plan for a further discussion of the securities law issues relating to underwriters). The form of the Class 5 Plan Warrant will be forwarded by Accentia to each of the 2006 Secured Debentures Holders within ten (10) days of the date of the Accentia Disclosure Statement Approval Order.

5.6.1.6    Notwithstanding anything to the contrary contained in this Article 5.6.1, the treatment of the 2006 Secured Debentures Claims of Laurus/Valens shall be determined as set forth in Article 5.3.2.5.

Class 5 is Impaired by the Plan. The 2006 Secured Debentures Holders, as the Holders of the Class 5 Claims, are entitled to vote to accept or reject the Plan. For purposes of Section 1126(c) of the Bankruptcy Code, the Laurus/Valens Allowed Debenture Claim shall be counted under Class 5 with respect to any Ballot cast by Laurus/Valens as to the Plan.

## 5.7    **Class 6: Secured Claims and Other Claims of the 2008 Secured Debentures Holders.**

5.7.1    Class 6 consists of all of the 2008 Secured Debentures Claims. The Class 6 Claims of the 2008 Secured Debentures Holders are secured by a Lien on certain of the intellectual property assets of Accentia. Under the Plan, the Class 6 Claims of each of the 2008 Secured Debentures Holders will be allowed in an amount equal to the outstanding principal and accrued and unpaid interest (at the rate of eight percent (8%) per annum) as of the Petition Date under its 2008 Secured Debentures plus Postpetition Interest at the rate of seven percent (7%) per annum (less the unearned portion of the 2008 Secured Debentures Original Issue Discount as of the Petition Date) (each, a "2008 Secured Debentures Allowed Class 6 Claim"). Under the Plan, the following shall occur with respect to the 2008 Secured Debentures Allowed Class 6 Claims:

5.7.1.1    On the Determination Date, in the event a 2008 Secured Debentures Holder does not make the Conversion Election described in Article 5.7.1.5, Reorganized Accentia shall execute and deliver in favor of such 2008 Secured Debentures Holder a new secured debenture (the "Class 6 Plan Debenture") in an original principal amount equal to the amount of its 2008 Secured Debentures Allowed Class 6 Claim. Each of the Class 6 Plan Debentures shall contain the following terms: (a) a maturity date of thirty-six (36) months following the Effective Date, (b) interest will accrue and be payable on the outstanding principal at a fixed rate of eight and one-half percent (8.50%) per annum, calculated based on a 365 day year, and (c) the outstanding principal together with all accrued and unpaid interest will be due and payable in full on the maturity date. The Class 6 Plan Debentures shall not contain any redemption rights, but shall incorporate the conversion rights set forth in Articles 5.7.1.6 and 5.7.1.7.

5.7.1.2    Each of the Class 6 Plan Debentures shall be secured by a Lien on all of the Property of Reorganized Accentia securing the 2008 Secured Debentures, to the same extent, validity and priority as existed in favor of the 2008 Secured Debentures Holders as of the Petition Date. Reorganized Accentia shall execute and deliver in favor of the 2008 Secured Debentures Holders a new security agreement and other customary security documents evidencing such Lien.

5.7.1.3    As of the Effective Date, without any further action by any party, subject to the Lien to be granted to each of the 2008 Secured Debentures Holders in Article 5.7.1.2, the Liens that secure the 2008 Secured Debentures Claims shall be deemed to be

extinguished, satisfied and released. To the extent that any Liens to secure the 2008 Secured Debentures Claims have been filed or recorded publicly, if requested by Reorganized Accentia, each of the 2008 Secured Debentures Holders shall take any commercially reasonable steps that are necessary to cancel, terminate and/or extinguish such Liens.

5.7.1.4    As of the Effective Date, any and all of the 2008 Secured Debentures Documents shall be deemed cancelled and void and of no further force and effect.

5.7.1.5    At the option of a 2008 Secured Debentures Holder, such 2008 Secured Debentures Holder may elect (in lieu of the treatment described in Article 5.7.1.1) to convert all of its 2008 Secured Debentures Allowed Class 6 Claim into shares of Reorganized Accentia Common Stock (the "Class 6 Plan Shares") at a conversion rate equal to $1.10 per share of Reorganized Accentia Common Stock (i.e., such 2008 Secured Debentures Holder will receive that number of shares of Reorganized Accentia Common Stock determined by dividing its 2008 Secured Debentures Allowed Class 6 Claim by $1.10). The Class 6 Plan Shares shall be issued as soon as reasonably practicable following the Determination Date (but in no event more than five (5) Business Days following the Determination Date, subject to the procedures followed by the Transfer Agent) pursuant to Section 1145 of the Bankruptcy Code and shall not have any legend restricting the sale thereof under federal securities laws, but the transfer thereof shall be subject to the provisions of Article 9.12. The transfer or resale of the Class 6 Plan Shares by any recipient thereof would not be exempted under Section 1145 of the Bankruptcy Code if such recipient is deemed to be an underwriter (see Article 8.9 of the Plan for a further discussion of the securities law issues relating to underwriters). Any Conversion Election under this Article 5.7.1.5 shall be made by a 2008 Secured Debentures Holder on the Ballot filed with the Bankruptcy Court or in a separate writing delivered to Accentia, in each such case prior to the Voting Deadline. In the event a 2008 Secured Debentures Holder makes a Conversion Election under this Article 5.7.1.5, the provisions of Articles 5.7.1.1 and 5.7.1.2 shall not be applicable to such 2008 Secured Debentures Holder.

5.7.1.6    At the option of a 2008 Secured Debentures Holder who receives a Class 6 Plan Debenture pursuant to Article 5.7.1.1, at any time following the Effective Date, such 2008 Secured Debentures Holder may elect to convert all of the then outstanding balance of its Class 6 Plan Debenture into shares of Reorganized Accentia Common Stock (also, the "Class 6 Plan Shares") at a conversion rate equal to $1.10 per share of Reorganized Accentia Common Stock (i.e., such 2008 Secured Debentures Holder will receive that number of shares of Reorganized Accentia Common Stock determined by dividing such outstanding balance by $1.10). Any Conversion Election under this Article 5.7.1.6 shall be made by a 2008 Secured Debentures Holder by written notice to Reorganized Accentia. In the event a 2008 Secured Debentures Holder makes the election to convert under this Article 5.7.1.6, such 2008 Secured Debentures Holder shall take any commercially reasonable steps that are necessary to cancel, terminate and/or extinguish the Lien granted under Article 5.7.1.2.

5.7.1.7    Commencing on the 6 Month Anniversary Date, if the VWAP is at least 150% of $1.10 per share for any ten (10) consecutive Trading Days, Reorganized Accentia, at its option, may upon written notice to the Holders of the Class 6 Plan Debentures convert

the then outstanding balance of all of the Class 6 Plan Debentures into shares of Reorganized Accentia Common Stock (also, the "Class 6 Plan Shares") at a conversion rate equal to $1.10 per share of Reorganized Accentia Common Stock (i.e., each 2008 Secured Debentures Holder will receive that number of shares of Reorganized Accentia Common Stock determined by dividing such outstanding balance by $1.10). In the event Reorganized Accentia makes the election to convert under this Article 5.7.1.7, each 2008 Secured Debentures Holder shall take any commercially reasonable steps that are necessary to cancel, terminate and/or extinguish the Lien granted under Article 5.7.1.2.

       5.7.1.8     All of the Class 6 Plan Shares described in Articles 5.7.1.6 and 5.7.1.7 shall be issued as soon as reasonably practicable following such written notice (but in no event more than five (5) Business Days following such written notice, subject to the procedures followed by the Transfer Agent) pursuant to Section 1145 of the Bankruptcy Code and shall not have any legend restricting the sale thereof under federal securities laws, but the transfer thereof shall be subject to the provisions of Article 9.12. The transfer or resale of the Class 6 Plan Shares by any recipient thereof would not be exempted under Section 1145 of the Bankruptcy Code if such recipient is deemed to be an underwriter (see Article 8.9 of the Plan for a further discussion of the securities law issues relating to underwriters).

       5.7.1.9     On the Effective Date, the 2008 Secured Debentures Warrants will be cancelled and a new warrant (the "Class 6 Plan Warrant") will be issued to each of the 2008 Secured Debentures Holders to purchase the same number of shares of Reorganized Accentia Common Stock as were allocated to such 2008 Secured Debentures Holder as of the Petition Date under its 2008 Secured Debentures Warrants (also, the "Class 6 Plan Shares"). The Class 6 Plan Warrants will have the following terms: (i) an exercise price of $1.50 per share, (ii) a term of three years from the Effective Date, (iii) no anti-dilution adjustment provisions, (iv) an exercise can only be for cash (i.e., no cashless exercise provisions), (v) be subject to the call provisions described in Article 9.13.1 below, (vi) no lock-up provisions, and (vii) all shares of Reorganized Accentia Common Stock issued upon exercise of a Class 6 Plan Warrant shall be issued pursuant to Section 1145 of the Bankruptcy Code and shall not have any legend restricting the sale thereof under federal securities laws. The transfer or resale of the Class 6 Plan Shares by any recipient thereof would not be exempted under Section 1145 of the Bankruptcy Code if such recipient is deemed to be an underwriter (see Article 8.9 of the Plan for a further discussion of the securities law issues relating to underwriters).

       5.7.1.10    The form of the Class 6 Plan Debenture, the Security Documents under Article 5.7.1.2, and the Class 6 Plan Warrant will be forwarded by Accentia to each of the 2008 Secured Debentures Holders within ten (10) days of the date of the Accentia Disclosure Statement Approval Order.

       Class 6 is Impaired by the Plan. The 2008 Secured Debentures Holders, as the Holders of the Class 6 Claims, are entitled to vote to accept or reject the Plan.

5.8    **Class 7:  Secured Tax Claims of Governmental Units.**

Class 7 consists of all Secured Tax Claims of Governmental Units.  On the Determination Date, Reorganized Accentia, at its option, may pay to a Governmental Unit, in Cash, the Allowed Amount of its Secured Tax Claim.  Notwithstanding the foregoing, Reorganized Accentia may also, at its option, make deferred Cash payments to a Governmental Unit, over a period not exceeding five (5) years after the Determination Date, in an amount equal to the Allowed Amount of its Secured Tax Claim.  Such deferred Cash payments shall be made in quarterly installments by Reorganized Accentia, commencing ninety (90) days after the Determination Date.  Holders of Allowed Secured Tax Claims shall receive interest on account of their Allowed Secured Tax Claims at the rate established for delinquent tax obligations pursuant to 26 U.S.C. § 6621; provided, however, that if the Holder of such Allowed Secured Tax Claim is a city, county or state, such Holder shall receive interest on account of its Allowed Secured Tax Claim at the applicable statutory rate under state law.  Class 7 is Unimpaired by the Plan.  Each Holder of a Class 7 Claim conclusively is presumed to have accepted the Plan and is not entitled to vote to accept or reject the Plan.

5.9    **Class 8:  Other Secured Claims.**

5.9.1    Class 8 consists of all Secured Claims not otherwise specifically classified in the Plan.  To the extent required by the Bankruptcy Court, such Secured Claims shall be separated into subclasses in Class 8 for each Debtor. In the event there is more than one Secured Claim in this Class for a Debtor, such Secured Claims shall also be separated into subclasses in Class 8 for that Debtor.  Under the Plan, the following shall occur with respect to the Allowed Class 8 Claims:

5.9.1.1    In the event a Holder of a Class 8 Claim does not make the Conversion Election described in Article 5.9.1.2, such Holder will receive a Distribution, in Cash, in an amount equal to the sum of (a) one hundred percent (100%) of such Holder's Allowed Class 8 Claim plus (b) interest accruing at the rate of eight percent (8%) per annum on the Allowed Amount of such Class 8 Claim for the period from the Effective Date through and including the Distribution Date.  Such Distribution will be made to such Holder by Reorganized Accentia at the end of the 40th month following the Effective Date.

5.9.1.2    At the option of a Holder of a Class 8 Claim, such Holder may elect (in lieu of the treatment described in Article 5.9.1.1) to convert all of its Allowed Class 8 Claim into shares of Reorganized Accentia Common Stock (the "Class 8 Plan Shares") at a conversion rate equal to the Market Price per share of Reorganized Accentia Common Stock (i.e., such Holder will receive that number of shares of Reorganized Accentia Common Stock determined by dividing its Allowed Class 8 Claim by the Market Price).  The Class 8 Plan Shares shall be issued as soon as reasonably practicable following the Determination Date (but in no event more than five (5) Business Days following the Determination Date, subject to the procedures followed by the Transfer Agent) pursuant to Section 1145 of the Bankruptcy Code and shall not have any legend restricting the sale thereof under federal securities laws, but the transfer thereof shall be subject to the provisions of Article 9.12.  The transfer or resale of the Class 8 Plan Shares by any recipient thereof would not be exempted under Section 1145 of the Bankruptcy Code if such recipient is deemed to be an underwriter (see Article 8.9 of the Plan for a further discussion of the securities law issues relating to

underwriters). Any Conversion Election shall be made by a Holder of a Class 8 Claim on the Ballot filed with the Bankruptcy Court or in a separate writing delivered to Accentia, in each such case prior to the Voting Deadline. In the event a Holder of a Class 8 Claim makes a Conversion Election under this Article 5.9.1.2, the provisions of Article 5.9.1.1 shall not be applicable to such Holder.

5.9.1.3 Notwithstanding the foregoing provisions of Articles 5.9.1.1 and 5.9.1.2, Reorganized Accentia, in its sole discretion, may return to the Secured Creditor any Property securing its Secured Claim in full and final satisfaction of the Secured Claim.

5.9.1.4 Any deficiency owing to a Secured Creditor with respect to a Class 8 Claim shall be classified and treated as a Class 10 Unsecured Claim to the extent Allowed by a Final Order of the Bankruptcy Court.

Class 8 is Impaired by the Plan. Each Holder of a Class 8 Claim is entitled to vote to accept or reject the Plan.

5.10 **Class 9: Claims of the 2007 Debentures Holders.**

5.10.1 Class 9 consists of all of the 2007 Debentures Claims. Under the Plan, the Class 9 Claims of each of the 2007 Debentures Holders will be allowed in an amount equal to the outstanding principal and accrued and unpaid interest (at the rate of eight percent (8%) per annum) as of the Petition Date under its 2007 Debentures plus Postpetition Interest at the rate of six percent (6%) per annum (each, a "2007 Debentures Allowed Class 9 Claim"). Under the Plan, the following shall occur with respect to the 2007 Debentures Allowed Class 9 Claims:

5.10.1.1 Each 2007 Debentures Holder will receive, as soon as reasonably practicable following the Determination Date (but in no event more than five (5) Business Days following the Determination Date), a new debenture (the "Class 9 Plan Debenture") executed by Reorganized Accentia in an original principal amount equal to the amount of its 2007 Debentures Allowed Class 9 Claim. The Class 9 Plan Debenture shall contain the following terms: (a) a maturity date of twenty-four (24) months following the Determination Date (the "Class 9 Plan Debenture Maturity Date"), (b) no interest will accrue on the outstanding principal balance of the Class 9 Plan Debenture, (c) on the Determination Date and on each of the following seven (7) quarterly anniversaries of the Determination Date (each, an "Automatic Conversion Date"), and provided that the Automatic Conversion VWAP Price is at least $1.00 per share, one-eighth (1/8th) of the original principal balance of the Class 9 Plan Debenture (the "Automatic Conversion Amount") will be automatically converted into shares of Reorganized Accentia Common Stock (the "Class 9 Plan Shares") at a conversion rate equal to the lesser of $1.25 per share of Reorganized Accentia Common Stock or the Automatic Conversion VWAP Price per share of Reorganized Accentia Common Stock (i.e., a 2007 Debentures Holder will receive that number of shares of Reorganized Accentia Common Stock determined by dividing the Automatic Conversion Amount by the lesser of $1.25 or the Automatic Conversion VWAP Price), (d) if, on any Automatic Conversion Date, the Automatic Conversion VWAP Price is less than $1.00 per share, the Automatic Conversion Amount for that Automatic Conversion Date will not automatically

convert into shares of Reorganized Accentia Common Stock, but will instead become payable at the Class 9 Plan Debenture Maturity Date (as described below) unless a 2007 Debentures Holder, upon written notice to Reorganized Accentia, elects to convert the Automatic Conversion Amount into shares of Reorganized Accentia Common Stock (also, the "Class 9 Plan Shares") at a conversion rate equal to $1.00 per share of Reorganized Accentia Common Stock (i.e., the 2007 Debentures Holder will receive that number of shares of Reorganized Accentia Common Stock determined by dividing the Automatic Conversion Amount by $1.00), (e) on each Automatic Conversion Date for which the Automatic Conversion VWAP Price is $1.00 or greater or on which the 2007 Debentures Holder makes an optional conversion under subparagraph (d) above, the outstanding principal balance of the Class 9 Plan Debenture shall be reduced by the Automatic Conversion Amount, (f) any principal amount outstanding under the Class 9 Plan Debenture at the Class 9 Plan Debenture Maturity Date will be due and payable in full, at the election of Reorganized Accentia, in either Cash or in shares of Reorganized Accentia Common Stock at a conversion rate equal to the average of the VWAPs for the ten (10) consecutive Trading Days ending on the Trading Day that is immediately preceding the Class 9 Plan Debenture Maturity Date (provided that the average of the VWAPs for such period is at least $.50 per share), (g) if, at any time during the term of the Class 9 Plan Debenture, the VWAP is at least $1.50 per share for ten (10) consecutive Trading Days, the 2007 Debentures Holder, at its option, may upon written notice to Reorganized Accentia convert any or all of the then outstanding principal balance of its Class 9 Plan Debenture into shares of Reorganized Accentia Common Stock at a conversion rate equal to the Automatic Conversion VWAP Price used for the initial conversion on the Determination Date but not to exceed $1.25 per share, (h) if, at any time during the term of the Class 9 Plan Debentures, the VWAP is at least $1.88 per share for thirty (30) consecutive Trading Days, Reorganized Accentia, at its option, may upon written notice to the 2007 Debentures Holders require the conversion of up to $5,000,000.00 of the then aggregate outstanding principal balance of the Class 9 Plan Debentures at a conversion rate equal to the Automatic Conversion VWAP Price used for the initial conversion on the Determination Date but not to exceed $1.25 per share (such conversion right by Reorganized Accentia shall reset for subsequent periods during the term of the Class 9 Plan Debentures), with any such conversion to be pro rata based on each Holder's percentage interest in the then aggregate outstanding principal balance of the Class 9 Plan Debentures, and (i) the Class 9 Plan Shares shall be issued as soon as reasonably practicable following the Automatic Conversion Date (but in no event more than five (5) Business Days following the Automatic Conversion Date, subject to the procedures followed by the Transfer Agent) pursuant to Section 1145 of the Bankruptcy Code and shall not have any legend restricting the sale thereof under federal securities laws, but the transfer thereof shall be subject to the provisions of Article 9.12. The transfer or resale of the Class 9 Plan Shares by any recipient thereof would not be exempted under Section 1145 of the Bankruptcy Code if such recipient is deemed to be an underwriter (see Article 8.9 of the Plan for a further discussion of the securities law issues relating to underwriters).

5.10.1.2    As of the Effective Date, any and all of the 2007 Debentures Documents shall be deemed cancelled and void and of no further force and effect.

5.10.1.3    On the Effective Date, the 2007 Debentures Warrants will be cancelled and a new warrant (the "Class 9 Plan Warrant") will be issued to each of the 2007 Debentures Holders to purchase the same number of shares of Reorganized Accentia Common Stock as were allocated to such 2007 Debentures Holder as of the Petition Date under its 2007 Debentures Warrants (also, the "Class 9 Plan Shares"). The Class 9 Plan Warrants will have the following terms: (i) an exercise price of $1.50 per share, (ii) a term of three years from the Effective Date, (iii) no anti-dilution adjustment provisions, (iv) an exercise can only be for cash (i.e., no cashless exercise provisions), (v) be subject to the call provisions described in Article 9.13.1 below, (vi) no lock-up provisions, and (vii) all shares of Reorganized Accentia Common Stock issued upon exercise of a Class 9 Plan Warrant shall be issued pursuant to Section 1145 of the Bankruptcy Code and shall not have any legend restricting the sale thereof under federal securities laws. The transfer or resale of the Class 9 Plan Shares by any recipient thereof would not be exempted under Section 1145 of the Bankruptcy Code if such recipient is deemed to be an underwriter (see Article 8.9 of the Plan for a further discussion of the securities law issues relating to underwriters).

5.10.1.4    The form of the Class 9 Plan Debenture and the Class 9 Plan Warrant will be forwarded by Accentia to each of the 2007 Debentures Holders within ten (10) days of the date of the Accentia Disclosure Statement Approval Order.

Class 9 is Impaired by the Plan. The 2007 Debentures Holders, as the Holders of the Class 9 Claims, are entitled to vote to accept or reject the Plan.

## 5.11    **Class 10:  Unsecured Claims (Unsecured Claims Not Otherwise Classified).**

5.11.1   Class 10 consists of all Unsecured Claims not otherwise classified in the Plan. To the extent required by the Bankruptcy Court, such Unsecured Claims shall be separated into subclasses in Class 10 for each Debtor.

5.11.2   Under the Plan, each Holder of an Unsecured Claim in Class 10 shall have the option to select one of the treatments set forth below designated as Option A, Option B and Option C:

5.11.2.1    Option A.  Under Option A, the Holder of an Allowed Unsecured Claim in Class 10 will receive a Distribution, in Cash, in an amount equal to the sum of one hundred percent (100%) of such Holder's Allowed Class 10 Unsecured Claim (including Postpetition Interest at the Federal Judgment Interest Rate) plus (b) interest accruing at the rate of five percent (5%) per annum on the Allowed Amount of such Class 10 Claim for the period from the Effective Date through and including the Distribution Date.  Such Distribution will be made to such Holder by Reorganized Accentia at the end of the 40th month following the Effective Date.

5.11.2.2    Option B.  Under Option B, the Holder of an Allowed Unsecured Claim in Class 10 will convert all of its Allowed Class 10 Unsecured Claim (including Postpetition Interest at the Federal Judgment Interest Rate) into shares of Reorganized Accentia Common Stock (the "Class 10 Plan Shares") at a conversion rate equal to the Market Price per share of Reorganized Accentia Common Stock (i.e., such Holder will receive that number of shares of

Reorganized Accentia Common Stock determined by dividing its Allowed Class 10 Unsecured Claim (including Postpetition Interest at the Federal Judgment Interest Rate) by the Market Price). The Class 10 Plan Shares shall be issued as soon as reasonably practicable following the Determination Date (but in no event more than five (5) Business Days following the Determination Date, subject to the procedures followed by the Transfer Agent) pursuant to Section 1145 of the Bankruptcy Code and shall not have any legend restricting the sale thereof under federal securities laws, but the transfer thereof shall be subject to the provisions of Article 9.12. The transfer or resale of the Class 10 Plan Shares by any recipient thereof would not be exempted under Section 1145 of the Bankruptcy Code if such recipient is deemed to be an underwriter (see Article 8.9 of the Plan for a further discussion of the securities law issues relating to underwriters).

    5.11.2.3    Option C. Under Option C, the Holder of an Allowed Unsecured Claim in Class 10 electing Option C (an "Option C Holder") will receive a Distribution, in accordance with the provisions of this Article 5.11.2.3, in an amount equal to one hundred percent (100%) of such Option C Holder's Allowed Class 10 Unsecured Claim (including Postpetition Interest at the Federal Judgment Interest Rate). For purposes of this Article 5.11.2.3, the Allowed Amount of a Class 10 Unsecured Claim from time to time for an Option C Holder shall be hereinafter referred to as the "Option C Allowed Claim Amount." On the Determination Date and on each of the following seven (7) quarterly anniversaries of the Determination Date (each, an "Automatic Conversion Date"), and provided that the Automatic Conversion VWAP Price is at least $1.00 per share, one-eighth (1/8th) of the Option C Allowed Claim Amount for an Option C Holder (the "Automatic Conversion Amount") will be automatically converted into shares of Reorganized Accentia Common Stock (the "Class 10 Plan Shares") at a conversion rate equal to the Automatic Conversion VWAP Price per share of Reorganized Accentia Common Stock (i.e., such Option C Holder will receive that number of shares of Reorganized Accentia Common Stock determined by dividing the Automatic Conversion Amount by the Automatic Conversion VWAP Price). If, on any Automatic Conversion Date, the Automatic Conversion VWAP Price is less than $1.00 per share, the Automatic Conversion Amount for that Automatic Conversion Date will not automatically convert into shares of Reorganized Accentia Common Stock, but will instead become payable at the date which is twenty-four (24) months following the Determination Date (the "Option C Maturity Date") as described below, unless the Option C Holder, upon written notice to Reorganized Accentia, elects to convert the Automatic Conversion Amount into shares of Reorganized Accentia Common Stock (also, the "Class 10 Plan Shares") at a conversion rate equal to $1.00 per share of Reorganized Accentia Common Stock (i.e., such Option C Holder will receive that number of shares of Reorganized Accentia Common Stock determined by dividing the Automatic Conversion Amount by $1.00). On each Automatic Conversion Date for which the Automatic Conversion VWAP Price is $1.00 or greater or on which the Option C Holder elects an optional conversion as described in the immediately preceding sentence, the Option C Allowed Claim Amount shall be reduced by the Automatic Conversion Amount. Any portion of the Option C Allowed Claim Amount that is outstanding at the Option C Maturity Date will be due and payable in full, at the election of Reorganized Accentia, in either Cash or in shares of Reorganized Accentia Common Stock at a conversion rate equal to the average of the VWAPs for the ten (10) consecutive Trading Days ending on the Trading Day that is immediately preceding the

Option C Maturity Date. If, at any time prior to the Option C Maturity Date, the VWAP is at least $1.50 per share for ten (10) consecutive Trading Days, an Option C Holder, at its option, may upon written notice to Reorganized Accentia convert any or all of the Option C Allowed Claim Amount into shares of Reorganized Accentia Common Stock at a conversion rate equal to the Automatic Conversion VWAP Price used for the initial conversion on the Determination Date. In addition, if, at any time prior to the Option C Maturity Date, the VWAP is at least $1.88 per share for thirty (30) consecutive Trading Days, Reorganized Accentia, at its option, may upon written notice to the Option C Holders require the conversion of up to $5,000,000.00 of the then aggregate outstanding balance of the Option C Allowed Claim Amount at a conversion rate equal to the Automatic Conversion VWAP Price used for the initial conversion on the Determination Date (such conversion right by Reorganized Accentia shall reset for subsequent periods until the Option C Maturity Date), with any such conversion to be pro rata based on each Option C Holder's percentage interest in the then aggregate outstanding balance of the Option C Allowed Claim Amount. The Class 10 Plan Shares shall be issued as soon as reasonably practicable following the Automatic Conversion Date (but in no event more than five (5) Business Days following the Automatic Conversion Date, subject to the procedures followed by the Transfer Agent) pursuant to Section 1145 of the Bankruptcy Code and shall not have any legend restricting the sale thereof under federal securities laws, but the transfer thereof shall be subject to the provisions of Article 9.12. The transfer or resale of the Class 10 Plan Shares by any recipient thereof would not be exempted under Section 1145 of the Bankruptcy Code if such recipient is deemed to be an underwriter (see Article 8.9 of the Plan for a further discussion of the securities law issues relating to underwriters).

5.11.3 The election of Option A, Option B or Option C must be made on the Ballot submitted by the Holder of a Class 10 Unsecured Claim and filed with the Bankruptcy Court by the Voting Deadline; provided, however, that the Debtors, in their sole discretion, may accept any written election of Option B or Option C by the Holder of a Class 10 Unsecured Claim that is delivered to the Debtors prior to the Effective Date. In the event that a Holder of a Class 10 Unsecured Claim does not make an election of Option A, Option B or Option C on its Ballot or does not file a Ballot with the Bankruptcy Court, such Holder shall be deemed to have elected Option A.

Class 10 is Impaired by the Plan. Each Holder of an Unsecured Claim in Class 10 is entitled to vote to accept or reject the Plan.

## 5.12 **Class 11: Unsecured Convenience Claims.**

5.12.1 Class 11 consists of all Unsecured Convenience Claims. To the extent required by the Bankruptcy Court, such Unsecured Convenience Claims shall be separated into subclasses in Class 11 for each Debtor. Notwithstanding anything to the contrary contained in the Plan, each Holder of a Class 10 Unsecured Claim (a) in an amount greater than $10,000.00 may have its Unsecured Claim treated as an Unsecured Convenience Claim under the Plan by making the Convenience Class Opt-In Election, or (b) in an amount less than or equal to $10,000.00 may have its Unsecured Claim treated as a Class 10 Unsecured Claim under the Plan by making the Convenience Class Opt-Out Election. The Convenience Class Opt-In Election or the Convenience Class Opt-Out Election is irrevocable

and must be made by such Holder on its Ballot and filed with the Bankruptcy Court on or before the Voting Deadline.

5.12.2 On the Distribution Date, the Holder of an Allowed Unsecured Convenience Claim shall receive Cash from Reorganized Accentia in an amount equal to (a) twenty percent (20%) of the amount of such Allowed Claim if the amount of such Allowed Claim is less than or equal to $10,000.00, or (b) $2,000.00 if the amount of such Allowed Claim is greater than $10,000.00 and the Holder of such Allowed Claim has agreed to reduce the Allowed Amount of its Claim to $10,000.00 by making the Convenience Class Opt-In Election. Notwithstanding the foregoing, if Reorganized Accentia does not have sufficient Cash available to make the payment required to the Holder of an Allowed Class 11 Claim on the Distribution Date, such Allowed Class 11 Claim shall be paid on the 6 Month Anniversary Date or as otherwise ordered by a Final Order of the Bankruptcy Court.

Class 11 is Impaired by the Plan. Each Holder of an Unsecured Convenience Claim in Class 11 is entitled to vote to accept or reject the Plan.

## 5.13 **Class 12: Intercompany Claims.**

Class 12 consists of all Intercompany Claims. On the Effective Date, all of the Intercompany Claims shall be deemed cancelled, annulled and extinguished without any further action by any party and shall be of no further force and effect. The Holders of the Class 12 Intercompany Claims will not receive or retain any Property under the Plan on account of such Intercompany Claims. Accordingly, Reorganized Accentia will not make any Distribution or establish any reserve under the Plan for the Intercompany Claims. Class 12 is Impaired by the Plan. Pursuant to Section 1126(g) of the Bankruptcy Code, Class 12 is deemed not to have accepted the Plan and, thus, Holders of the Class 12 Intercompany Claims are not entitled to vote to accept or reject the Plan.

## 5.14 **Class 13: Convertible Preferred Stock Claims.**

5.14.1 Class 13 consists of all Convertible Preferred Stock Claims. Under the Plan, subject to Article 5.14.1.5, the Class 13 Claims of each of the Convertible Preferred Stock Holders will be allowed in an amount equal to the outstanding principal as of the Petition Date under its Convertible Preferred Stock Documents (each, a "Convertible Preferred Stock Allowed Class 13 Claim"). Under the Plan, the following shall occur with respect to the Convertible Preferred Stock Allowed Class 13 Claims:

5.14.1.1 At the option of a Convertible Preferred Stock Holder, such Convertible Preferred Stock Holder may elect (in lieu of the treatment described in Article 5.14.1.2) to convert all of its Convertible Preferred Stock Allowed Class 13 Claim into shares of Reorganized Accentia Common Stock (the "Class 13 Plan Shares") at a conversion rate equal to $2.67 per share of Reorganized Accentia Common Stock (i.e., such Convertible Preferred Stock Holder will receive on the Determination Date that number of shares of Reorganized Accentia Common Stock determined by dividing its Convertible Preferred Stock Allowed Class 13 Claim by $2.67). The Class 13 Plan Shares shall be issued as soon as reasonably practicable following the Determination Date (but in no event more than five (5) Business Days following the Determination Date, subject to the procedures followed by the Transfer

Agent) pursuant to Section 1145 of the Bankruptcy Code and shall not have any legend restricting the sale thereof under federal securities laws, but the transfer thereof shall be subject to the provisions of Article 9.12. The transfer or resale of the Class 13 Plan Shares by any recipient thereof would not be exempted under Section 1145 of the Bankruptcy Code if such recipient is deemed to be an underwriter (see Article 8.9 of the Plan for a further discussion of the securities law issues relating to underwriters). Any Conversion Election under this Article 5.14.1.1 shall be made by a Convertible Preferred Stock Holder on the Ballot filed with the Bankruptcy Court or in a separate writing delivered to Accentia, in each such case prior to the Voting Deadline. In the event a Convertible Preferred Stock Holder makes a Conversion Election under this Article 5.14.1.1, the provisions of Article 5.14.1.2 shall not be applicable to such Convertible Preferred Stock Holder.

5.14.1.2    In the event a Convertible Preferred Stock Holder does not make the Conversion Election described in Article 5.14.1.1, such Convertible Preferred Stock Holder will receive, as soon as reasonably practicable following the Determination Date (but in no event more than five (5) Business Days following the Determination Date), a convertible promissory note (the "Class 13 Plan Note") executed by Reorganized Accentia in an original principal amount equal to the amount of its Convertible Preferred Stock Allowed Class 13 Claim. The Class 13 Plan Note shall contain the following terms: (a) a maturity date of twenty-four (24) months following the Determination Date (the "Class 13 Plan Note Maturity Date"), (b) no interest will accrue on the outstanding principal balance of the Class 13 Plan Note, (c) on the Determination Date and on each of the following seven (7) quarterly anniversaries of the Determination Date (each, an "Automatic Conversion Date"), and provided that the Automatic Conversion VWAP Price is at least $1.00 per share, one-eighth (1/8th) of the original balance of the Class 13 Plan Note (the "Automatic Conversion Amount") will be automatically converted into shares of Reorganized Accentia Common Stock (the "Class 13 Plan Shares") at a conversion rate equal to the Automatic Conversion VWAP Price per share of Reorganized Accentia Common Stock (i.e., such Convertible Preferred Stock Holder will receive that number of shares of Reorganized Accentia Common Stock determined by dividing the Automatic Conversion Amount by the Automatic Conversion VWAP Price), (d) if, on any Automatic Conversion Date, the Automatic Conversion VWAP Price is less than $1.00 per share, the Automatic Conversion Amount for that Automatic Conversion Date will not automatically convert into shares of Reorganized Accentia Common Stock, but will instead become payable at the Class 13 Plan Note Maturity Date (as described below) unless a Convertible Preferred Stock Holder, upon written notice to Reorganized Accentia, elects to convert the Automatic Conversion Amount into shares of Reorganized Accentia Common Stock (also, the "Class 13 Plan Shares") at a conversion rate equal to $1.00 per share of Reorganized Accentia Common Stock (i.e., the Convertible Preferred Stock Holder will receive that number of shares of Reorganized Accentia Common Stock determined by dividing the Automatic Conversion Amount by $1.00), (e) on each Automatic Conversion Date for which the Automatic Conversion VWAP Price is $1.00 or greater or on which the Convertible Preferred Stock Holder makes an optional conversion under subparagraph (d) above, the outstanding principal balance of the Class 13 Plan Note shall be reduced by the Automatic Conversion Amount, (f) any principal amount outstanding under the Class 13 Plan Note at the Class 13 Plan Note Maturity Date will be due and payable in full, at the election of Reorganized Accentia, in either Cash or in

shares of Reorganized Accentia Common Stock at a conversion rate equal to the greater of the average of the VWAPs for the ten (10) consecutive Trading Days ending on the Trading Day that is immediately preceding the Class 13 Plan Note Maturity Date or $1.00, (g) if, at any time during the term of the Class 13 Plan Note, the VWAP is at least 125% of $1.25 per share for ten (10) consecutive Trading Days, the Convertible Preferred Stock Holder, at its option, may upon written notice to Reorganized Accentia convert any or all of the then outstanding principal balance of its Class 13 Plan Note into shares of Reorganized Accentia Common Stock at a conversion rate equal to the Automatic Conversion VWAP Price used for the initial conversion on the Determination Date, (h) if, at any time during the term of the Class 13 Plan Notes, the VWAP is at least 150% of $1.25 per share for thirty (30) consecutive Trading Days, Reorganized Accentia, at its option, may upon written notice to the Convertible Preferred Stock Holders require the conversion of all or any portion of the then aggregate outstanding principal balance of the Class 13 Plan Notes at a conversion rate equal to the Automatic Conversion VWAP Price used for the initial conversion on the Determination Date (such conversion right by Reorganized Accentia shall reset for subsequent periods during the term of the Class 13 Plan Notes), with any such conversion to be pro rata based on each Holder's percentage interest in the then aggregate outstanding principal balance of the Class 13 Plan Notes, and (i) the Class 13 Plan Shares shall be issued as soon as reasonably practicable following the Automatic Conversion Date (but in no event more than five (5) Business Days following the Automatic Conversion Date, subject to the procedures followed by the Transfer Agent) pursuant to Section 1145 of the Bankruptcy Code and shall not have any legend restricting the sale thereof under federal securities laws, but the transfer thereof shall be subject to the provisions of Article 9.12. The transfer or resale of the Class 13 Plan Shares by any recipient thereof would not be exempted under Section 1145 of the Bankruptcy Code if such recipient is deemed to be an underwriter (see Article 8.9 of the Plan for a further discussion of the securities law issues relating to underwriters).

5.14.1.3    As of the Effective Date, any and all of the Convertible Preferred Stock Documents shall be deemed cancelled and void and of no further force and effect.

5.14.1.4    On the Effective Date, the Convertible Preferred Stock Warrants will be cancelled and a new warrant (the "Class 13 Plan Warrant") will be issued to each of the Convertible Preferred Stock Holders to purchase the same number of shares of Reorganized Accentia Common Stock as were allocated to such Convertible Preferred Stock Holder Holder as of the Petition Date under its Convertible Preferred Stock Warrants (also, the "Class 13 Plan Shares"). The Class 13 Plan Warrants will have the following terms: (i) an exercise price of $1.50 per share, (ii) a term of three years from the Effective Date, (iii) no anti-dilution adjustment provisions, (iv) an exercise can only be for cash (i.e., no cashless exercise provisions), (v) be subject to the call provisions described in Article 9.1.3.1 below, (vi) no lock-up provisions, and (vii) all shares of Reorganized Accentia Common Stock issued upon exercise of a Class 13 Plan Warrant shall be issued pursuant to Section 1145 of the Bankruptcy Code and shall not have any legend restricting the sale thereof under federal securities laws. The transfer or resale of the Class 13 Plan Shares by any recipient thereof would not be exempted under Section 1145 of the Bankruptcy Code if such recipient is

deemed to be an underwriter (see Article 8.9 of the Plan for a further discussion of the securities law issues relating to underwriters).

5.14.1.5    The form of the Class 13 Plan Note and the Class 13 Plan Warrant will be forwarded by Accentia to each of the Convertible Preferred Stock Holders within ten (10) days of the date of the Accentia Disclosure Statement Approval Order.

5.14.1.6    Notwithstanding anything to the contrary contained in this Article 5.14.1, the treatment of the Convertible Preferred Stock Claims of Laurus/Valens shall be determined as set forth in Article 5.3.2.6.

Class 13 is Impaired by the Plan. The Convertible Preferred Stock Holders, as the Holders of the Class 13 Claims, are entitled to vote to accept or reject the Plan. For purposes of Section 1126(c) of the Bankruptcy Code, the Laurus/Valens Allowed Preferred Stock Claim shall be counted under Class 13 with respect to any Ballot cast by Laurus/Valens as to the Plan.

5.15    **Class 14:  Subordinated Securities Claims.**

5.15.1    Class 14 consists of all Subordinated Securities Claims. Pursuant to Section 510(b) of the Bankruptcy Code, each Allowed Class 14 Claim, if any, shall be subordinated to all Claims (including Class 10 Unsecured Claims) or Equity Interests that are senior to or equal to the Claim or Equity Interest represented by the Security of Accentia in question; provided, however, that if such Security is Existing Accentia Common Stock, such Allowed Class 14 Claim shall have the same priority as Class 15 Equity Interests.

5.15.2    Under the Plan, each Holder of an Allowed Class 14 Claim will receive a Distribution, in Cash, in an amount equal to the sum of one hundred percent (100%) of such Holder's Allowed Class 14 Claim. Such Distribution will be made to such Holder by Reorganized Accentia at the end of the 48th month following the Effective Date; provided, however, that no Distribution shall be made to the Holders of Allowed Class 14 Claims until all Distributions have been made to all Holders of Allowed Class 10 Unsecured Claims who have elected Option A under Article 5.11.2.1.

Class 14 is Impaired by the Plan. Each Holder of a Subordinated Securities Claim in Class 14 is entitled to vote to accept or reject the Plan.

5.16    **Class 15:  Equity Interests.**

Class 15 consists of all Equity Interests. Under the Plan, each Holder of an Allowed Class 15 Equity Interest on the Effective Date shall be deemed to receive one (1) share of Reorganized Accentia Common Stock for each share of Existing Accentia Common Stock held by such Holder as of the Effective Date (the "Class 15 Plan Shares"), subject to dilution of such Holder's percentage ownership interest in Reorganized Accentia as a result of the issuance of the other Plan Shares hereunder. To the extent requested by the Holder of an Allowed Class 15 Equity Interest, such Holder shall receive, upon surrender to the Transfer Agent of a stock certificate evidencing shares of Existing Accentia Common Stock, a new certificate representing the Class 15 Plan Shares. The Class 15 Plan Shares shall be deemed issued pursuant to Section 1145 of the Bankruptcy Code and

shall not have any legend restricting the sale thereof under federal securities laws. The Debtors do not believe that the Holders of Class 15 Equity Interests are Impaired by the Plan, since their shares of Existing Accentia Common Stock were subject to significant dilution as of the Petition Date. However, out of an abundance of caution, the Debtors are treating Class 15 as Impaired by the Plan and, thus, each Holder of a Class 15 Equity Interest is entitled to vote to accept or reject the Plan.

5.17 **Class 16: Subsidiary Equity Interests.**

Class 16 consists of all Subsidiary Equity Interests. The Subsidiary Equity Interests will not be affected by the Plan and Accentia will retain the Subsidiary Equity Interests. No Distributions will be made under the Plan on account of the Subsidiary Equity Interests. Class 16 is Unimpaired by the Plan. Accentia, as the Holder of the Class 16 Subsidiary Equity Interests, conclusively is presumed to have accepted the Plan and is not entitled to vote to accept or reject the Plan.

# ARTICLE 6
# ACCEPTANCE OR REJECTION OF THE PLAN

6.1 **Each Impaired Class Entitled to Vote Separately.**

Except as otherwise provided in Article 6.4, the Holders of Claims or Equity Interests in each Impaired Class of Claims or Impaired Class of Equity Interests shall be entitled to vote separately to accept or reject the Plan.

6.2 **Acceptance by Impaired Classes.**

6.2.1    Classes 1, 2, 3, 4, 5, 6, 8, 9, 10, 11, 13 and 14 are Impaired under the Plan, and Holders of Claims in such Classes are entitled to vote to accept or reject the Plan. Pursuant to Section 1126(c) of the Bankruptcy Code, an Impaired Class of Claims shall have accepted the Plan if (a) the Holders (other than any Holder designated pursuant to Section 1126(e) of the Bankruptcy Code) of at least two-thirds in dollar amount of the Allowed Claims actually voting in such Class have voted to accept the Plan and (b) the Holders (other than any Holder designated pursuant to Section 1126(e) of the Bankruptcy Code) of more than one-half in number of the Allowed Claims actually voting in such Class have voted to accept the Plan. If a Holder of a Claim holds more than one Claim in any one Class, all Claims of such Holder in such Class shall be aggregated and deemed to be one Claim for purposes of determining the number of Claims in such Class voting on the Plan.

6.2.2    The Debtors do not believe that the Holders of Class 15 Equity Interests are Impaired by the Plan, since their shares of Existing Accentia Common Stock were subject to significant dilution as of the Petition Date. However, out of an abundance of caution, the Debtors are treating Class 15 as Impaired by the Plan. Pursuant to Section 1126(d) of the Bankruptcy Code, an Impaired Class of Equity Interests shall have accepted the Plan if the Holders (other than any Holder designated pursuant to Section 1126(e) of the Bankruptcy Code) of at least two-thirds in amount of the Allowed Equity Interests actually voting in such Class have voted to accept the Plan.

## 6.3 Presumed Acceptance of Plan by Unimpaired Classes.

Class 7 is Unimpaired under the Plan. Pursuant to Section 1126(f) of the Bankruptcy Code, such Class and the Holders of Claims in such Class are conclusively presumed to have accepted the Plan and, thus, are not entitled to vote on the Plan. Accordingly, votes of Holders of Claims in Class 7 are not being solicited by the Debtors. Except as otherwise expressly provided in the Plan, nothing contained herein or otherwise shall affect the rights and legal and equitable claims or defenses of the Debtors or the Reorganized Debtors in respect of any Unimpaired Claims, including all rights in respect of legal and equitable defenses to setoffs or recoupments against Unimpaired Claims.

## 6.4 Deemed Non-Acceptance of Plan.

Holders of Class 12 Intercompany Claims will not receive or retain any Property or equity interest under the Plan on account of such Intercompany Claims and, therefore, Class 12 is deemed not to have accepted the Plan pursuant to Section 1126(g) of the Bankruptcy Code. Accordingly, votes of Holders of Class 12 Intercompany Claims are not being solicited by the Debtors.

## 6.5 Impairment Controversies.

If a controversy arises as to whether any Claim or Equity Interest, or any Class of Claims or Class of Equity Interests, is Impaired under the Plan, such Claim, Equity Interest or Class shall be treated as specified in the Plan unless the Bankruptcy Court shall determine such controversy upon motion of the party challenging the characterization of a particular Claim or Equity Interest, or a particular Class of Claims or Class of Equity Interests, under the Plan.


# ARTICLE 7
# TREATMENT OF EXECUTORY CONTRACTS AND UNEXPIRED LEASES

## 7.1 Assumption or Rejection of Executory Contracts and Unexpired Leases.

Pursuant to Sections 365(a) and 1123(b)(2) of the Bankruptcy Code, all executory contracts and unexpired leases that currently exist between any of the Debtors and another Person or Entity and not listed on Exhibit B attached hereto shall be deemed assumed by the applicable Debtor as of the Effective Date (collectively, the "Assumed Contracts"); provided, however, that the Debtors reserve the right, on or prior to the Confirmation Date, to amend Exhibit B to add any executory contract or unexpired lease thereto or to delete any executory contract or unexpired lease therefrom, in which event such executory contract(s) or unexpired lease(s) shall be deemed to be rejected (if added) or assumed (if deleted). The Debtors shall provide notice of any amendments to Exhibit B to the parties to the executory contracts and unexpired leases affected thereby. The listing of a document on Exhibit B shall not constitute an admission by the Debtors that such document is an executory contract or an unexpired lease or that the Debtors have any liability thereunder. Any executory contract or unexpired lease that exists between the Debtors and another Person or Entity and that is listed on Exhibit B attached to the Plan shall be deemed rejected by the Debtors as of the Confirmation Date (collectively, the "Rejected Contracts"), unless there is pending before the Bankruptcy Court on the Confirmation Date a motion to assume such executory contract or

unexpired lease. In addition, any executory contract or unexpired lease that exists between either AccentRx, ASP or TEAMM and another Person or Entity shall be deemed rejected by AccentRx, ASP or TEAMM, as the case may be, as of the Confirmation Date (also, collectively, the "Rejected Contracts"), unless there is pending before the Bankruptcy Court on the Confirmation Date a motion to assume such executory contract or unexpired lease. For purposes of the Plan, (i) all non-compete agreements, confidentiality or non-disclosure agreements and indemnification agreements executed for the benefit of the Debtors shall be deemed to be executory contracts and Assumed Contracts, and (ii) except as provided in Article 7.7, all non-compete agreements, confidentiality or non-disclosure agreements, indemnification agreements and guaranties executed by any of the Debtors for the benefit of a third party shall be deemed to be executory contracts and Rejected Contracts (even if not listed on Exhibit B).

7.2    **Approval of Assumption or Rejection of Executory Contracts and Unexpired Leases.**

Entry of the Confirmation Order shall, subject to and upon the occurrence of the Effective Date, constitute (i) the approval, pursuant to Sections 365(a) and 1123(b)(2) of the Bankruptcy Code, of the assumption of the executory contracts and unexpired leases assumed pursuant to Article 7.1 hereof, (ii) the approval, pursuant to Sections 365(a) and 1123(b)(2) of the Bankruptcy Code, of the rejection of the executory contracts and unexpired leases rejected pursuant to Article 7.1 hereof, and (iii) the extension of time, pursuant to Section 365(d)(4) of the Bankruptcy Code, within which the Debtors may assume, assume and assign, or reject any unexpired lease of nonresidential real property through the date of entry of an order approving the assumption, assumption and assignment, or rejection of such unexpired lease. The assumption by any of the Debtors of an Assumed Contract shall be binding upon any and all parties to such Assumed Contract as a matter of law, and each such Assumed Contract shall be fully enforceable by the applicable Reorganized Debtor in accordance with its terms, except as modified by the provisions of the Plan or an order of the Bankruptcy Court.

7.3    **Inclusiveness.**

Unless otherwise specified on Exhibit B, each executory contract and unexpired lease listed or to be listed on Exhibit B shall include all modifications, amendments, supplements, restatements, or other agreements made directly or indirectly by any agreement, instrument, or other document that in any manner affect such executory contract or unexpired lease, without regard to whether such agreement, instrument or other document is listed on Exhibit B.

7.4    **Cure of Defaults.**

Any lessor or other party to an Assumed Contract (except those lessors or other parties whose unexpired leases or executory contracts have been previously assumed by a Final Order of the Bankruptcy Court) asserting a Cure Claim in connection with the assumption of any unexpired lease or executory contract under Article 7.1, as contemplated by Section 365(b) of the Bankruptcy Code, must file such Cure Claim with the Bankruptcy Court on or before the Cure Claim Submission Deadline asserting all alleged amounts accrued or alleged defaults through the Effective Date. Any lessor or other party to an Assumed Contract failing to file a Cure Claim by the Cure Claim Submission Deadline shall be forever barred from asserting, collecting or seeking to collect any amounts or defaults relating thereto against the Debtors or the Reorganized Debtors. The

Reorganized Debtors shall have ninety (90) days from the Effective Date to file an objection to any Cure Claim. Any disputed Cure Claims shall be resolved either consensually or by the Bankruptcy Court. Except as may otherwise be agreed to by the parties, by no later than the 6 Month Anniversary Date, the Reorganized Debtors shall cure any and all undisputed Cure Claims. All disputed Cure Claims shall be cured either within one hundred twenty (120) days after the entry of a Final Order determining the amount, if any, of the Debtors' liability with respect thereto or as may otherwise be agreed to by the parties. As of the date of the Plan, the Debtors do not believe there will be any Cure Claims.

## 7.5 **Claims under Rejected Executory Contracts and Unexpired Leases.**

7.5.1 Unless otherwise ordered by the Bankruptcy Court, any Claim for damages arising by reason of the rejection of any executory contract or unexpired lease must be filed with the Bankruptcy Court on or before the Bar Date for rejection damage Claims in respect of such rejected executory contract or unexpired lease or such Claim shall be forever barred and unenforceable against the Debtors or the Reorganized Debtors. With respect to the Rejected Contracts, the Bar Date for filing rejection damage and other Claims with the Bankruptcy Court shall be thirty (30) days after the Confirmation Date. The Plan and any other order of the Bankruptcy Court providing for the rejection of an executory contract or unexpired lease shall constitute adequate and sufficient notice to Persons or Entities which may assert a Claim for damages from the rejection of an executory contract or unexpired lease of the Bar Date for filing a Claim in connection therewith.

7.5.2 All Claims for damages from the rejection of an executory contract or unexpired lease, once fixed and liquidated by the Bankruptcy Court and determined to be Allowed Claims, shall be Allowed Unsecured Claims in Class 10.

## 7.6 **Insurance Policies.**

All of the Debtors' insurance policies and any agreements, documents, or instruments relating thereto are treated as executory contracts under the Plan. Nothing contained in the Plan shall constitute or be deemed a waiver of any Cause of Action that the Debtors or the Reorganized Debtors may hold against any Person or Entity, including the insurers under any of the Debtors' insurance policies or under the D&O Policy.

## 7.7 **Indemnification Rights.**

All Claims for Indemnification Rights against the Debtors by an Indemnitee for defense and indemnification shall be reinstated against the Reorganized Debtors and rendered Unimpaired to the extent that such Indemnitee is entitled to defense or indemnification under applicable law, agreement or past policy of the Debtors, but only to the extent that any such reinstated Claim for defense and indemnification in response to a claim against such Indemnitee is covered under any of the Debtors' insurance policies, including the D&O Policy. The reinstated Claim against the Reorganized Debtors, and the Reorganized Debtors' corresponding defense and indemnification obligation, shall not be for any deductible or self-insured retention amount and shall not exceed the amount of available insurance coverage.

7.8    **Existing Accentia Stock Options.**

7.8.1    All of the grants of the Existing Accentia Stock Options and any agreements, documents, or instruments relating thereto are treated as executory contracts under the Plan. All of the holders of the Existing Accentia Stock Options shall retain unaltered all of their legal, equitable and contractual rights thereunder, subject to the provisions set forth in Articles 7.8.2-7.8.4.

7.8.2    Any Existing Accentia Stock Option granted Prepetition shall be exercisable by the holder thereof in accordance with the terms of the original grant, but may not be exercised until after the 4 Month Anniversary Date. The sale of any shares of Reorganized Accentia Common Stock received upon the exercise of any such option shall be subject to any restrictions or limitations under Rule 144(e) and Accentia's insider trading restrictions and policies.

7.8.3    Any Existing Accentia Stock Option granted Postpetition may not be exercised by the holder thereof until after the 12 Month Anniversary Date. Following the 12 Month Anniversary Date, any such option shall be exercisable in accordance with the terms of the original grant provided that one of the following conditions has been satisfied following the Effective Date: (i) an aggregate of 30,000,000 shares of Reorganized Accentia Common Stock have traded at a price equal to or greater than $1.25 per share, or (ii) for a period of ninety (90) consecutive Trading Days, the VWAP equals or exceeds $1.88 per share. If either of the conditions in subparagraph (i) or (ii) has not been satisfied by the 12 Month Anniversary Date, then any such option shall not be exercisable thereafter until the first to occur of the following: (a) the satisfaction of either of the conditions in subparagraph (i) or (ii) above, or (b) the holder of any such option pays an exercise price to Reorganized Accentia in an amount equal to the sum of (x) the exercise price stated in such option plus (y) an amount equal to the difference between $1.25 per share and the exercise price stated in such option.

7.8.4.    Notwithstanding the provisions of Article 7.8.2 or 7.8.3, the holder of an Existing Accentia Stock Option may exercise such option provided that the shares of Reorganized Accentia Common Stock issued upon such exercise are deposited into an escrow account controlled by Reorganized Accentia and cannot be sold or transferred until such time that such option would have otherwise become exercisable under Article 7.8.2 or 7.8.3; provided, however, that this prohibition on transfer shall not prohibit the transfer of any such shares to a family member or to an Entity for the benefit of or controlled by a family member as permitted by the terms of the applicable incentive stock option plan (provided that the family member or Entity agrees to be bound by the provisions of Article 7.8.2 or 7.8.3, as the case may be).

7.9    **Existing Accentia Stock Warrants.**

7.9.1    All of the Existing Accentia Stock Warrants are treated as executory contracts under the Plan. All of the holders of Existing Accentia Stock Warrants shall retain unaltered all of their legal, equitable and contractual rights thereunder, subject to the provisions set forth in Article 7.9.2.

7.9.2    Any shares of Reorganized Accentia Common Stock issued, upon exercise, to the holder of an Existing Accentia Stock Warrant may not be sold or transferred until after the 12 Month Anniversary Date; provided, however, that this prohibition on transfer shall not prohibit the transfer of any such shares to a family member or to an Entity for the benefit of or controlled by a family

member (provided that the family member or Entity agrees to be bound by the provisions of this Article 7.9.2). Any certificate for such shares shall contain a legend thereon setting forth the foregoing provisions and restrictions.


# ARTICLE 8
## MEANS OF IMPLEMENTATION OF THE PLAN

8.1 **General Overview of the Plan.**

The Plan provides for the continued operation of the Debtors as Reorganized Debtors. The Plan provides for Cash payments to Holders of Allowed Claims and, in certain instances, the issuance of designated amounts of the Reorganized Accentia Common Stock to certain Holders of Allowed Claims, all as more particularly described in Articles 3 and 5 of the Plan. In addition, each Holder of an Allowed Class 15 Equity Interest on the Effective Date will be deemed to receive one (1) share of Reorganized Accentia Common Stock for each share of Existing Accentia Common Stock held by such Holder as of the Effective Date, subject to dilution of such Holder's percentage ownership interest in Reorganized Accentia as a result of the issuance of the other Plan Shares.

The Plan shall be implemented on the Effective Date, and the primary source of the funds necessary to implement the Plan initially will be the Cash of Reorganized Accentia, including funds to be received from the Exit Financing. At the present time, the Debtors believe that Reorganized Accentia will have sufficient funds, as of the Effective Date, to pay in full the expected payments required under the Plan to the Holders of Allowed Administrative Expense Claims (including Allowed Administrative Expense Claims of Professionals), Allowed Secured Tax Claims in Class 7, and Allowed Unsecured Convenience Claims in Class 11. Cash payments to be made under the Plan after the Effective Date to the Holders of Allowed Priority Tax Claims and Allowed Claims in Classes 1, 2, 3, 4, 6, 7, 8, 10 and 14 will be derived from the operations of the Reorganized Debtors or from any new capital or financing raised by Reorganized Accentia, in each case as shown in the Projections.

8.2 **Effective Date Actions.**

8.2.1 Subject to the approval of the Bankruptcy Court and the satisfaction or waiver of the conditions precedent to the occurrence of the Effective Date contained in Article 10.2 of the Plan, on or as of the Effective Date, the Plan shall be implemented and the following actions shall thereafter immediately occur:

8.2.1.1 the Closing shall occur under the Laurus/Valens Settlement Documents;

8.2.1.2 Reorganized Accentia shall make the Initial Distribution as provided in Article 9.1 of the Plan;

8.2.1.3    Reorganized Accentia shall execute and deliver the Plan Debentures, the Plan Notes, the Plan Warrants, and the Security Documents in accordance with the provisions of the Plan;

8.2.1.4    All of the Class 12 Intercompany Claims shall automatically be deemed cancelled, annulled, extinguished and surrendered without any further action by any party and shall be of no further force and effect;

8.2.1.5    The Reorganized Accentia Charter shall be filed with the Office of the Secretary of State of the State of Florida;

8.2.1.6    Subject to Article 8.2.1.5, Reorganized Accentia shall issue and distribute the Plan Shares in accordance with the provisions of the Plan;

8.2.1.7    The Reorganized Debtors shall be automatically substituted for the Debtors as a party to all contested matters, adversary proceedings, administrative proceedings and lawsuits, both within and outside of the Bankruptcy Court, involving the Debtors' Properties, Claims against the Debtors, the Causes of Action, and the resolution of Disputed Claims; and

8.2.1.8    The Reorganized Debtors shall carry out their other Effective Date responsibilities under the Plan, including the execution and delivery of all documentation contemplated by the Plan and the Plan Documents.

8.3    **Vesting of Property of the Estates in the Reorganized Debtors.**

On the Effective Date, except as otherwise expressly provided in the Plan, all Property of the Estates (including the Causes of Action and any net operating losses) shall vest in the Reorganized Debtors free and clear of any and all Liens, Debts, obligations, Claims, Cure Claims, Liabilities, Equity Interests, and all other interests of every kind and nature except the Permitted Liens, and the Confirmation Order shall so provide. The Reorganized Debtors intend to preserve net operating losses to the maximum extent permitted under applicable law. As of the Effective Date, the Reorganized Debtors may operate their businesses and use, acquire, and dispose of their Properties, free of any restrictions of the Bankruptcy Code or the Bankruptcy Rules, other than those restrictions expressly imposed by the Plan and the Confirmation Order. All privileges with respect to the Property of the Debtors' Estates, including the attorney/client privilege, to which the Debtors are entitled shall automatically vest in, and may be asserted by or waived on behalf of, the Reorganized Debtors.

8.4    **Continued Corporate Existence.**

Each of the Debtors will continue to exist after the Effective Date as a separate corporate entity, with all of the powers of a corporation under the laws of the jurisdiction of its incorporation and pursuant to its articles or certificate of incorporation and bylaws or other organizational documents in effect prior to the Effective Date, except to the extent such articles or certificate of incorporation and bylaws or other organizational documents are amended or amended and restated as provided in the Plan or the Confirmation Order, without prejudice to any right to terminate such

existence (whether by merger, dissolution or otherwise) under applicable law after the Effective Date.

## 8.5    **Corporate Action.**

All matters provided for under the Plan involving the corporate structure of the Debtors or the Reorganized Debtors, or any corporate action to be taken by or required of the Debtors or the Reorganized Debtors, including all action taken to approve the Reorganized Accentia Charter and the Reorganized Accentia Bylaws, shall, as of the Effective Date, be deemed to have occurred and be effective as provided herein, and shall be authorized and approved in all respects without any requirement for further action by the stockholders or directors of the Debtors or the Reorganized Debtors.

## 8.6    **Boards of Directors and Executive Officers of the Reorganized Debtors.**

8.6.1    Subject to any requirement of Bankruptcy Court approval pursuant to Section 1129(a)(5) of the Bankruptcy Code, as of the Effective Date, the executive officers and directors of the Debtors immediately prior to the Effective Date shall be deemed to be the executive officers and directors of the Reorganized Debtors without any further action by any party. Pursuant to Section 1129(a)(5) of the Bankruptcy Code, the Debtors have disclosed, in the Disclosure Statement, the identity and affiliation of any individual proposed to serve as an initial director or executive officer of Reorganized Accentia and, to the extent such individual is an insider other than by virtue of being a director, the nature of any compensation for such individual.

8.6.2.    On and after the Effective Date, the operations of each of the Reorganized Debtors shall continue to be the responsibility of its Board of Directors. Each director of each of the Reorganized Debtors shall serve from and after the Effective Date until his or her successor is duly elected or appointed and qualified or until his or her earlier death, resignation or removal in accordance with the applicable articles or certificate of incorporation and bylaws or other organizational documents of such Reorganized Debtor. Each executive officer of each of the Reorganized Debtors shall serve from and after the Effective Date until his or her successor is duly appointed and qualified or until his or her earlier death, resignation or removal in accordance with the applicable articles or certificate of incorporation and bylaws or other organizational documents of such Reorganized Debtor.

8.6.3    From and after the Confirmation Date, the Board of Directors and executive officers of each of the Debtors and the Reorganized Debtors, as the case may be, shall have all powers accorded by law to put into effect and carry out the Plan and the Confirmation Order.

8.6.4    To the extent that, as of the Effective Date, any of the Debtors has in place employment, indemnification and other agreements with its directors, officers and employees who will continue in such capacities after the Effective Date, such agreements shall remain in place after the Effective Date, and the Reorganized Debtors will continue to honor such agreements. Such agreements may include equity, bonus and other incentive plans in which directors, officers and other employees of the Reorganized Debtors may be eligible to participate, including the Existing Accentia Stock Options.

8.7 **Amendment and Restatement of Articles of Incorporation and Bylaws of Accentia.**

8.7.1   The Board of Directors of Accentia shall take such action as may be necessary to cause the articles of incorporation of Accentia to be amended and restated (a) if applicable, to authorize a sufficient number of shares of Reorganized Accentia Common Stock necessary to meet (i) the requirements set forth in the Plan as to the issuance of the Plan Shares, and (ii) the obligations of Reorganized Accentia under the Existing Accentia Stock Options and the Existing Accentia Stock Warrants, (b) to contain any provisions as may be required in order that such articles of incorporation are consistent with the provisions of the Plan, the Bankruptcy Code, and the Confirmation Order, and (c) to provide, pursuant to Section 1123(a)(6) of the Bankruptcy Code, for a provision prohibiting the issuance of non-voting equity securities, but only to the extent required by Section 1123(a)(6).

8.7.2   The bylaws of Accentia shall be amended and restated as necessary to satisfy the provisions of the Plan (as amended and restated, the "Reorganized Accentia Bylaws").

8.7.3   To the extent necessary, the Confirmation Order shall include appropriate language approving the Reorganized Accentia Charter and the Reorganized Accentia Bylaws.   The Reorganized Accentia Charter and the Reorganized Accentia Bylaws shall be the charter and bylaws governing Reorganized Accentia on and after the Effective Date, subject to any right to amend the foregoing as permitted by applicable law.

8.8 **Issuance of Reorganized Accentia Common Stock.**

Reorganized Accentia shall issue and distribute, in accordance with the provisions of the Plan, shares of Reorganized Accentia Common Stock to those Entities entitled to receive the Plan Shares hereunder.   Exhibit C attached hereto sets forth a pro forma recapitalization of Reorganized Accentia after giving effect to the maximum possible issuance of shares of Reorganized Accentia Common Stock under the terms of the Plan as of the Effective Date, the Existing Accentia Stock Options, and the Existing Accentia Stock Warrants.

8.9 **Exemptions from Securities Laws.**

*General.*  Pursuant to Section 1125(e) of the Bankruptcy Code, any Person that solicits the acceptance or rejection of a plan, in good faith and in compliance with the applicable provisions of the Bankruptcy Code, or that participates, in good faith and in compliance with the applicable provisions of the Bankruptcy Code, in the offer, issuance, sale, or purchase of a Security, offered or sold under the plan, of the debtor, is not liable, on account of such solicitation or participation, for violation of any applicable law, rule, or regulation governing the solicitation of acceptance or rejection of a plan or the offer, issuance, sale, or purchase of Securities.

*Issuance of Reorganized Accentia Common Stock and Biovest Common Stock under the Plan.*  Section 1145(a) of the Bankruptcy Code exempts from registration under the Securities Act and under equivalent state securities or "blue sky" laws (a) the offer or sale under a plan of reorganization of a Security of a debtor, of an affiliate participating in a joint plan with a debtor, or of a successor of a debtor under a plan, if such offer or sale is either (i) in exchange for a claim against,

an interest in, or a claim for an administrative expense in the bankruptcy case concerning, the debtor or such affiliate, or (ii) "principally in such exchange and partly for cash or property", or (b) the offer of a Security through any warrant, option, right to subscribe, or conversion privilege that was sold in the manner specified in subparagraph (a) above, or the sale of a Security upon the exercise of such a warrant, option, right to subscribe, or conversion privilege. The Debtors believe that the offer and issuance of the Plan Debentures, the Plan Notes, the Plan Warrants and the Plan Shares in exchange for Claims and Equity Interests under the Plan satisfy the requirements of Section 1145(a) of the Bankruptcy Code and that such transactions, therefore, are exempt from registration under federal and state securities laws. In addition, for purposes of Section 1145(a)(1), Biovest shall be deemed as participating in the Plan with the Debtors with respect to the offer and sale of the Class 5 Plan Shares and the Class 5 Plan Warrants. The Confirmation Order will include a finding and conclusion to the effect that such offer and issuance fall within the exemptions from registration under the Securities Act and state and local securities laws pursuant to Section 1145 of the Bankruptcy Code.

### *Subsequent Transfers of Plan Shares.*

*Plan Shares Issued Pursuant to Section 1145 Exemption.* The Plan Shares may be freely transferred by most recipients thereof, and all resales of and subsequent transactions for the Plan Shares are exempt from registration under federal and state securities laws, unless the holder is an "underwriter" with respect to the Plan Shares. Section 1145(b)(1) of the Bankruptcy Code defines four types of "underwriters":

> (i)    an Entity that purchases a claim against, an interest in, or a claim for an administrative expense in the bankruptcy case concerning, the debtor, if such purchase is with a view to distribution of any Security received or to be received in exchange for such a claim or interest;

> (ii)    an Entity that offers to sell Securities offered or sold under a bankruptcy plan for the holders of such Securities;

> (iii)    an Entity that offers to buy Securities offered or sold under a bankruptcy plan from the holders of such Securities, if the offer to buy is (x) with a view to distribution of such Securities, and (y) under an agreement made in connection with the plan, with the consummation of the plan, or with the offer or sale of Securities under the plan; and

> (iv)    an Entity that is an "issuer" with respect to such Securities, as the term "issuer" is defined in Section 2(11) of the Securities Act.

Under Section 2(11) of the Securities Act, an "issuer" includes any person directly or indirectly controlling or controlled by the issuer, or any person under direct or indirect common control with the issuer. "Control" (as such term is defined in Rule 405 of Regulation C under the Securities Act) means the possession, direct or indirect, of the power to direct or cause the direction of the management and policies of a person, whether through the ownership of voting securities, by contract, or otherwise. Accordingly, an officer or director of a reorganized debtor (or its affiliate or successor) under a plan of reorganization may be deemed to "control" such debtor (and therefore be an underwriter for purposes of Section 1145), particularly if such management position is coupled

with the ownership of a significant percentage of the debtor's (or affiliate's or successor's) voting securities. Moreover, the legislative history of Section 1145 of the Bankruptcy Code suggests that a creditor who owns at least 10% of the securities of a reorganized debtor may be presumed to be a "control person."

To the extent that Persons deemed to be "underwriters" receive Plan Shares pursuant to the Plan, resales of such Plan Shares by such Persons would not be exempted by Section 1145(a) of the Bankruptcy Code from registration under the Securities Act or other applicable law. Persons deemed to be underwriters, however, may be able to sell such Plan Shares without registration subject to the provisions of Rule 144 under the Securities Act as discussed below.

*Plan Shares Held by Underwriters.* Holders of Plan Shares who are deemed to be "underwriters" within the meaning of Section 1145(b)(1) of the Bankruptcy Code or who may otherwise be deemed to be "affiliates" of, or to exercise "control" over, Reorganized Accentia within the meaning of Rule 405 of Regulation C under the Securities Act, may, in addition to any other exemptions that may be available under federal and state securities laws, under certain circumstances, be able to sell their Plan Shares pursuant to the more limited safe harbor resale provisions of Rule 144 under the Securities Act. Generally, Rule 144 provides that, if certain conditions are met (e.g., volume limitations, manner of sale, availability of current information about the issuer, etc.), specified persons who resell such securities and are "affiliates" of the issuer of the securities sought to be resold will not be deemed to be "underwriters" as defined in Section 2(11) of the Securities Act.

The foregoing summary discussion regarding Section 1145 of the Bankruptcy Code is general in nature and has been included in the Plan solely for informational purposes. Although the Plan Shares will become freely tradable by most recipients thereof as described above, it should be noted that there can be no assurance that an active trading market for the Reorganized Accentia Common Stock will develop or, if developed, that it will continue. Accordingly, no assurance can be given concerning the actual market for the Plan Shares or a Person's ability to sell the Plan Shares at any particular time. The Debtors do not make any representations concerning, and do not provide any opinion or advice with respect to, the securities law and bankruptcy law matters described above. In view of the uncertainty concerning the availability of exemptions from the registration requirements of the Securities Act and equivalent state securities or "blue sky" laws to a recipient of Plan Shares who may be deemed to be an "underwriter" (within the meaning of Section 1145(b)(1) of the Bankruptcy Code) and/or an "affiliate" of, or a person who exercises "control" over, Reorganized Accentia under applicable federal and state securities laws, the Debtors encourage each Person who is to receive Plan Shares pursuant to the Plan to consider carefully and consult with its own legal advisor(s) with respect to such (and any related) matters.

8.10 **SEC Public Reports.**

The Accentia Common Stock is registered under the Exchange Act. Section 13(a) of the Exchange Act requires that Accentia file with the SEC annual reports on Form 10-K and quarterly reports on Form 10-Q. Following the Petition Date, Accentia voluntarily ceased filing certain required reports with the SEC, including its annual reports on Form 10-K for the 2008 and 2009 fiscal years and its quarterly reports on Form 10-Q for the 2009 fiscal year and the first quarter of the

2010 fiscal year. On August 16, 2010, Accentia filed all of the foregoing reports with the SEC as well as its Form 10-Q Quarterly Report for the fiscal quarter ended June 30, 2010. As a result of the foregoing, Accentia is considered current in its SEC filings as of the date of the Plan. Each of the above-referenced reports can be accessed on the Internet at www.sec.gov or on Accentia's website at www.accentia.com.

## 8.11    **Section 1146 Exemption.**

Pursuant to Section 1146(a) of the Bankruptcy Code, the issuance, distribution, transfer or exchange of any Security (including the Reorganized Accentia Common Stock), or the making, delivery or recording of any instrument of transfer, pursuant to, in implementation of or as contemplated by the Plan or any Plan Document or the Laurus/Valens Settlement Documents, or the vesting, re-vesting, transfer or sale of any Property of, by or in the Debtors or their Estates or the Reorganized Debtors pursuant to, in implementation of or as contemplated by the Plan or any Plan Document or the Laurus/Valens Settlement Documents, or any transaction arising out of, contemplated by or in any way related to the foregoing, shall not be subject to any document recording tax, stamp tax, conveyance fee, intangible or similar tax, mortgage tax, stamp act, real estate transfer tax, mortgage recording tax, Uniform Commercial Code filing or recording fee, or other similar tax or governmental assessment, and the appropriate state or local governmental officials or agents shall be, and hereby are, directed to forego the collection of any such tax or governmental assessment and to accept for filing and recording any of the foregoing instruments or other documents without the payment of any such tax or governmental assessment.

## 8.12    **Pursuit of Causes of Action.**

8.12.1  On the Effective Date, the Causes of Action shall be vested in the Reorganized Debtors, except to the extent a Creditor or other third party has been specifically released from any Cause of Action by the terms of the Plan or by a Final Order of the Bankruptcy Court. The Reorganized Debtors will have the right, in their sole and absolute discretion, to pursue, not pursue, settle, release or enforce any Causes of Action without seeking any approval from the Bankruptcy Court except as provided in Article 8.13. The Debtors are currently not in a position to express an opinion on the merits of any of the Causes of Action or on the recoverability of any amounts as a result of any such Causes of Action. For purposes of providing notice, the Debtors state that any party in interest that engaged in business or other transactions with the Debtors Prepetition or that received payments from the Debtors Prepetition may be subject to litigation to the extent that applicable bankruptcy or non-bankruptcy law supports such litigation. The Reorganized Debtors will fund the costs and expenses (including legal fees) to pursue the Causes of Action.

8.12.2  No Creditor or other party should vote for the Plan or otherwise rely on the Confirmation of the Plan or the entry of the Confirmation Order in order to obtain, or on the belief that it will obtain, any defense to any Cause of Action. No Creditor or other party should act or refrain from acting on the belief that it will obtain any defense to any Cause of Action. ADDITIONALLY, THE PLAN DOES NOT, AND IS NOT INTENDED TO, RELEASE ANY CAUSES OF ACTION OR OBJECTIONS TO CLAIMS, AND ALL SUCH RIGHTS ARE SPECIFICALLY RESERVED IN FAVOR OF THE REORGANIZED DEBTORS. Creditors are advised that legal rights, claims and rights of action the Debtors may have against them, if they exist,

are retained under the Plan for prosecution unless a Final Order of the Bankruptcy Court authorizes the Debtors to release such claims. As such, Creditors are cautioned not to rely on (i) the absence of the listing of any legal right, claim or right of action against a particular Creditor in the Disclosure Statement, the Plan, or the Schedules, or (ii) the absence of litigation or demand prior to the Effective Date of the Plan as any indication that the Debtors or the Reorganized Debtors do not possess or do not intend to prosecute a particular claim or Cause of Action if a particular Creditor votes to accept the Plan. It is the expressed intention of the Plan to preserve rights, objections to Claims, and rights of action of the Debtors, whether now known or unknown, for the benefit of the Reorganized Debtors. A Cause of Action shall not, under any circumstances, be waived as a result of the failure of the Debtors to describe such Cause of Action with specificity in the Plan or in the Disclosure Statement; nor shall the Reorganized Debtors, as a result of such failure, be estopped or precluded under any theory from pursuing such Cause of Action. Nothing in the Plan operates as a release of any of the Causes of Action.

8.12.3 The Debtors do not presently know the full extent of the Causes of Action and, for purposes of voting on the Plan, all Creditors are advised that the Reorganized Debtors will have substantially the same rights that a Chapter 7 trustee would have with respect to the Causes of Action. Accordingly, neither a vote to accept the Plan by any Creditor nor the entry of the Confirmation Order will act as a release, waiver, bar or estoppel of any Cause of Action against such Creditor or any other Person or Entity, unless such Creditor, Person or Entity is specifically identified by name as a released party in the Plan, in the Confirmation Order, or in any other Final Order of the Bankruptcy Court. Confirmation of the Plan and entry of the Confirmation Order is not intended to and shall not be deemed to have any res judicata or collateral estoppel or other preclusive effect that would precede, preclude, or inhibit prosecution of such Causes of Action following Confirmation of the Plan.

8.12.4 At this time, the Debtors believe the Causes of Action consist primarily of (i) Avoidance Actions, and (ii) the Collegium Adversary Proceeding. Because the Plan is premised on the Debtors' solvency and provides for payment in full of all Allowed Claims of Creditors, with interest, at the present time, the Debtors anticipate that no Avoidance Actions will be pursued.

8.12.5 The Debtors and the Reorganized Debtors reserve all rights under Section 506(c) of the Bankruptcy Code with respect to any and all Secured Claims.

8.12.6 The Estates shall remain open, even if the Accentia Bankruptcy Cases shall have been closed, as to any and all Causes of Action until such time as the Causes of Action have been fully administered and the Causes of Action Recoveries have been received by the Reorganized Debtors.

8.13 **Prosecution and Settlement of Claims and Causes of Action.**

The Reorganized Debtors (a) may commence or continue in any appropriate court or tribunal any suit or other proceeding for the enforcement of any Cause of Action which the Debtors had or had power to assert immediately prior to the Effective Date, and (b) may settle or adjust such Cause of Action. From and after the Effective Date, the Reorganized Debtors shall be authorized, pursuant to Bankruptcy Rule 9019 and Section 105(a) of the Bankruptcy Code, to compromise and settle any Cause of Action or objection to a Claim in accordance with the following procedures, which shall

constitute sufficient notice in accordance with the Bankruptcy Code and the Bankruptcy Rules for compromises and settlements: (i) if the resulting settlement provides for settlement of a Cause of Action or objection to a Claim originally asserted in an amount equal to or less than $50,000.00, then the Reorganized Debtors may settle the Cause of Action or objection to Claim and execute necessary documents, including a stipulation of settlement or release, subject to notifying the United States Trustee and counsel to Laurus/Valens of the terms of the settlement agreement; provided, however, that if the United States Trustee or counsel to Laurus/Valens indicates its approval or does not provide the Reorganized Debtors with an objection to the proposed settlement within ten (10) days after it receives notice of such settlement in writing, then the Reorganized Debtors shall be authorized to accept and consummate the settlement; and provided further, however, that if a timely written objection is made by the United States Trustee or counsel to Laurus/Valens to the proposed settlement, then the settlement may not be consummated without approval of the Bankruptcy Court in accordance with Bankruptcy Rule 9019; and (ii) if the resulting settlement involves a Cause of Action or objection to a Claim originally asserted in an amount exceeding $50,000.00, then the Reorganized Debtors shall be authorized and empowered to settle such Cause of Action or objection to Claim only upon Bankruptcy Court approval in accordance with Bankruptcy Rule 9019 and after notice to the Notice Parties.

### 8.14 **Effectuating Documents; Further Transactions.**

Prior to the Effective Date, each of the chief executive officer, president, or chief financial officer of the Debtors (and, on and after the Effective Date, each of the chief executive officer, president, or chief financial officer of the Reorganized Debtors) shall be authorized to execute, deliver, file, or record such contracts, instruments, releases, mortgages, and other agreements or documents, including the Laurus/Valens Settlement Documents, the Plan Debentures, the Plan Notes, the Plan Warrants and the Security Documents, and take such actions as may be necessary or appropriate, to effectuate and further evidence the terms and conditions of the Plan or to otherwise comply with applicable law.

### 8.15 **Cancellation of Existing Loan Documents and Agreements.**

On the Effective Date, except as otherwise expressly provided in the Plan, (a) all notes, bonds, indentures, debentures or other instruments or documents evidencing or creating any indebtedness or obligations of the Debtors with respect to Claims in Classes 1 through 14 shall be deemed cancelled, and (b) the obligations of the Debtors under any such notes, bonds, indentures, debentures or other instruments or documents evidencing or creating any indebtedness or obligations of the Debtors with respect to Claims in Classes 1 through 14 shall be discharged.

### 8.16 **Exit Financing.**

On or as soon as reasonably practicable following the Effective Date, Reorganized Accentia will obtain new financing (the "Exit Financing") in an amount ranging from $1 million to $10 million. Subject to any mandatory prepayment requirements under the Laurus/Valens Term Notes, Reorganized Accentia intends to utilize the proceeds of the Exit Financing to provide additional working capital to conduct its operations following the Effective Date and to fund, to the extent necessary, certain Cash payments required to be made under the Plan on or shortly after the Effective

Date. The Exit Financing will be structured as a private placement equity offering through the sale to institutional and/or accredited investors of Reorganized Accentia Common Stock combined with warrants to purchase shares of Reorganized Accentia Common Stock. A more detailed discussion of the Exit Financing is contained in the section of the Disclosure Statement entitled "SUMMARY OF THE PLAN—Exit Financing."

## 8.17 **Exclusivity Period.**

The Debtors will retain the exclusive right to amend or modify the Plan, and to solicit acceptances of any amendments to or modifications of the Plan, through and until the Effective Date.

## 8.18 **Dissolution of the Committee.**

The Committee shall continue in existence until the later of (i) the 1 Month Anniversary Date or (ii) the Initial Distribution Date. Thereafter, the Committee shall be deemed dissolved and the members of the Committee shall be deemed discharged from all rights, duties and liabilities arising from, or related to, the Bankruptcy Cases.

## ARTICLE 9
## PROVISIONS GOVERNING DISTRIBUTIONS

## 9.1 **Initial Distribution.**

As soon as reasonably practicable (as determined by Reorganized Accentia) after the Effective Date, Reorganized Accentia shall (i) make the Distributions required under the Plan to Holders of Allowed Administrative Expense Claims (including Allowed Administrative Expense Claims of Professionals) and Allowed Claims in Classes 7 and 11; provided, however, that the Distributions as to Allowed Administrative Expense Claims of Professionals shall be made no more than ten (10) days after the Effective Date; and (ii) issue the Plan Shares to the Holders of Allowed Claims in Classes 2, 3, 4, 5, 6, 8, 9, 10 and 13 as required by the terms of the Plan ((i) and (ii), collectively, the "Initial Distribution"). Thereafter, Reorganized Accentia shall make additional Distributions to Holders of Allowed Claims as and when required by the terms of the Plan.

## 9.2 **Execution and Delivery of Plan Debentures, Plan Notes, Plan Warrants and Security Documents.**

On the Effective Date or the Determination Date, as the case may be, Reorganized Accentia shall execute and deliver the Plan Debentures, the Plan Notes, the Plan Warrants and the Security Documents.

## 9.3 **Determination of Claims.**

9.3.1 From and after the Effective Date, the Reorganized Debtors shall have the exclusive authority to, and shall, file, settle, compromise, withdraw, or litigate to judgment all objections to Claims. Except as to any late-filed Claims and Claims resulting from the rejection of executory

contracts or unexpired leases, if any, all objections to Claims shall be filed with the Bankruptcy Court by no later than ninety (90) days following the Effective Date (unless such period is extended by the Bankruptcy Court upon motion of the Debtors or the Reorganized Debtors), and the Confirmation Order shall contain appropriate language to that effect. Holders of Unsecured Claims that have not filed such Claims on or before the Bar Date shall serve the Notice Parties with any request to the Bankruptcy Court for allowance to file late Unsecured Claims. If the Bankruptcy Court grants the request to file a late Unsecured Claim, such Unsecured Claim shall be treated in all respects as a Class 10 Unsecured Claim. Objections to late-filed Claims and Claims resulting from the rejection of executory contracts or unexpired leases shall be filed on the later of (a) ninety (90) days following the Effective Date or (b) the date sixty (60) days after the Reorganized Debtors receive actual notice of the filing of such Claim.

9.3.2    Notwithstanding any authority to the contrary, an objection to a Claim shall be deemed properly served on the Holder of the Claim if the Debtors or the Reorganized Debtors, as the case may be, effect service in any of the following manners: (a) in accordance with Federal Rule of Civil Procedure 4, as modified and made applicable by Bankruptcy Rule 7004, (b) to the extent counsel for the Holder of a Claim is unknown, by first class mail, postage prepaid, on the signatory on the Proof of Claim or other representative identified on the Proof of Claim or any attachment thereto, or (c) by first class mail, postage prepaid, on any counsel that has filed a notice of appearance in the Bankruptcy Cases on behalf of the Holder of a Claim.

9.3.3    Disputed Claims shall be fixed or liquidated in the Bankruptcy Court as core proceedings within the meaning of 28 U.S.C. § 157(b)(2)(B) unless the Bankruptcy Court orders otherwise. If the fixing or liquidation of a contingent or unliquidated Claim would cause undue delay in the administration of the Bankruptcy Cases, such Claim shall be estimated by the Bankruptcy Court for purposes of allowance and Distribution. The Debtors or the Reorganized Debtors may, at any time, request that the Bankruptcy Court estimate any contingent or unliquidated Claim pursuant to Section 502(c) of the Bankruptcy Code regardless of whether the Debtors or the Reorganized Debtors previously objected to such Claim or whether the Bankruptcy Court has ruled on any such objection. The Bankruptcy Court shall retain jurisdiction to estimate any Claim at any time during litigation concerning any objection to any Claim, including during the pendency of any appeal relating to any such objection. In the event that the Bankruptcy Court estimates any contingent or unliquidated Claim, such estimated amount will constitute either the Allowed Amount of such Claim or a maximum limitation on such Claim, as determined by the Bankruptcy Court. If the estimated amount constitutes a maximum limitation on such Claim, the Debtors or the Reorganized Debtors may elect to pursue any supplemental proceedings to object to any ultimate allowance of such Claim. The determination of Claims in Estimation Hearings shall be binding for purposes of establishing the maximum amount of the Claim for purposes of allowance and Distribution. All of the aforementioned Claims objection, estimation and resolution procedures are cumulative and not exclusive of one another. Procedures for specific Estimation Hearings, including provisions for discovery, shall be set by the Bankruptcy Court giving due consideration to applicable Bankruptcy Rules and the need for prompt determination of the Disputed Claim.